## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PTT, LLC a Delaware Limited Liability
Company d/b/a High 5 Games,

    Plaintiff / Counterclaim Defendant,

v.

GIMMIE GAMES, an entity; DANIEL
MARKS, an individual; JOSEPH MASCI, an
individual; BRIAN KAVANAGH, an
individual; JOHN SMITH(s) 1 – 7,
individuals; and XYZ COMPANIES 1 – 7,

    Defendants / Counterclaim Plaintiffs.

CIVIL NO.: 2:13-CV-07161  JLL - JAD

---

## PLAINTIFF'S  MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

---

KHIZAR A. SHEIKH, ESQ.
Of Counsel and
On the Brief

ARLA D. CAHILL
On the Brief

MANDELBAUM, SALSBURG, P.C.
Khizar A. Sheikh, Esq. (KAS2737)
155 Prospect Avenue
West Orange, New Jersey 07052
Ph:    973-736-4600
Fax:   973-736-4670
Attorneys for Plaintiff / Counterclaim Defendant

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

LEGAL ARGUMENT ........................................................................................................ 2

POINT I ............................................................................................................................... 2

UNDER BINDING LEGAL PRECEDENTS, PTT HAS
SUFFICIENTLY IDENTIFIED AND ALLEGED ITS TRADE
SECRET IN THE AMENDED COMPLAINT, THEREBY
REQUIRING THAT DEFENDANTS' MOTION TO DISMISS
UNDER RULE 12(b)(6) BE DENIED

A. The Standard of Review Under Rule 12(b)(6) ............................................... 2

B. Pleading Requirements in the District of New Jersey for Trade Secret
Misappropriation ........................................................................................... 4

C. The Amended Complaint Satisfies the Pleading Standard for Trade Secret
Misappropriation ........................................................................................... 6

D. The Super Stacks Trade Secret Was Not Publicly Disclosed in the Abandoned
Patent Application ......................................................................................... 8

E. Because the Super Stacks Trade Secret Was Not Publicly Disclosed, PTT's Breach
of Contract Claims as to the Individual Defendants Should not be Dismissed Under
Rule 12(b)(6) ............................................................................................... 14

POINT II............................................................................................................................ 15

PTT HAS SUFFICIENTLY ALLEGED UNFAIR
COMPETITION, THEREBY REQUIRING THAT
DEFENDANTS' MOTION TO DISMISS UNDER RULE
12(b)(6) BE DENIED

A. PTT's State Law Unfair Competition Claim is Sufficiently Plead.................. 16

B. PTT's Federal Law Unfair Competition Claim is Sufficiently Plead.............. 18

POINT III ....................................................................................................................20

PTT HAS SUFFICIENTLY ALLEGED ITS DIRECT AND
INDIRECT PATENT INFRINGEMENT CLAIMS
CONCERNING SUPER SYMBOLS, THEREBY REQUIRING
THAT DEFENDANTS' MOTION TO DISMISS UNDER RULE
12(b)(6) BE DENIED

A.  PTT's Direct Infringement Claim is Sufficiently Plead .................................20

B.  PTT's Induced Infringement Claim is Sufficiently Plead.............................24

CONCLUSION ..........................................................................................................26

## TABLE OF AUTHORITIES

<u>CASES</u>

Advanced Fluid Sys., Inc. v. Huber,
    No. 13-3087, 2014 WL 2770231 (M.D. Pa. June 18, 2014) ..............................19

Alpha Pro Tech, Inc. v. VWR Int'l LLC,
    984 F. Supp. 2d 425 (E.D. Pa. 2013)......................................................................5

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ...............................................................................................2

AstraZeneca LP v. Apotex, Inc.,
    633 F.3d 1042, 1056 (Fed. Cir. 2010) .................................................................24

AT&T Co. v. Winback & Conserve Program, Inc.,
    42 F.3d 1421, 1428 (3d Cir. 1994) ......................................................................19

Avaya, Inc. v. Cisco Systems, Inc.,
    No. 10-5881, 2012 WL 2065536 (D.N.J. June 6, 2012) .....................................16

Bel Fuse Inc. v. Molex Inc.,
    No. 13-2566 JBS, 2014 WL 2710956 (D.N.J. June 16, 2014) .........................20, 24

Bell Atlantic Corporation v. Twombly,
    550 U.S. 544 (2007) ..........................................................................................2, 3

Bill of Lading Transmission & Processing Sys. Patent Litig.,
    681 F.3d 1323 (Fed.Cir. 2012).........................................................................20, 21

Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,
    489 U.S. 141, 157 (1989).....................................................................................15

Duffy v. Charles Schwab & Co., Inc.,
    123 F. Supp. 2d 802 (D.N.J. 2000) ......................................................................15

Fifth Market, Inc. v. CME Grp., Inc.,
    No. 08-520, 2009 WL 5966836, at *1 (D. Del. May 14, 2009) .....................22

Fleisher v. Standard Ins. Co.,
    679 F.3d 116 (3d Cir.2012) ..................................................................................2

Fowler v. UPMC Shadyside,
    578 F.3d 203 (3d Cir. 2009)..................................................................................3

Fuji Mach. Mfg. Co., Ltd. v. Hover–Davis, Inc.,
    936 F.Supp. 93 (W.D.N.Y.1996)............................................................................25

Gen-Probe, Inc. v. Amoco Corp.,
    926 F. Supp. 948 (S.D. Cal. 1996) .......................................................................22

Givaudan Fragrances Corp. v. Krivda,
    No. 08–4409, 2013 WL 5781183 (D.N.J. Oct. 25, 2013) ......................................6

In re Bill of Lading Transmission & Processing Sys. Patent Litig.,
    681 F.3d 1323, 1336 (Fed.Cir. 2012) ...........................................................20, 21

K–Tech Telecommunications, Inc. v. Time Warner Cable, Inc.,
    714 F.3d 1277 (Fed.Cir.2013)........................................................................21, 23

McZeal v. Sprint Nextel Corp.,
    501 F.3d 1354 (Fed.Cir.2007)...............................................................................20

N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc.,
    144 N.J. Super. 411 (N.J. Ch. Div. 1976).......................................................15, 16

Nintendo of America, Inc. v. Dragon Pacific Int'l,
    40 F.3d 1007 (9th Cir.1994) ...................................................................................9

Ondeo Nalco Co. v. EKA Chemicals, Inc.,
    2002 WL 1458853 (D. Del. June 10, 2002) .........................................................23

Osteotech, Inc. v. Biologic, LLC,
    No. 07–1296, 2008 WL 686318 (D.N.J. March 7, 2008)........................................5

Oy Ajat, Ltd. v. Vatech Am., Inc.,
    No. 10-4875 PGS, 2011 WL 1458052 (D.N.J. Apr. 14, 2011) .............................24

Pension Benefit Guar. Corp. v. White Consol. Indus.,
    998 F.2d 1192 (3d Cir.1993) ...................................................................................3

Phillips v. County of Allegheny,
    515 F.3d 224 (3d Cir. 2008) ...................................................................................3

Reckitt Benckiser Inc. v. Tris Pharma, Inc.,
    No. 09-3125 FLW, 2011 WL 773034 (D.N.J. Feb. 28, 2011) ......................5, 9, 10

Ryan v. Carmona Bolen Home for Funerals,
    341 N.J. Super. 87 (App. Div. 2001)......................................................................17

<u>Rycoline Prods., Inc. v. Walsh</u>,
 334 N.J. Super. 62 (N.J. App. Div. 2000) ..........................................................................4

<u>Sachs Furniture & Radio Co. v. Sachs Quality Stores Corp.</u>,
 39 N.J. Super. 70 (App. Div. 1956)................................................................................16

<u>SK & F, Co. v. Premo Pharm. Labs., Inc.</u>,
 625 F.2d 1055 (3d Cir. 1980) ...............................................................................16, 18

<u>Sgueezit Corp. v. Plastic Dispensers</u>,
 31 N.J. Super. 217 (N.J. App. Div. 1954) ......................................................................16

<u>Vita-Mix Corp. v. Basic Holding, Inc.</u>,
 581 F.3d 1317 (Fed. Cir. 2009) .....................................................................................25

## **RULES & STATUTES**

<u>N.J.S.A.</u> 56:15-1 ..........................................................................................................2

<u>F.R.Civ.P.</u> 12(b)(6) ......................................................................................................2

<u>N.J.S.A.</u> 56:15-2. ......................................................................................................4, 5

<u>N.J.S.A.</u> 56:15-7. .........................................................................................................6

15 U.S.C. § 1125(a)......................................................................................................18

## **INTRODUCTION**

Defendants Gimmie Games, Daniel Marks, Joseph Masci, Brian Kavanagh, Marks Studios, LLC and Aristocrat Technologies, Inc. (collectively, the "Defendants") bring a motion under Fed. R. Civ. P. 12(b)(6) for a partial dismissal of the First Count of the Amended Complaint (trade secret misappropriation) and dismissal of the balance of the Amended Complaint on the basis that plaintiff, PTT, LLC ("PTT"), (1) publicly disclosed its trade secret with respect to its "Super Stacks" game feature and (2) has failed to allege sufficient facts that would allow the Court to draw reasonable inferences that Defendants are liable for the misconduct alleged.

A comparison between the disclosures contained in an abandoned patent application pertaining to PTT's "Super Stacks" game feature with the description of Super Stacks' non-public trade secret components, and a review of the binding legal precedents, easily refutes Defendants' contentions and plainly discloses that (a) PTT did **not** disclose its the Super Stacks trade secrets and (b) PTT has alleged facts sufficient to sustain its trade secret misappropriation claims under the motion to dismiss standard.   Accordingly, PTT has alleged a viable misappropriation claim.

Further, careful review of the allegations contained in the Amended Complaint as applied to the controlling case law discloses that PTT has alleged sufficiently detailed facts to withstand dismissal of its claims for unfair competition under the Lanham Act and New Jersey common law (Second and Third Causes of Action), breach of contract (Fourth Cause of Action), and direct and indirect patent infringement (Fifth and Sixth Causes of Action).

Accordingly, Defendants' Motion to Dismiss the claims alleged in the Amended Complaint should be denied in its entirety.

## LEGAL ARGUMENT[1]

### POINT I

### UNDER BINDING LEGAL PRECEDENTS, PTT HAS SUFFICIENTLY IDENTIFIED AND ALLEGED ITS TRADE SECRET IN THE AMENDED COMPLAINT, THEREBY REQUIRING THAT DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) BE DENIED

The Amended Complaint's First Cause of Action asserts a claim for trade secret misappropriation under the New Jersey Trade Secret Act, N.J.S.A. 56:15-1, *et seq.* (the "NJTSA"). Defendants seek to dismiss the First Cause of Action under Fed. R. Civ. P. 12(b)(6) on the purported basis that PTT's trade secret relating to its proprietary "Super Stacks" game feature (the "Super Stacks Trade Secret") was allegedly disclosed publicly in an abandoned patent application in or about April 5, 2012 (the "Abandoned Patent Application"). As discussed more fully below, Defendants' motion fails on the basis that: (1) PTT has sufficiently alleged a cause of action for trade secret misappropriation under the pleading standards articulated in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009); and (2) the Patent Application did **not** disclose PTT's trade secret.

A.    The Standard of Review Under Rule 12(b)(6)

Under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fleisher v. Standard

---

[1] Because the facts and the legal argument are so interwoven, rather than present a separate Statement of Facts, all relevant facts are contained in the Legal Argument of the Brief.

Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012).  In Twombly, *supra*, 550 U.S. 544, the Supreme

Court clarified the Rule 12(b)(6) standard by stating that the factual allegations set forth in a

complaint "must be enough to raise a right to relief above the speculative level."  Id. at 555.  As

the Third Circuit stated,

> The Supreme Court's Twombly formulation of the pleading standard can
> be summed up thus: 'stating ... a claim requires a complaint with enough
> factual matter (taken as true) to suggest 'the required element. This 'does
> not impose a probability requirement at the pleading stage,' but instead
> 'simply calls for enough facts to raise a reasonable expectation that
> discovery will reveal evidence of 'the necessary element'.

Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

In affirming that the Twombly standards apply to all motions to dismiss, the Supreme

Court explained the following principles. "First, the tenet that a court must accept as true all of

the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, *supra*, 556

U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).  "Second, only a

complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, *supra*, 556

U.S. at 679.  The plausibility standard requires that "the plaintiff plead [ ] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." Id.

(quoting Twombly, *supra*, 550 U.S. at 556).

In evaluating a motion to dismiss, a court may consider only the complaint, exhibits

attached to the complaint, matters of public record, and undisputedly authentic documents if the

complainant's claims are based upon these documents. *See* Pension Benefit Guar. Corp. v. White

Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Here, Exhibits 2 through 7 and 9 annexed to

the Declaration of Akiva M. Cohen, Esq. ("Cohen Decl.") do not constitute "matters of public

3

record" and were not annexed to the Complaint or its amendment. Accordingly, these documents should be disregarded by the Court as they are extrinsic to the Amended Complaint.

**B.    Pleading Requirements in the District of**
**New Jersey for Trade Secret Misappropriation**

To prevail on a claim for the misappropriation of a trade secret under New Jersey law, a plaintiff must establish that: "(1) a trade secret exists; (2) the information comprising the trade secret was communicated in confidence by plaintiff to the employee; (3) the secret information was disclosed by that employee and in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the employee's breach of confidence; (5) the secret information was used by the competitor to the detriment of plaintiff; and (6) the plaintiff took precautions to maintain the secrecy of the trade secret." Rycoline Prods., Inc. v. Walsh, 334 N.J. Super. 62, 71 (N.J. App. Div. 2000).

Under the NJTSA, "trade secret" means information, held by one or more people, without regard to form, including a formula, pattern, business data compilation, program, device, method, technique, design, diagram, drawing, invention, plan, procedure, prototype or process, that (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. N.J.S.A. 56:15-2.

The NJTSA provides that the following acts constitute misappropriation:

(1)    Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2)    Disclosure or use of a trade secret of another without express or implied consent of the trade secret owner by a person who:

4

(a) used improper means to acquire knowledge of the trade secret; or

(b) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means; or

(c) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means.

N.J.S.A. 56:15–2.

A claim of misappropriation of trade secret "does **not** require specific pleading of the precise information that constitutes the trade secret in order to survive a motion to dismiss. Thus, the Federal Rules of Civil Procedure "generally **do not require a plaintiff to provide specific information about trade secrets at this stage of the litigation**." Reckitt Benckiser Inc. v. Tris Pharma, Inc., No. 09-3125 FLW, 2011 WL 773034., at *3 (D.N.J. Feb. 28, 2011) (unpublished)[2] (emphasis supplied) (citation omitted); *see also* Osteotech, Inc. v. Biologic, LLC, No. 07–1296, 2008 WL 686318, at *5 (D.N.J. March 7, 2008) (unpublished)[3] (explaining that "[t]here is no heightened pleading standard for a misappropriation claim."). As stated in Alpha Pro Tech, Inc. v. VWR Int'l LLC, 984 F. Supp. 2d 425, 436 (E.D. Pa. 2013), "concrete evidence [of a trade secret] is not required until [the defendant] moves for summary judgment or the case proceeds to trial. And in actuality, such a requirement, even if it existed, would make less sense here, where trade secrets are concerned because such a requirement would result in public disclosure of the purported trade secret." Id. (citation omitted). In fact, the duty of preservation of the trade secret is plainly acknowledged in the NJTSA:

---

[2]A true and complete copy of this case is annexed as **Exhibit J** to the Affirmation of Khizar A. Sheikh, Esq. ("*Sheikh* Aff.") dated October 6, 2014.

[3]A true and complete copy of this case is annexed as **Exhibit H** to the *Sheikh* Aff.

In an action under [the Act], **a court shall preserve the secrecy of an alleged trade secret by reasonable means** . . .

N.J.S.A. 56:15-7 (emphasis supplied).  In light of this provision in the NJTSA, Defendants' insistence, since the outset of the case, that PTT reveal its trade secret (as opposed to describe its trade secret) in order to litigate its case, is unreasonable and unsupported by prevailing law.  *See* Givaudan Fragrances Corp. v. Krivda, No. 08–4409, 2013 WL 5781183, *4 (D.N.J. Oct. 25, 2013)[4] (stating that plaintiffs must "identify" or "describe" the trade secrets at issue at the commencement of discovery).  Accordingly, Defendants are simply incorrect that PTT is obligated to disclose its trade secrets with respect to math models that comply with state and international regulatory agencies overseeing gaming laws or any other aspect of its trade secrets as a condition to litigate its misappropriation claims.

**C.     The Amended Complaint Satisfies the Pleading Standard for Trade Secret Misappropriation**

Here, PTT has adequately pled the existence of its trade secret in the Amended Complaint.  In particular, PTT alleges the existence of the Super Stack Trade Secret as follows:

> 16. H5G's game play mechanic provides **a unique method of taking simple stacks and generating an experience-changing function** through substituting fixed symbols on the reel with the desired stacked symbol.  Thus, **using H5G's proprietary methodology**, the reels themselves do not have to be modified to include fixed stacks to create the appearance of an infinite symbol stack through mathematical manipulation of the appearance of the reels.  H5G named this game play mechanic feature "Super Stacks."

> 17. **One very unique aspect of H5G's Super Stacks feature is that the math models (*i.e.*, algorithms)** designed by H5G to create such a unique playing experience also comply with the strict regulatory restrictions utilized in by various state and international regulatory agencies overseeing gaming laws.  **This aspect is why H5G has been very selective with whom it discloses its mathematical models, and why it does so under the strictest**

---

[4] A true and complete copy of this case is annexed as **Exhibit E** to the *Sheikh* Decl.

**of confidence**. Defendants Marks, Masci and Kavanagh, who were employed by H5G at the time of the creation of this game play mechanic, were privy to the otherwise confidential and proprietary formulations.

18.  H5G has always considered its **method of making games utilizing its proprietary methodology to create the Super Stacks feature to be a trade secret**, and has complied with all lawful requirements to ensure its trade secrets are adequately protected (the "Super Stacks Trade Secret").

50.  . . .H5G possesses numerous trade secrets, **including many of its methods, techniques, programs, inventions or the like**, including those regarding its Super Stacks feature and its Super Symbol feature . . .

*Amended Complaint*, ¶¶ 16-18, and 50 (emphasis supplied).

The Amended Complaint also alleges that the Super Stack Trade Secret was (a) communicated to Defendants in confidence, id., ¶¶25-32, (b) disclosed by Defendants in breach of the confidence, id., ¶¶17, 37-38, 40, 44-45, (c) was acquired by a competitor with knowledge of the former employees' breach of confidence, id., ¶¶46-48, (d) used by the competitors, i.e., Gimmie Games and Aristocrat, id., ¶¶37-38, 40, 44-45, 48, and (e) was maintained in secrecy, id., ¶¶17, 18, 26(a)-(c), 28, 30, 46 and 52.

The Amended Complaint further satisfies the NJTSA's requirement that the Super Stack Trade Secret (a) derives independent economic value, actual or potential, from not being generally known, id., ¶¶18, 26(a)-(c), 28, 30, 46, 51-52, and (b) is subject to efforts that are reasonable under the circumstances to maintain its secrecy, id., ¶¶17, 18, 26(a)-(c), 28, 30, 46 and 52.  N.J.S.A. 56:15-2.  It also sufficiently alleges the specific acts constituting misappropriation under the NJTSA. Id., ¶¶17, 18, 26(a)-(c), 28, 30, 40, 42, 44-48 and 52-55.

Finally, contrary to Defendants' contentions, PTT's counsel did **not** "acknowledge" in an August 27, 2014 letter to the Court that "the published patent application covers the entirety of the alleged trade secret other than some unspecified 'manner' of achieving regulatory approval . .

7

." $Db^5$ at 8 fn.3 and 11.  To the contrary, the August 27th letter states, in relevant part, that "High 5's position . . . is that **it continues to maintain a trade secret with respect to Super Stacks**, specifically **including** a method of having the Super Stacks gameplay mechanic . . . comply with regulatory requirements/restrictions . . ." *See* Exhibit 7 to Cohen Decl. (emphasis supplied). Moreover, as plainly set forth in its May 15, 2014 Trade Secret Description that was prepared to assist the parties during the course of the discovery process to "(a) put Defendant on notice of the nature of Plaintiff's claims and (b) enable Defendant to determine the relevancy of any requested discovery concerning its trade secrets," see April 28, 2014 Pretrial Scheduling Order [ECF#16], , PTT stated, in relevant part that, "PTT does not represent that it is disclosing with particularity the actual trade secrets that it contends were misappropriated, and reserves the right to amend or modify the description below based on further discovery and investigation." *See* Exhibit 9 to Cohen Decl.

    For the foregoing reasons, Defendants' motion to dismiss should be denied.

**D.**    **The Super Stacks Trade Secret Was Not Publicly Disclosed in the Abandoned Patent Application**

    Without having conducted any discovery in this matter and without submitting a declaration on behalf of Defendants, Defendants make the bald contention that the 2012 Patent Application publicly discloses the Super Stacks Trade Secret simply based upon Defendants' attorney's lay opinion derived from a match-up of similar sounding words in the Patent Application and the May 15, 2014 Trade Secret Description.  Defendants' bald contention is not only easily disputed, but reflects an erroneous understanding of the governing law concerning patents that refer to trade secrets.  Indeed, where a patent refers to a trade secret, there is no

---

[5]"Db" refers to Defendants' brief filed in support of the motion to dismiss.

heightened pleading standard imposed to parse out the undisclosed trade secret from the publicly disclosed patent. Indeed, it is common for a company's intellectual property to have multiple legal protections from copyright, trademark, trade secret and patent laws simultaneously for different facets of the property. *See, e.g.*, Nintendo of America, Inc. v. Dragon Pacific Int'l, 40 F.3d 1007, 1010-11 (9th Cir.1994) (plaintiff may be awarded statutory damages under both the Copyright and the Lanham Acts where defendant's act simultaneously infringed plaintiff's copyright and trademark because the two statutory schemes serve different public policies, and protect against and remedy different injuries).

For example, in Reckitt Benckiser Inc. v. Tris Pharma, Inc., *supra*, which construed New Jersey trade secret law, the District Court of New Jersey held that plaintiff's complaint sufficiently alleged the existence of a trade secret, notwithstanding the fact that the plaintiff's trade secret was referenced in its patent:

> Plaintiffs have pled the following facts relevant to the existence of a trade secret: (1) "Plaintiffs are the developers and owners of trade secrets comprising, among other things, the Delsym® manufacturing process, Delsym® formulations, and other private information concerning Delsym® and related research and development"; (2) "Plaintiff's trade secrets were the result of many years of effort by Plaintiffs and their predecessors"; (3) "Plaintiffs' trade secrets derive actual and potential independent economic value from the fact that they are not generally known or readily accessible to the public or others." Pl's Compl. ¶¶ 26–28. Thus, the Court finds that the Complaint sufficiently alleges the existence of a trade secret to meet Rule 8(a).

To the extent that the defendants argued that the plaintiff had a heightened obligation to disclose the trade secret at issue since the patent for Delsym® is public, the Court disagreed and reasoned as follows:

> The Patent Act does not impose a heightened pleading standard for a trade secret misappropriation claim. Indeed, as Defendants suggest, the Patent Act merely sets forth the requirements for what must be included in a

9

patent application when the application is filed; the statute does not require the disclosure of information discovered after the filing of the application, some of which may be potentially considered a trade secret. 35 U.S.C. § 112; Pls' Br. at 6. **Moreover, to the extent that Defendants suggest that Plaintiffs are required to plead factual information above and beyond the information contained in the Patent, i.e., public information, to set forth an allegation that can be understood to constitute a trade secret, Plaintiff's Complaint specifically alleges that the trade secrets comprise the manufacturing process, the drug formulation and, more importantly, "other private information concerning Delsym® and related research and development.**" Compl. ¶ 26. Thus, the Court is satisfied that Plaintiff's pleadings concerning the existence of a trade secret satisfy the first prong of the claim for misappropriation of trade secret under Rule 8(a).

Reckitt Benckiser Inc., *supra*, at * 5 (emphasis supplied).

Here, the Super Stacks Trade Secret was not disclosed by the Patent Application. Indeed, the crux of the Super Stacks Trade Secret is how designated portions on a reel get substituted and how the chosen symbol is picked by the computer. The Abandoned Patent Application only provides the steps required to substitute symbols on the reels to achieve the visual effect of the long stacks—it does not disclose **how** the schema described in Claim 1(b) of the Abandoned Patent Application is created and picked, and **how** and in **what portions** of the reels the symbols would be replaced with symbols prescribed by the selected schema as described in Claim 1(c). These "know-hows" by way of mathematical models are proprietary and are not disclosed in the Patent Application as detailed more specifically in the following chart:

| Defendants' Selected Quotes from the Patent Application | May 15, 2014 Trade Secret Description Broken Out By Each Sentence | Super Stacks Trade Secret Information **Not** Mentioned in the Patent Application |
|---|---|---|
| N/A | "H5G's trade secret for the gameplay mechanic called "Super Stacks" is steeped in the behind the scenes operation of reel modification of a slot machine game through which an end user of the slot machine | The Abandoned Patent Application does not disclose the "behind the scenes operation", which includes (i) the compilation of the schema table consisting of specific substitution patterns and their corresponding weight |

10

|  |  |  |
|---|---|---|
|  | game experiences a unique game play experience as follows:" | calculated from statistical factors based on the pattern being used in multiple testing periods; and (ii) the designation of portions of the reels to be substituted (assigning them as blank/common symbol value). |
| N/A | "A slot machine game has a plurality of reels, each of the reels including a plurality of symbol positions." | N/A |
| "One embodiment, nicknamed 'Super Stacks', involves using the substitution method described above to create stacks of consecutive positions occupied by the same symbol. The simplest version of a Super Stack game involves a reserved symbol, say symbol number 0, which can be thought of as a blank symbol, and a set of reel strips ... containing, on each reel, sequences of consecutive positions occupied by this blank symbol..." Background, ¶30. | "Each of the reels is created with a blank (or common) symbol value in a plurality of the symbols positions." | The Abandoned Patent Application does not disclose how the blank or common symbol values in each reel are determined. The method and know-how of where in the reels these values are proprietary and are not disclosed in the patent application. |
| "A method as in claim 1 [of (b) selecting a symbol schema and (c) replacing a plurality of symbols that make up a reel with symbols prescribed by the selected schema] wherein step (b) comprises selecting a schema according to a weighted probability." Claim 4. | "A mathematical model is provided with such games embodying the Super Stacks gameplay mechanic, including a weighted table of substitution patterns, each of which prescribes a potentially different symbol to be substituted in each of the symbol positions having the blank/common value." | The Abandoned Patent Application does not disclose the method of selecting a symbol schema or replacing a plurality of symbols.<br><br>The Abandoned Patent Application does not disclose the computational or mathematical model, how to calculate weighted probability, or what the weighted table of substitution patterns are. |

11

| | | |
|---|---|---|
| "The schema [for replacing one or more symbols on a reel] may be selected randomly, or according to a weighted probability, or according to a count of recent plays." Abstract.<br><br>Flow chart identifying "By weighted probabilities" as means of selecting a symbol schema. Background, ¶40.<br><br>"The schema [for replacing one or more symbols on a reel] may be selected randomly, or according to a weighed probability, or according to a count of recent plays." Background, ¶14.<br><br>"A symbol schema is selected (205) by the processor. This may be done by random selection (207), by weighted probabilities where some schemas are weighted toward a more likely selection than others (209), or at random …" Background, ¶40. | | The Abandoned Patent Application does not disclose how the weighted table takes into consideration correlations, across reels, or the occurrence of various symbol combinations to create new varieties of game play.  It does not disclose how these factors are quantitatively taken into account and how to assess these factors mathematically so they can be used in the processing of the game. |
| "A method as in claim 1 [of (b) selecting a symbol schema and (c) replacing a plurality of symbols that make up a reel with symbols prescribed by the selected schema [ wherein step (b) comprises selecting a schema according to a weighted probability." | "Prior to the spinning of the reels, a pattern is selected randomly from the weighted table," | The Abandoned Patent Application does not disclose how the patterns (schema) and weighted tables (or weighted probability) are compiled so that they can be selected. |

12

| Claim 4. | | |
|---|---|---|
| "The schema [for replacing one or more symbols on a reel] may be selected randomly, or according to a weighted probability, or according to a count of recent plays." Abstract.<br><br>Flow chart identifying "By weighted probabilities" as means of selecting a symbol schema. Background, ¶40.<br><br>"The schema [for replacing one or more symbols on a reel] may be selected randomly, or according to a weighed probability, or according to a count of recent plays." Background, ¶14.<br><br>"A symbol schema is selected (205) by the processor. This may be done by random selection (207), by weighted probabilities where some schemas are weighted toward a more likely selection than others (209), or at random …" Background, ¶40. | | |
| "Slots containing this [blank/common] symbol [in the Super Stack game] are considered as the only substitution region on each reel … For example, one such schema … might call | "and the substitution of the blank/common symbols for the different symbol chosen from the weighted table takes place." | The Abandoned Patent Application does not disclose how the weighted tables (or weighed probability) are compiled so that they can be used in the substitution. |

| | | |
|---|---|---|
| for substituting an "Ace" in all blanks on the first 3 reels and a "Jack" in all blanks on the last two." Background, ¶30. | | |
| "[p]resenting a spinning reel display to the player." Claim 1.<br><br>"When a play is initiated, a stop is selected at random for each reel.  Then a spinning-reel display is presented to the player. At the end of the play, the spinning ceases with each reel displaying its previously selected stop." Background, ¶04.<br><br>"Prior to each spin, a schema is randomly selected from the list, the required substitutions are performed, and the resulting reel strips are spun." Background, ¶30. | "Once the substitution takes place, random stops for each reel are generated, and the reels "spin" on a display device until they reach the randomly selected stops." | The Abandoned Patent Application does not disclose how the patterns (schema) and weighted tables (or weighted probability) are compiled so that they can be selected and used in the substitution. |

Based on the foregoing, Defendants have failed to establish that the Amended Complaint does not sufficiently allege a cause of action for traded secret misappropriation or that the Super Stacks Trade Secret was publicly disclosed in the Abandoned Patent Application.  For these reasons, the motion to dismiss should be denied.

**E.      Because the Super Stacks Trade Secret Was Not Publicly Disclosed, PTT's Breach of Contract Claims as to the Individual Defendants Should not be Dismissed Under Rule 12(b)(6)**

The Amended Complaint's Fourth Cause of Action asserts claims against individual defendants Marks, Masci and Kavanagh for breach of their respective contracts that required,

14

among other things, they not disclose or misappropriate PTT's confidential information, including, without limitation, PTT's trade secrets. *Amended Complaint*, ¶¶70-74. Defendants do not contend that PTT has not sufficiently alleged its breach of contract claims. Instead, they acknowledge in their brief that their argument for dismissal of the contract claims, as they relate to Super Stacks, is based solely on their contention that the Super Stacks Trade Secrets was publicly disclosed. *Db* 20. Because, as discussed more fully in Point I, *supra*, PTT did **not** disclose its protectable trade secrets, Defendants' position is unsustainable and their motion to dismiss should be denied.

## POINT II

### PTT HAS SUFFICIENTLY ALLEGED UNFAIR COMPETITION, THEREBY REQUIRING THAT DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) BE DENIED

The Amended Complaint's Second and Third Causes of Action assert claims for unfair competition under, respectively, the Lanham Act, 15 U.S.C. §1125(a), and New Jersey common law. Contrary to Defendants' position, the Second and Third Causes of Action do not arise from an alleged trade dress infringement theory as set forth more fully below. With all reasonable inferences granted in favor of PTT, the Amended Complaint sufficiently alleges detailed facts to withstand dismissal of its claims for unfair competition under the Lanham Act and New Jersey common law.

**A.   PTT's State Law Unfair Competition Claim is Sufficiently Plead**

New Jersey's common law of unfair competition "is an amorphous area of jurisprudence. It knows of no clear boundaries . . . The concept is as flexible and elastic as the evolving standards of commercial morality demand." Duffy v. Charles Schwab & Co., Inc., 123 F. Supp.

2d 802, 815 (D.N.J. 2000) (quoting <u>N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc.</u>, 144 N.J. Super. 411, 427 (N.J. Ch. Div. 1976)). "The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to source." <u>Bonito Boats, Inc. v. Thunder Craft Boats, Inc.</u>, 489 U.S. 141, 157 (1989). Indeed, **"[t]he essence of unfair competition is the practice of palming off one's product as that of another**." <u>Squeezit Corp. v. Plastic Dispensers</u>, 31 N.J. Super. 217, 222 (N.J. App. Div. 1954) (emphasis supplied). Most cases of unfair competition encompass one of two business torts: the passing off of one's goods or services as those of another and unprivileged imitation. *See* <u>SK&F, Co. v. Permo Pharm. Lab., Inc.</u>, 625 F.2d 1055, 1062 (3d Cir. 1980). Thus, "[a]lthough it is impossible to categorize all acts which constitute unfair competition, there are a few fundamental elements that are definite. In essence . . . it consists of the misappropriation of one's property by another—property which has some sort of commercial or pecuniary value." <u>N.J. Optometric Ass'n</u>, *supra*, 144 N.J. at 427. A "court's goal in assessing the sufficiency of an unfair competition claim is to identify any use of misleading, deceptive, injurious or otherwise improper and wrongful practices which would render competition unfair. The law must be sufficiently flexible to accommodate that goal. *See* <u>Avaya, Inc. v. Cisco Systems, Inc.</u>, No. 10-5881, 2012 WL 2065536, *7 (D.N.J. June 6, 2012)[6] (internal citations omitted).

The "prevention of unfair competition is not circumscribed by rigid rules . . . [and] equity has grown more vigilant in the search for efforts on the part of one competitor to capitalize on the good will of another, to pass off his goods as those of another, or to pirate the trade of his competitor by unfair or deceptive practices." <u>Sachs Furniture & Radio Co. v. Sachs Quality</u>

---

[6]A true and complete copy of this case is annexed as **Exhibit B** to the *Sheikh* Decl.

Stores Corp., 39 N.J. Super. 70, 85 (App. Div. 1956).  Indeed, the essence of New Jersey's unfair competition law is fair play, "[t]hus the purpose of the law . . . is to promote higher ethical standards in the business world." Ryan v. Carmona Bolen Home for Funerals, 341 N.J. Super. 87, 94 (App. Div. 2001) (citation omitted).  "The judicial goal should be to discourage, or prohibit the use of misleading or deceptive practices which renders competition unfair." Id. at 92 (App. Div. 2001). See Reckitt Beckiser, supra, 2011 WL 773034, at *9 (finding that plaintiffs adequately pled a claim for unfair competition by alleging that defendant had access to confidential information, was aware of the confidential nature of his work, and disclosed the confidential information).

Under this standard, PTT has properly pled a claim for unfair competition under New Jersey common law. The basis for PTT's unfair competition claim is simple:  Defendants are harming a competitive marketplace by stealing PTT's technology, intellectual property, and confidential information and using that technology to: (i) increase its own profits; while (ii) harming PTT's reputation and goodwill for "unique and proprietary feature(s) which is likely to impress and sell well in the gaming industry upon launch. See Amended Complaint, ¶60.

Specifically, the Amended Complaint alleges the following.  PTT has expended significant resources developing its trade secrets relating to Super Stacks and Super Symbols, confidential information, and '223 Patent. See Id., ¶¶50, 60-61.  Defendants had access to, and misappropriated PTT's trade secrets and confidential information, and are infringing on the '223 Patent. Id. at ¶¶25, 32, 53-56, 77.  Defendants' actions have misled, and will continue to mislead persons in the slot gaming industry to believe the Defendants have received permission, license, or other consent from PTT to make, use, sell, offer for sale, or otherwise utilize PTT's trade secrets, confidential information, or patented functionality in their games.  Id. at ¶¶38, 39-41, 62.

17

Defendants have launched games into the slot gaming industry and are benefitting financially from their actions. Id. at ¶¶39-41, 43-48. Defendants' misleading and deceptive practices in misappropriating PTT's trade secrets and confidential information, and infringement of the '223 Patent stifles fair competition, and causes confusion for persons within the slot gaming industry as to the source of the gaming features being used by Defendants. Id. at ¶¶62-64, 68.

For all of the foregoing reasons, Defendants' position is unsustainable and their motion to dismiss should be denied.

**B.     PTT's Federal Law Unfair Competition Claim is Sufficiently Plead**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), proscribes unfair competition or, as the statute refers to it, "false designation of origin". 15 U.S.C. §1125(a). *See* <u>SK & F, Co.</u>, *supra*, 625 F.2d at 1065 (The statute "proscribes not only acts that would technically qualify as trademark infringement, but also unfair competitive practices involving actual or potential deception."). The statute provides that:

> (1) Any person who, on or in connection with any goods . . . , uses in commerce . . . **any false designation of origin** . . . , which—
>
> (A) **is likely to cause confusion**, or to cause mistake, or **to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person** . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A) (emphasis supplied).

To state a false designation claim pursuant to 15 U.S.C. § 1125(a) of the Lanham Act, a plaintiff must allege: (1) that defendants used a false designation of origin; (2) that the use of the false designation of origin occurred in interstate commerce in connection with goods or services;

18

(3) that the false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of plaintiff's goods and services by another person; and (4) that plaintiff has been or is likely to be damaged as a result.  Advanced Fluid Sys., Inc. v. Huber, No. 13-3087, 2014 WL 2770231, at *20 (M.D. Pa. June 18, 2014)[7] (citing AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1428 (3d Cir. 1994)).

Here, PTT has sufficiently alleged a reverse passing off false origin claim under the Lanham Act.  First, the Amended Complaint alleges that Defendants' games, which embody PTT's intellectual property and confidential information, are being passed off as PTT's games. *See Amended Complaint*, ¶¶37-45, 48, 60-63.  Second, the Amended Complaint alleges that the use of the false designation of origin occurred in interstate commerce in connection with the goods.  *See* Id., ¶¶3, 6-7, 37, 48.  Third, the Amended Complaint alleges that the false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of PTT's goods and services by another person.  *See* Id., ¶¶62-64.  Fourth, the Amended Complaint alleges that PTT has been or is likely to be damaged as a result of Defendants' unlawful conduct. *See* Id., ¶65.  Thus, the Amended Complaint, with all inferences drawn in PTT's favor, should be construed as alleging not only that Defendants created a likelihood of confusion, but also that the confusion was realized in that potential consumers chose Defendants' games over those of PTT. These facts, if true, establish that confusion was likely and, in fact, became reality.

For all of the foregoing reasons, Defendants' position is unsustainable and their motion to dismiss should be denied.

---

[7]A true and complete copy of this case is annexed as **Exhibit A** to the *Sheikh* Decl.

## POINT III

**PTT HAS SUFFICIENTLY ALLEGED ITS
DIRECT AND INDIRECT PATENT
INFRINGEMENT CLAIMS CONCERNING
SUPER SYMBOLS, THEREBY REQUIRING
THAT DEFENDANTS' MOTION TO DISMISS
UNDER RULE 12(b)(6) BE DENIED**

The Fifth and Sixth Causes of Actions in the Amended Complaint provide notice to Defendants of PTT's direct and indirect patent infringement claims by specifically identifying the alleged infringing products and devices that infringe PTT's '223 Patent. Accordingly, Defendants' arguments should be disregarded and their motion denied.

**A.    PTT' Direct Infringement Claim is Sufficiently Plead**

It is well-settled that to sufficiently plead direct infringement under 35 U.S.C. § 271(a), the complaint need only satisfy the requirements of Form 18 of the Federal Rules of Civil Procedure.  Bel Fuse Inc. v. Molex Inc., No. 13-2566 JBS, 2014 WL 2710956, at *3 (D.N.J. June 16, 2014)[8] (citing In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1336 (Fed.Cir. 2012) ("As long as the complaint in question contains sufficient factual allegations to meet the requirements of Form 18, the complaint has sufficiently pled direct infringement.")). "Form 18 and the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met" or "even identify which claims it asserts are being infringed." In re Bill of Lading 681 F.3d at 1335 (citing McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1357 (Fed.Cir.2007)). "[T]o the extent any conflict exists between Twombly (and its progeny) and the Forms regarding pleadings requirements, the Forms

---

[8]A true and complete copy of this case is annexed as **Exhibit C** to the *Sheikh* Decl.

control." *K–Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013) (citing *In re Bill of Lading*, 681 F.3d at 1334). However, "Form 18 in no way relaxes the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device is being accused of infringement." *Id.* at 1284.

Form 18 provides a sample complaint for direct patent infringement and requires:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent "by making, selling, and using [the device] embodying the patent"; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

*Id.* at 1283; *see also* Fed. R. Civ. P. Form 18.

Here, PTT's Amended Complaint satisfies the foregoing Form 18 pleading requirements:

1. Allegation of the Court's jurisdiction, *Amended Complaint*, ¶2;

2. Allegation of PTT's ownership of the '223 Patent, *id.*, ¶20;

3. Allegation that Defendants have been infringing the '223 Patent by making, selling, and using the device or technology embodying the patent, *id.*, ¶¶40-41;

4. Allegation that PTT has given Defendants notice of infringement, *id.*, ¶¶46-47; and

5. A demand for an injunction and damages, *id.*, Prayer for Relief.

However, notwithstanding the foregoing, the Amended Complaint **exceeds** the Form 18 pleading requirements approved by *In re Bill of Lading*, 681 F.3d at 1334-35 and *K–Tech Telecommunications*, *supra*, 714 F.3d at 1283, because (1) the term "Infringing Games" alleged in the Amended Complaint can refer to no other products except for the games that infringe the '223 Patent (the only patent at issue) and (2) the Amended Complaint identifies Defendants' infringing games as the "Mega Symbols Games" which, significantly, are specifically identified

21

in PTT's pleadings. *See Amended Complaint*, ¶¶40-41 ("the following games made by Gimmie incorporate the Mega Symbols feature: Storm Queens: Thunder Queen; Storm Queens: Frost Queen; Storm Queens: Flame Queen; and Storm Queens: Sand Queen (collectively "Mega Symbols Games") . . . . Each of the Mega Symbols Games embody" Claim 10 of the '223 Patent.). *See* Bel Fuse, 2014 WL 2710956, *5-6 (D.N.J. June 16, 2014) (complaint satisfied the requirements of Form 18 and stated a plausible claim for direct infringement because plaintiffs specifically identified defendant's allegedly infringing product lines by name).   Thus, Defendants' contention that "[i]n particular, even though H5G uses 'Infringing Games' as a defined term, it makes no effort whatsoever to identify what games allegedly infringe the '223 Patent," is patently untrue as plainly disclosed by the aforementioned allegations in PTT's Amended Complaint.

Furthermore, the cases cited by Defendants are all inapposite and distinguishable.  For instance, in Fifth Market, Inc. v. CME Grp., Inc., No. 08-520, 2009 WL 5966836, at *1 (D. Del. May 14, 2009) (unreported)[9], where the Court found it was unclear whether a specific product referenced was intended to refer to infringement of one or both of the patents at issue in the lawsuit, is distinguishable from PTT's claim because there is only one patent at issue – the '223 Patent-and it is clear that the Amended Complaint alleges Defendants' Mega Symbols games are infringing on the '223 Patent.

Likewise, in Gen-Probe, Inc. v. Amoco Corp., 926 F. Supp. 948, 962 (S.D. Cal. 1996), where the court was troubled by the fact that "the complaint is devoid of any reference to infringing products" and contained a single conclusory sentence, is distinguishable from PTT's

---

[9]A true and complete copy of this case is annexed as **Exhibit D** to the *Sheikh* Decl.

claim because the Amended Complaint alleges that the infringing products are the Mega Symbols games. *See Amended Complaint*, ¶41.

Similarly, <u>Ondeo Nalco Co. v. EKA Chemicals, Inc.</u>, 2002 WL 1458853 (D. Del. June 10, 2002)[10], is factually inapposite because, unlike the plaintiff in <u>Ondeo Nalco Co.</u>, PTT has specifically provided examples of Defendants' allegedly infringing products (*i.e.*, Mega Symbols games) and has advanced a credible theory for why such a broad range of products might potentially infringe the '223 Patent.

Lastly, Defendants' argument that "H5G also impermissibly lumps three defendants together and makes only generic assertions as to their purported infringement" is unpersuasive. None of the cases cited by Defendants stands for the proposition that pleading multiple defendants together requires a dismissal of a complaint that otherwise provides the defendants with proper notice and is otherwise pled adequately under the FRCP Form 18 standard. To the contrary, the touchstones of an appropriate analysis under Form 18 are notice and facial plausibility. *See* <u>K-Tech</u>, *supra*, 714 F.3d at 1283.

Here, PTT's Amended Complaint satisfies these standards. First, Defendants know what the '223 Patent claims are. Second, they know that PTT asserts Defendants have been infringing the '223 Patent by making, selling, and using the Mega Symbols games embodying the '223 Patent. *See Complaint*, ¶¶40-41. These allegations are adequate to satisfy the requirements of Form 18 and the pleading standards that govern these actions.

Accordingly, Defendants' motion to dismiss the Fifth Cause of Action in the Amended Complaint should be denied.

---

[10]A true and complete copy of this case is annexed as **Exhibit G** to the *Sheikh* Decl.

**B.     PTT's Induced Infringement Claim is Sufficiently Plead**

PTT's indirect patent infringement claim is likewise sufficiently plead and should not be dismissed. Under Title 35, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). A claim of induced patent infringement arises where "the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." AstraZeneca LP v. Apotex, Inc., 633 F.3d 1042, 1056 (Fed. Cir. 2010) (citation omitted).

Four elements are required to state a claim for induced infringement: "(1) there was direct infringement by the induced party; (2) the inducer had knowledge of the asserted patents; (3) the inducer "possessed specific intent [and] not merely ... knowledge of the acts alleged" to induce; and (4) there was active inducement of the direct infringer." Bel Fuse Inc., *supra*, 2014 WL 2710956, at *6 (quotations omitted).

Here, the factual allegations in the Amended Complaint are sufficient to allow an inference that there was direct infringement by an induced party, namely (1) the inducement by Gimmie Games, Marks Studios, LLC, Marks, Masci and Kavanaugh of Aristocrat Technologies' direct infringement of PTT's '223 Patent and (2) the inducement by *all* of the Defendants of the direct infringement of the '223 Patent by casinos and players. *See Amended Complaint*, ¶¶37-39, 41-43, 46-48, 82. Notably, there is no legal requirement that direct infringers be identified by name and identifying direct infringers as "customers" has been held sufficient for purposes of a Rule 12(b)(6) motion. *See, e.g.*, Oy Ajat, Ltd. v. Vatech Am., Inc., No. 10-4875 PGS, 2011 WL

24

1458052, *3-4 (D.N.J. Apr. 14, 2011) (unpublished)[11] (citing Fuji Mach. Mfg. Co., Ltd. v. Hover–Davis, Inc., 936 F.Supp. 93, 95–96 (W.D.N.Y.1996)).

The Amended Complaint also alleges that the inducer, *i.e.*, each of the Defendants, had knowledge of the asserted patent, and actively induced the infringement.   *See Amended Complaint*, ¶¶37-39, 41-43, 46-48, 82.   Specific intent, which can be shown by circumstantial evidence, *see* Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009), is satisfied by the allegations in the Amended Complaint that, despite PTT placing all of the Defendants on notice of their unlawful conduct, all of the Defendants continued to move forward with the direct infringement of PTT's intellectual property, thereby actively inducing Aristocrat, casinos and customers to infringe on PTT's patent. *Amended Complaint*, ¶¶40-41, 46-48, 82.

Thus, when the allegations in the Amended Complaint are considered as a whole, and the facts are considered in the context of the technology disclosed in the '223 Patent and the industry to which Defendants sell and market their products, it is clear that the inferences drawn in PTT's favor are both reasonable and plausible in satisfaction of the pleading standard articulated in Iqbal, *supra*, 556 U.S. at 679.

Accordingly, Defendants' motion to dismiss the Sixth Cause of Action in the Amended Complaint should be denied.

---

[11]A true and complete copy of this case is annexed as **Exhibit I** to the *Sheikh* Decl.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny, in its entirety, Defendants' Motion to Dismiss the claims alleged in the Amended Complaint.

Respectfully submitted,
MANDELBAUM, SALSBURG,
LAZRIS & DISCENZA, P.C.
Attorneys for Plaintiff /Counterclaim Defendant PTT, LLC

By:  */s/ Khizar A. Sheikh*
Khizar A. Sheikh, Esq.

Dated:  October 6, 2014

26