NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PTT, LLC d/b/a High 5 Games,<br><br>            Plaintiffs,<br><br>v.<br><br>GIMME GAMES, et al.,<br><br>            Defendants. | Civil Action No. 13-7161 (JLL) (JAD)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of Plaintiff's application for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. (ECF No. 40). The Court has considered the submissions made in support of and in opposition to Plaintiff's application, as well as the arguments presented by the parties at oral argument on October 3, 2014. For the reasons set forth below, Plaintiff's application is **DENIED**.

## I. BACKGROUND

Plaintiff, PTT, LLC, d/b/a High 5 Games (hereinafter "High 5" or "Plaintiff") develops slot machine games for the land-based, online, social, and mobile markets. (Pl. Br., ECF No. 40 at 3). One of the gaming features that Plaintiff developed was its "Super Symbols" invention. These are oversized symbols that appear in addition to traditionally sized symbols and count as if each space they cover is occupied by that symbol, "making it easier for players to achieve large wins on multiple lines at once." (Id. at 5). Plaintiff licenses its games featuring Super Symbols

to Bally Technologies (hereinafter "Bally").

Defendant, Marks Studios, LLC,[1] is the formal corporate identity for Defendant, Gimme Games (collectively "Defendants"). (Am. Compl., ECF No. 32 ¶7). Gimme Games creates slot machine games with a "Mega Symbols" feature, which Plaintiff argues infringes upon its Super Symbols games. While Gimme Games creates the products with Mega Symbols, Defendant, Aristocrat Technologies, (hereinafter "Aristocrat"), markets and distributes the physical land-based slot-games with these features. Plaintiff claims that Mega Symbols games, "ha[ve] the same look and feel as Super Symbols." (Pl. Br., ECF No. 40 at 3). Aristocrat, as one of the largest game distributors in the industry, competes directly with Bally, and thus Plaintiff alleges a direct harm to its position in the industry. (Id. at 8).

Plaintiff filed the Complaint in this case on November 26, 2013 alleging: 1) misappropriation under the NJ Trade Secret Act; 2) Unfair Competition (NJ and Federal); and 3) Breach of Contract against Defendants, relating to Plaintiff's Super Symbols feature[2] in slot machine games, amongst other components of the games. (*See generally* Complaint, ECF No. 1). On May 27, 2014, Plaintiff received U.S. Patent No. 8, 734, 223 (the "'223 patent"), for its Super Symbols game play technology. Thereafter, Plaintiff filed an amended complaint to add claims of direct and induced patent infringement.

Plaintiff made an application for a Temporary Restraining Order (and Preliminary Injunction) on August 21, 2014, which this Court denied on August 22, 2014, stating:

---

[1] Plaintiff brings this action against Defendants, Daniel Marks ("Marks"), Joseph Masci ("Masci"), and Brian Kavanagh ("Kavanagh") as well. Defendants Marks, Masci, and Kavanagh are former employees of High 5 who now allegedly work for Gimme Games. Marks is alleged to be Gimme Games' founder and Chief Executive Office, Masci is alleged to be its Chief Creative Officer, and Kavanagh is alleged to be its Director of Motion Graphics. (Am. Compl., ECF No. 32, ¶¶8-10).
[2] Super Symbols is just one feature allegedly infringed upon by Defendants in the Complaint, but is the only pertinent feature to the current motion.

> "Plaintiff has failed to show that it entitled to the *extraordinary* remedy of a temporary restraining order. Plaintiff has not shown that it will suffer *immediate* temporary harm in the absence of a temporary restraining order, as Plaintiff waited almost three months after being issued the '223 Patent before seeking such order. Further, Defendants' allegedly infringing feature has been on the market at least early as September 2013, when Plaintiffs discovered such feature. Thus, the circumstances of this case are not so exigent as to warrant a temporary restraining order." (ECF No. 41).

Essentially, the Court made the preliminary finding that Plaintiff did not demonstrate irreparable harm. Defendants opposed the issuance of an injunction on September 12, 2014. The Court heard oral argument on October 3, 2014. (Minute Entry, ECF No. 61).

## II.  LEGAL STANDARD

Preliminary injunctions are extraordinary remedies that are not routinely granted. *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004). The decision to grant a preliminary injunction is within the sound discretion of the district court. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391, 394 (2006); *see, e.g., Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1334 (Fed. Cir. 2006); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). The Court examines the following four factors in determining whether injunctive relief should be granted:

> (1) whether the movant has shown a reasonable likelihood of success on the merits;
> (2) whether the movant will be irreparably harmed by denial of the injunctive relief sought;
> (3) whether the injury to the movant in the absence of injunctive relief outweighs the possible harm to the non-movant if the injunction is granted; and
> (4) the impact of a preliminary injunction on the public interest.
> *Abbott Labs.*, 452 F.3d at 1334; *see, e.g., Nat'l Steel Car*, 357 F.3d at 1324-25.

3

The movant herein bears the burden of demonstrating that the injunction it seeks should issue. *See, e.g., Abbott Labs.,* 452 F.3d at 1334. "[A] movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.,* likelihood of success on the merits and irreparable harm." *Amazon.com,* 239 F.3d at 1350 (emphasis in original). However, the Court must generally weigh all four factors in determining whether to grant an injunction. *See id.; Novartis Corp. v. Teva Pharms. USA, Inc.,* Nos. 04-4473, 06-1130, 2007 WL 1695689, at *3 (D.N.J. June 11, 2007).

## III.  DISCUSSION

To warrant the issuance of an injunction, a plaintiff must establish more than a *risk* of irreparable injury, and rather must demonstrate "a clear showing of *immediate* irreparable injury." *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 205 (3d Cir. 1990) (quoting *ECRI v. McGraw-Hill, Inc.,* 809 F.2d 223, 225 (3d Cir. 1987)) (emphasis added). The Third Circuit has placed particular weight on the probability of irreparable harm and the likelihood of success on the merits, stating: "[W]e cannot sustain a preliminary injunction ordered by the district court where *either* or both of these prerequisites are absent." *Id.* at 197 (emphasis added) (quoting *In re Arthur Treacher's Franchisee Litig.,* 689 F.2d 1137, 1143 (3d Cir.1982)); *see also Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir. 1989); *Morton v. Beyer,* 822 F.2d 364, 367 (3d Cir.1987); *Freixenet, S.A. v. Admiral Wine & Liquor Co.,* 731 F.2d 148, 151 (3d Cir.1984). Because this Court finds Plaintiff failed to substantiate its claim that immediate irreparable harm will occur, Plaintiff's application for a preliminary injunction must be denied. The Court will discuss the several factors that militate against Plaintiff's assertion of irreparable harm in turn.

4

**A. Plaintiff's Lack of Immediacy in Seeking Injunctive Relief.**

Plaintiff has not demonstrated any current harm or alternatively, that it will be harmed, without the issuance of an injunction. Most telling perhaps, is the fact that Plaintiff was aware of Defendants' alleged breach in September of 2013. Plaintiff then waited *two months* before commencing the instant cause of action in November 2013, and about *eleven months* before filing the instant application for injunctive relief. Plaintiff fails to provide an adequate explanation for this delay. Plaintiff explains that it only discovered one week before moving for this preliminary injunction that Defendants maintained a Facebook page to promote its games with oversized symbols. However, even if the Court were to construe this as an explanation for the delay in seeking a preliminary injunction, Plaintiff fails to explain why such a discovery triggered the necessity for the *extraordinary* relief now being requested, particularly since Plaintiff had been on notice that Defendants intended to continue selling the Mega Symbols games since September 2013, if not earlier. Indeed, in *Ultimate Trading Corp. v. Daus*, this Court previously found that a *five* month delay in seeking a preliminary injunction was too substantial to then make a showing of irreparable harm. Civil Action No. 07-4203 (JLL, 2007 WL 3025681 (D.N.J. Oct. 15, 2007). Ultimately, the delay between the discovery of the alleged infringement and the Plaintiff's filing for injunctive relief belies the urgency that forms the cornerstone of injunctive relief; indeed, this delay indicates a lack of urgency. *See Hybritech Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1457 (Fed.Cir.1988) (period of delay may be significant factor in irreparable harm analysis).

Even if the Court were inclined to ignore the lack of immediacy in Plaintiff's own actions, Plaintiff fails to substantiate any allegations of *currently existing* immediate irreparable harm. Plaintiff argues that it currently operates the "highest rated social casino on Facebook" and

Defendants' competing social casino with Mega Symbols will decrease the revenue growth driven by the number of daily and monthly gamers playing on the platform.  (Pl. Br., ECF No. 40 at 3). That is, competing Mega Symbols games will decrease the number of plays and consumer returns to Plaintiff's casino, and thus, the less money the social casino can make.  However, Plaintiff fails to provide the Court with any documents or information to indicate any change in the volume of its own business conducted on Facebook (measured as sales or otherwise) since Aristocrat launched its Facebook page in January 2014.  This is not the type of *immediate* harm a preliminary injunction seeks to avoid.  To the contrary, Plaintiff merely asserts the *risk* of potential injury where the Court has not been convinced the damages cannot have a monetary value only.

### B. Plaintiff Has Not Demonstrated that Monetary Compensation Will Not Suffice as a Remedy.

Plaintiff has failed to carry the burden of proving why monetary damages would not remedy its prospective injury. No evidence has been submitted to show why Plaintiff could not be compensated financially for the alleged infringements as measured by lost sales and/or profits.  In order to satisfy the element of irreparable harm, Plaintiff must evidence that without the issuance of an injunction, it will suffer harm which cannot be sufficiently redressed following a trial of the matter. *See, e.g., Marsellis-Warner Corp. v. Rabens*, 51 F. Supp. 2d 508, 528 (D.N.J. 1999) (citation omitted).  In this regard, Plaintiff argues that because the revenue model of social casinos are different from land based games, it makes it more difficult to quantify damages monetarily. (Oral Argument Transcript ("Transcript") at 10:5-17). That is, "once [a consumer] [is] in the social casino...[they] can play any game they like...so there is a difficulty in quantifying exactly what do the users do once they are in the social casino." (Transcript at 17:19-18:1).  Plaintiff essentially argues that social casinos present a potential difficulty in calculating damages, but this is not a

6

difficulty that warrants extraordinary relief. Plaintiff must show that other remedies such as money damages are *inadequate* to compensate a plaintiff for past harm, and here, it has failed to do so. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (emphasis added).

### C. Plaintiff Has Not Established a Nexus Between Infringement and Lost Profits.

Similarly, this Court is guided by *Apple, Inc. v. Samsung Electronics Co.* which held that the district court was correct to require a nexus between infringement of the patent and some market-based injury when determining whether the Plaintiff would be irreparably harmed. 678 F.3d 1314, 1327 (Fed. Cir. 2012). The Court stated that "[a]bsent such a showing, Apple cannot establish a likelihood of irreparable harm necessary for a preliminary injunction." *Id.* Here, Plaintiff fails to illustrate that consumer game-playing decisions within the social casino, or simply the decision to enter one social casino over another, were based on the presence of the Super Symbols feature. Thus, there is no established nexus between the alleged infringement of the '223 patent and any decrease in profits later quantified by the Plaintiff.

### D. Plaintiff Has Not Met its Burden of Proving Loss of Goodwill or Damage to Reputation.

While Plaintiff argues that injunctive relief is appropriate as "it is not possible to calculate money damages (including digorgment of profits) that will compensate it for the damage to brand, reputation, and goodwill caused by Defendants' infringement" of the "Super Symbols" products, it fails to evidence this type of harm. (Pl. Br., ECF No. 40 at 24). Plaintiff argues that "Defendants' infringement has inhibited its ability to control its own '223 Patent" and this is "tarnishing [Plaintiff]'s brand in the minds of game players who will not see [these] games as unique." (Id. at 22-23). That is, Plaintiff is concerned that customers will not be loyal to High 5 games once they

see them as lacking new unique elements.  (Id. at 11).  However, Plaintiff has failed to establish that its Super Symbols technology is unique to the social casino slot-machine market and is a feature that will tarnish its goodwill, if infringed upon.  Plaintiff argues that unlike any other game that contains oversized symbols, its games have reels spinning during gameplay where both regular symbols and oversized symbols that are located on the same reels rotate on and off the screen at the same rate.  But Plaintiff does not explain how Defendants' Mega Symbols are flooding the market and harming its reputation for "unique" gaming.  While true that "harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative," here Plaintiff does not assert that the Mega Symbols games are inferior.  Reebok Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1558 (Fed. Cir. 1994).

At a maximum, Plaintiff alleges that the "Mega Symbols" feature in Defendants' game are "drawing in game players" and once these players are in "they *may* stay and play Defendants' other games." (emphasis added).  These allegations are not however, enough to establish loss of reputation or loss of goodwill and again, allege nothing more than a risk.  Nor do they show how Plaintiff would immediate lose the value of its patent absent a preliminary injunction.  While Plaintiff's allegations suggest a *risk* of irreparable injury, such a risk – alone – will not suffice.  *See ECRI*, 809 F.2d at 225 ("Establishing a risk of irreparable harm is not enough.  A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'").  The Court finds the extraordinary relief requested by Plaintiff to be inappropriate.

**E. Denying a Preliminary Injunction in this Case Preserves the Status Quo.**

The Court is mindful that the function of preliminary injunctive relief is to preserve the status quo pending a determination of the action on the merits. *King v. Saddleback Junior College District,* 425 F.2d 426, 427 (9th Cir.1970), *cert. denied,* 404 U.S. 979, 92 S.Ct. 342, 30 L.Ed.2d 294 (1971). The status quo to be preserved is that state of affairs existing immediately before the filing of the litigation, the last uncontested status which preceded the pending controversy. *Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 809 (9th Cir.), *cert. denied,* 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55 (1963). In *Tanner* the Ninth Circuit dissolved a preliminary injunction on the basis that "it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial. This is particularly true where the relief afforded, rather than preserving the status quo, completely changes it." *Tanner,* 316 F.2d at 808–09. Prior to the filing of this litigation, both Plaintiff and Defendants were free to compete in the social casino marketplace. The Court finds that the prelitigation status quo would best be preserved by permitting the parties to remain in the state of free competition in the marketplace and thus the application for a preliminary injunction is denied. *See Litton Sys., Inc. v. Sundstrand Corp.,* 750 F.2d 952, 961 (Fed. Cir. 1984) ("Had the requested preliminary injunction been entered, that state of competition, that [']status quo['], would have been drastically altered.")

**CONCLUSION**

For the reasons set forth above, Plaintiff's application for a preliminary injunction, (ECF No. 40), is **DENIED**. An appropriate Order accompanies this Opinion.

Jose L. Linares
United States District Judge

Date:   October **20,** 2014

9