**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PTT, LLC, a Delaware Limited Liability Company d/b/a High 5 Games,<br><br>Plaintiff / Counterclaim Defendant,<br><br>v.<br><br>GIMME GAMES, et al.,<br><br>Defendants. | Civil Action No.: 13-7161 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants Gimme Games, an entity; Daniel Marks, an individual; Joseph Masci, an individual; Brian Kavanagh, an individual; Marks Studios, LLC, an entity; and Aristocrat Technologies, an entity; (collectively, "Defendant")'s motion to dismiss Plaintiff PTT LLC, a Delaware Limited Liability Company d/b/a High 5 Games ("Plaintiff")'s First Amended Complaint ("FAC", ECF No. 32) pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 51). The Court has considered the parties' submissions in support of and in opposition to the instant motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court denies in part and grants in part Defendants' motion.

**I.    BACKGROUND[1]**

---

[1] The facts set forth therein are accepted as true solely for purposes of this motion.

In or around summer 2009, Plaintiff created a new concept of the unique functional experience, also called a game play mechanic, for the player of a slot machine game. (FAC ¶ 14). The functional experience involved the appearance of slot machine reels having the identical symbol shown in every symbol position on top of one another in perpetuity. (*Id.*) The concept of putting symbols on top of one another in a continuous series is known in the gaming industry as "stacks" of symbols. (*Id.* at ¶ 15). Plaintiff's game play mechanic provides a unique method of taking simple stacks and through substituting fixed symbols on the reel with the desired stack symbol. (*Id.* at ¶ 16). Through Plaintiff's technology, the reels themselves do not have to be modified to include fixed stacks to create the appearance of an infinite symbol stack through mathematical manipulation of the appearance of the reels. (*Id.*). Plaintiff called this game play mechanic "Super Stacks." (*Id.*). Plaintiffs allege that one unique aspect of their Super Stacks feature is that the algorithms designed by Plaintiffs also comply with the strict regulatory restrictions utilized by various state and international agencies regulating gaming laws. (*Id.* at ¶ 17). Defendants Marks, Masci, and Kavanagh knew about these confidential formulations during their time as Plaintiff's employees. (*Id.*). Plaintiffs considered its method of making games which utilize the Super Stacks feature to be a trade secret and have complied with all lawful requirements to ensure its trade secrets are adequately protected. (*Id.* at ¶ 18).

Plaintiffs also invented a concept of oversized symbols occupying multiple positions across multiple rows and/or columns, called "Super Symbols". (*Id.* at ¶ 19). On May 27, 2014 Super Symbols was given Patent Protection by the United States Patent and Trademark Office when it issued Patent No. 8.734,223 (the "'223 Patent"). (*Id.* at ¶ 20). Similar to Super Stacks, Plaintiff also considered it method of making games utilizing its methodology to create the Super Symbols feature to be a trade secret, and took the appropriate protection measures accordingly.

2

(*Id.* at ¶ 21). In 2011, Plaintiffs built its first game with the Super Symbols Trade Secret, entitled "Ocean's Glory". (*Id.* at 22). Defendant Masci was Plaintiff's Art Director at the time and was in charge or creating and/or overseeing all art for the game, including creation of the Super Symbols art work. (*Id.*). Subsequently, Plaintiff created numerous games incorporating the Super Symbols feature; many of which were sold to one of Plaintiff's licensees, Bally Technologies ("Bally") under the premise that such feature was unique to Plaintiff's games created for Bally. (*Id.* at ¶ 23). Because Plaintiff and Bally believed the Super Symbols feature was likely to be popular within the industry, both parties agreed to keep the games containing the feature confidential. (*Id.* at ¶ 24). Confidentiality ceased when such games became publicly known at an industry trade show, G2E, from September 24th-26th, 2013, in Las Vegas Nevada. (*Id.*).

Defendant Marks ("Marks") worked for Plaintiff from September 1998 until his resignation on February 4, 2010, where he served as Plaintiff's legal counsel and worked closely under Plaintiff's CEO Anthony Singer developing casino game and slot machine-type software. (*Id.* at ¶ 25-26). Following his resignation, Marks entered into a Separation, Severance, and Transition Agreement (the "Marks Agreement"), in which Marks was obligated to, *inter alia,* return any and all of Plaintiff's confidential information, was required to forever maintain the confidentiality of Plaintiff's confidential information, and Plaintiff would be entitled to injunctive relief for a breach of any of these covenants. (*Id.* at ¶ 26).

Defendant Masci ("Masci") worked for Plaintiff from August 1999 until his termination on June 7, 2012, where he was subject to a Separation Agreement. (*Id.* at ¶ 28). In exchange for Masci's ongoing obligations related to confidentiality, non-competition, and non-solicitation, Masci was granted a severance payment equal to one-year's salary and his stock appreciation

3

rights, originally granted in November 2011, were accelerated and fully vested upon separation from Plaintiff. (*Id.*).

Defendant Kavanagh ("Kavanagh") worked for Plaintiff from January 2009 until 2011, where he served as a Motion Graphics Designer and eventually, Animation Manager. (*Id.* at ¶ 30). Similar to the previously mention individual Defendants, as a condition of his employment, Kavanagh executed numerous contracts with Plaintiff regarding confidentiality, noncompetition, assignment of IP, and similar obligations. (*Id.*). All individual Defendants either contributed to the creation or were privy to many, if not all of Plaintiff's confidential and proprietary methods of making games and features in development, including Super Stacks and Super Symbols. (*Id* at ¶ 32).

As early as October 2012, Marks entered into an agreement with one of the larger game distributors in the gaming industry, Aristocrat, as a third party game content provider name "Gimme" and/or "Marks Studios". (*Id.* at ¶ 33). In December 2012, Marks hired Kavanagh as Gimme's Director of Motion graphics. (*Id.* at ¶ 34). Before his non-compete period expired in June 2013, Masci began discussions with Marks regarding Masci's potential involvement with Gimme and was eventually hired as Chief Creative Officer in July 2013. (*Id.* at ¶ 35).

Gimme's games were featured at Aristocrat's booth at G2E, including games with features named Mega Symbols and Max Stacks. (*Id.* at ¶ 38). Plaintiff alleges that Gimme's Mega Symbols and Max Stacks features, when embodied in a slot machine game, are a result of misappropriated information derived from Plaintiff's Super Symbols and Super Stacks features. (*Id.* at ¶¶ 39, 40). Marks, Masci, and Kavanagh allegedly worked collectively to create each of the Mega Symbols and Max Stacks games, with the actual knowledge of the origination of such features and trade secrets associated with Plaintiff and those contained in the '223 Patent. (*Id.* at

4

¶¶ 41-45). At G2E, as well as several weeks after, Plaintiffs put Aristocrat and the individual Defendants on written notice of its intellectual property rights and made a demand to cease all promotion and sales of the Max Stacks and Mega Symbols games. (*Id.* at ¶ 46, 47).

Plaintiffs assert the following causes of action in the FAC: (1) Misappropriation under the New Jersey Trade Secret Act; (2) Unfair Competition under 15 U.S.C. § 1125(a); (3) Unfair Competition under New Jersey Common Law; (4) Breach of Contract; (5) Direct Patent Infringement under 35 U.S.C. § 271(a); and (6) Induced Patent Infringement under 35 U.S.C. § 271(b).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (2007). Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

5

elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, 557 (2007)). However, this "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *West Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008)).

## III. DISCUSSION

### A. Motions Before the Court

#### a. Defendant's Argument

Defendant argues that dismissal is warranted on 4 grounds: (1) Plaintiff has failed to plausibly allege the existence of a trade secret and its wrongful taking by Defendants; (2) Plaintiff has failed to allege secondary meaning and the subject's product features are functional and not protectable; (3) There cannot be a Breach of Contract claim because the information at issue was not confidential; and (4) The Super Symbols Patent Claims are not sufficiently pled.

#### b. Plaintiff's Opposition

Plaintiff responds to Defendant's motion by arguing: (1) Under binding legal precedents, Plaintiff has sufficiently identified and alleged its trade secret in the Amended Complaint; (2) Plaintiff has sufficiently alleged unfair competition; and (3) Plaintiff has sufficiently alleged its direct and indirect patent infringement claims concerning Super Symbols.

### B. Trade Secret Claim

To prevail in New Jersey upon a claim for misappropriation of a trade secret, a trade secret owner must establish that: (1) a trade secret exists; (2) the information comprising the trade secret was communicated in confidence by plaintiff to the employee; (3) the secret information was disclosed by that employee and in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the employee's breach of confidence; (5) the secret information was used by the competitor to the detriment of plaintiff; and (6) the plaintiff took precautions to maintain the secrecy of the trade secret. *Rohm and Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429-30 (3d Cir. 1982).

A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers. *Smith v. BIC Corp.*, 869 F.2d 194, 199 (3d Cir.1989) (Internal citations omitted).

In *Reckitt Benckiser Inc. v. Tris Pharma, Inc.*, this Court held that a claim of misappropriation of a trade secret "does not require specific pleading of precise information that constitutes the trade secret in order to survive a motion to dismiss." No. 09-3125, 2011 WL 773034 at *3 (D.N.J. Feb. 28, 2011) (*citing Oswell v. Morgan Stanley Dean Witter & Co*, No. 06–5814(JBS), 2007 WL 1756027, at *7 (D.N.J. June 18, 2007). Moreover, "unless there are heightened pleading requirements as to a particular cause of action, the Federal Rules of Civil Procedure do not require a plaintiff to plead all relevant facts in detail…and generally do not require plaintiff to provide specific information about trade secrets at this stage of the litigation." *Id.* The Court denied a defendant's motion to dismiss a plaintiff's claim for misappropriation of a

7

trade secret concerning the manufacturing process, formulations, and other private information concerning research and development of an over-the-counter cough syrup. *Id.* at 3. The Court felt that dismissal was inappropriate at this stage of the litigation, prior to the close of discovery and held that the plaintiff had sufficiently alleged the existence and misappropriation of a trade secret. *Id.* at 3-5.

Nonetheless, in *Givaudan Fragrances Corp. v. Krivida,* this Court also held, "[g]enerally, a plaintiff in a misappropriation of trade secrets case must identify with precision the trade secrets at issue at the outset of the litigation." No. 08-4409 PGS, 2013 WL 5781183 at *5 (D.N.J. Oct. 25, 2013), appeal dismissed (Dec. 20, 2013) (Internal Citations Omitted). "A plaintiff must provide at the outset of discovery "a description of the trade secrets at issue that is sufficient to (a) put the defendant on notice of the nature of plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." *Id.*

Defendant argues that Plaintiff's claim must be dismissed because Plaintiff has failed to plausibly allege the existence of a trade secret and its wrongful taking by Defendant. Specifically, Defendant states that Plaintiff contends that its alleged trade secret is the fact that the "Super Stacks" methodology complies with regulations relating to slot machine gaming. Because Plaintiff has not alleged that some unique regulatory burden on its previously published symbol substitution methodology would provide a barrier to regulatory approval of its "Super Stacks" games process, nor any unique method of overcoming any such barrier, Defendant contends that Plaintiff has failed to set forth a plausible claim for relief. Moreover, Defendant argues that Plaintiff fails to allege any facts relating to how Defendants obtained and thus misappropriated Plaintiff's process by which they are able to obtain regulatory approval for their games.

8

Additionally, Defendants contend that Plaintiff's alleged trade secret has been publicly available since April 5, 2012, when the USPTO published Plaintiff's abandoned patent application for "Super Stacks". Further, Defendants assert that Plaintiffs are trying to avoid the potential consequences of their previously abandoned patent application being public information, by altering their alleged trade secret from the Super Stacks substitution methodology to the algorithm that is behind the methodology.

Plaintiff responds to Defendant's arguments by stating that Plaintiff is not required to disclose its trade secrets with respect to the algorithms that comply with state and international regulatory agencies overseeing gaming laws. Plaintiff points to the language of NJSTA which states that "[i]n an action under [the Act], a court shall preserve the secrecy of an alleged trade secret by reasonable means…" N.J.S.A. 56:15-7. What is more, Plaintiff cites to this Court for the proposition that a plaintiff need not provide specific information about trade secrets at this stage of the litigation. Plaintiff argues that a complaint can sufficiently allege the existence of a trade secret, notwithstanding the fact that the plaintiff's trade secret was referenced in its patent.

Although the Court is cognizant of the possibility of Plaintiff attempting to alter what their proposed trade secret is, it nonetheless finds that Plaintiff has properly pled the misappropriation of a trade secret. Following the rationale in *Reckitt,* the Court feels as though dismissal of Plaintiff's claim at this stage of the litigation would be inappropriate. No. 09-3125, 2011 WL 773034 at *3-5 (D.N.J. Feb. 28, 2011). Plaintiffs have pled the following facts relevant to the existence of the algorithms as a trade secret: (1) Plaintiffs created a new concept, called a game play mechanic, for the play of a slot machine game; (2) Plaintiff's game play mechanic has a *unique aspect*, in that the math models (ie. algorithms) designed by Plaintiff also comply with the strict regulatory restrictions utilized by various state and international regulatory agencies

overseeing gaming laws; and (3) Plaintiff has considered this methodology to create Super Stacks and Super Symbols trade secrets and has complied with the lawful requirements to ensure that they are adequately protected. (FAC at ¶¶ 14, 17, 18, 21). (Emphasis added). Therefore, the Court finds that the Complaint sufficiently alleges the existence of the algorithms as a trade secret.

Regarding Defendant's concern about whether Plaintiff is redefining its trade secret, the Court feels that the rationale followed in *Givaudan* will quell these issues. No. 08-4409 PGS, 2013 WL 5781183 at *5 (D.N.J. Oct. 25, 2013), appeal dismissed (Dec. 20, 2013). Once discovery resumes, Plaintiff will be required to provide "a description of the trade secrets at issue that is sufficient to (a) put the defendant on notice of the nature of plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." *Id.* It will be at this point that Defendant will be told "what precisely is asserted as a secret," including what unique regulatory burdens the games must past and how the algorithms achieve that objective. *Id.* at 10. Plaintiff will be forced to reveal these math models with precision, if they are part of the trade secret claim. Therefore, Defendants motion to dismiss Plaintiff's trade secret claim is denied.

### C. Breach of Contract Claim

The Court finds that insomuch as the breach of contract claims are expressly premised on the supposed misuse of Plaintiff's confidential information, the breach of contract claim should not be dismissed at this time. Defendant argues that because Plaintiff is not able to identify any confidential information to which the breach of contract claim is premised upon, the claim cannot proceed. However, because the Court finds that, at this stage of the litigation, Plaintiff has properly pled the existence and misappropriation of a trade secret, therefore, it follows that

10

Plaintiff identified the existence of confidential information. As a result, Defendant's motion to dismiss Plaintiff's breach of contract claim is denied.

### D. Unfair Competition Claims

To state a false designation claim pursuant to 15 U.S.C. § 1125(a) of the Lanham Act, Plaintiff must allege: (1) that defendants used a false designation of origin; (2) that the use of the false designation of origin occurred in interstate commerce in connection with goods or services; (3) that the false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of Plaintiff's goods and services by another person; and (4) that Plaintiff has been or is likely to be damaged as a result. *See AT & T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3d Cir.1994). Additionally, New Jersey's common law of unfair competition is similar and employs the same test used under the Lanham Act. *Id.* at 1433. False designation of origin claims are categorized as either a "passing off" claim or a "reverse passing off" claim. The Supreme Court distinguished the two claims: "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. Reverse passing off, as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 (2003).

Defendant argues that the Court should dismiss Plaintiff's federal and state law unfair competition claim. Defendant states that because Plaintiffs appear to be asserting a right to "Super Symbols" and "Super Stacks" as protectable trade dress, Plaintiff must establish rights in a product feature as trade dress, as well as comply with the statutory burden of proving non-functionality. Defendant contends that Plaintiff has not only failed to allege secondary meaning, but Plaintiff admits that the subject's product features are functional and thereby concedes that

11

they are not protectable. Moreover, Defendant maintains that Plaintiff may not argue that its trade dress is actually the "promoting" or "presentation" of "Super Symbols" and "Super Stacks" to the general public. They base their assertion on the 3rd Circuit's affirmation of a dismissal of a trade dress claim where the plaintiff's claimed trade dress was the presentation of a combination of functional aspects of its business.

Plaintiff responds to Defendant's arguments by citing to Section 43(a) of the Lanham Act, §15 U.S.C. § 1125(a). Plaintiff notes that the statute provides that:

> (1) Any person who, on or in connection with any goods…, uses in commerce…*any false designation of origin*…, which—
>
> (2) *is likely to cause confusion,* or to cause mistake, *or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…*
>
> shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A) (emphasis added).

Plaintiff contends that based upon this statute's language as well as the way it frames its claim within the Complaint, Plaintiff has sufficiently alleged a "reverse passing off" false origins claim under the Lanham act.

The Court finds, at this stage of the litigation, Plaintiff has sufficiently pled a claim for Unfair Competition under the Lanham Act and New Jersey's common law. Plaintiff has alleged that Defendant used a false designation of origin by allegedly using Plaintiff's intellectual property and confidential information and passing it off as Plaintiff's game. Specifically, Plaintiff alleges that the use of Plaintiff's intellectual property and confidential information in

Defendant's games have misled and will continue to mislead many persons in the slot gaming industry. (*See* FAC ¶¶ 39-45, 62).

Second, Plaintiff has alleged that the false designation of origin occurred in interstate commerce in connection with goods or services. Plaintiff alleges that Defendant featured their infringing game in Aristocrat's booth at G2E, as well as the games being included in the marketing materials distributed at G2E. (*See* FAC ¶ 37.) Moreover, Plaintiffs allege that Defendant continues to "move forward with making, using, offering for sale, selling and potentially importing" the infringing games. (*See* FAC ¶ 48).

Third, Plaintiff has sufficiently alleged that the false designation is likely to cause confusion, mistake or deception sponsorship or approval of Plaintiff's goods and services by another person. Plaintiff alleges that Defendant's misappropriation of trade secrets and other confidential information has caused many persons and relevant customers in the slot gaming industry to be deceived in various ways. (*See* FAC ¶¶ 62-64). Finally, Plaintiffs have alleged that Plaintiff is likely to be damaged as a result of Defendant's unlawful conduct. (*See* FAC ¶ 65). Based upon the foregoing, Plaintiff has sufficiently pled a claim for Unfair Competition under the Lanham Act and the New Jersey Common Law and Defendant's motion is denied.

### E. Patent Infringement Claims

#### a. Direct Infringement

Form 18 in the appendix of the FCRP, sets forth a sample complaint for direct patent infringement. As explained by the Federal Circuit, Form 18 requires: (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4)

a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012) (Internal citations omitted).

Defendant argues that Plaintiff has failed to properly plead a direct infringement claim and has instead only made a "threadbare recital of the elements" and conclusory allegations that Defendant infringed upon the '223 patent. Defendant states that although Plaintiff uses the term "Infringing Games", Plaintiff has failed to identify which specific games allegedly infringe the patent. Moreover, Defendant asserts that Plaintiff "lumps" Defendant Marks, Masci, and Kavanagh and only makes generic assertions as to their supposed infringement.

Plaintiff responds to Defendant's argument by indicating that Plaintiff need only satisfy the requirement of Form 18 of the Federal Rules of Civil Procedure in order to sufficiently plead a direct infringement claim. Plaintiff expressly lays out how it has met every element of direct infringement claim, as instructed by Form 18. Moreover, Plaintiff states that it has gone beyond the pleading requirements of Form 18 because (1) the term "Infringing Games" can refer to no other products at issue except for the games that infringe the '223 patent (the only patent at issue) and (2) the Amended Complaint identifies Defendant's infringing games as the "Mega Symbol Games," which are specified by name in the Complaint. Finally, Plaintiff argues that Defendant has failed to cite any relevant law that supports the proposition that Plaintiff's claim should be dismissed for failure to distinguish the individual Defendants.

The Court finds that Plaintiff has alleged a direct infringement claim in a manner sufficient to survive Defendant's motion to dismiss. Plaintiff has made an allegation of jurisdiction (*See* FAC ¶ 2); Plaintiff has alleged that Plaintiff owns the '223 patent (*See* FAC ¶ 20); Plaintiff has alleged that Defendant has been infringing on the '223 patent by "making,

selling, and using the device embodying the patent (*See* FAC ¶¶ 38, 40-41, 43); Plaintiff has alleged that Plaintiff has given Defendant notice of its infringement (*See* FAC ¶ 46, 47); and Plaintiff has made a demand for an injunction and damages (*See* FAC Prayer for Relief). Moreover, Plaintiff has also explicitly provided notice to Defendant, within the Complaint, by listing the "Mega Symbols" games, by individual name, which allegedly infringe on Plaintiff's '223 patent. (*See* FAC ¶ 40, 41).

Additionally, the Court finds Defendant's argument regarding the "lumping" of the individual Defendants unpersuasive. Defendant relies on this Court's holding in *Richmond v. Lumisol Elec. Ltd.* for the proposition that a direct patent claim should be dismissed for failure of each count to include only one patent and one defendant. No. 13-1944 MLC, 2014 WL 1405159, at *2 (D.N.J. Apr. 10, 2014). However, the Court in *Richmond,* dismissed the plaintiff's direct infringement claim because plaintiff "lumped" his claims into one "umbrella" paragraph, which included multiple patents, defendants, and both direct and indirect claims. *Id.* Here, Plaintiff is alleging infringement in regards to one patent, the '223 patent. Likewise, Plaintiff has alleged direct infringement by Gimme Games, which the three individual Defendants are employed by. The Court fails to see how this case and *Richmond* are analogous. Based upon the foregoing, the Court finds that Plaintiff has pled a direct infringement claim sufficient to survive Defendant's motion to dismiss.

### b. Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "Unlike direct infringement, satisfying the requirements of Form 18 is not sufficient to state a claim for induced infringement." *Bel Fuse Inc. v. Molex Inc.*, No. 13-2566

JBS, 2014 WL 2710956, at *6 (D.N.J. June 16, 2014) (*See In re Bill of Lading*, 681 F.3d at 1336 ("Form 18 should be strictly construed as measuring only the sufficiency of allegations of direct infringement, and not indirect infringement.")). "Instead, claims of induced infringement are governed by the "plausibility" standard of *Iqbal* and *Twombly*." *Id.* at *6

To state a claim for induced infringement, a plaintiff must plead facts to raise the plausible inference that: (1) Defendant knowingly induced a third party to perform specific acts; (2) Defendant specifically intended for the induced acts to infringe the patent; and (3) as a result of the inducement, the third party directly infringed the patent. *See DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed.Cir.2006); *Hoffmann–La Roche Inc. v. Apotex Inc.*, CIV.A. 07–4417, 2010 WL 3522786, at *2 (D.N.J. Sept.2, 2010).

Defendants argue that Plaintiff has failed to allege the elements required to state a claim for induced infringement. Defendant states that Plaintiff provides no specific, substantiated allegations of inducement and fails to identify any accused infringing products or provide specific allegations on the part of any individual Defendant.

Plaintiff responds by pointing to specific factual allegations in the Amended Complaint which Plaintiff alleges are sufficient to state a claim for induced infringement. Plaintiff furthers its argument by pointing to case law for the proposition that "there is no legal requirement that direct infringers be identified by name, identifying infringers as customers" and argues that this has been held sufficient for purposes of a Rule 12(b)(6) motion, and that specific intent of an infringer can be shown by circumstantial evidence. Plaintiff further asserts that when the allegations in the Amended Complaint are taken as a whole, Plaintiff has sufficiently pled an induced infringement claim.

After consideration of all of the aforesaid, the Court finds that Plaintiff has failed to plead sufficient facts to state a viable claim for induced infringement. In support of the first element of this cause of action, in its Complaint Plaintiff alleges:

"each of the Defendants, through their respective actual knowledge of the patent claims covering the infringing games, and with malice and intent to harm [Plaintiff], actively induced various third parties, including, but not limited to, casinos, players, and the like, to make, use, sell, offer for sale and/or import into the United States, the Infringing games."
(FAC ¶ 82).

This statement amounts to a threadbare recital of the required element and Plaintiff fails to allege any facts in the amended complaint as to how Defendant actively induced a third party to perform specific acts or how Defendant specifically intended for the induced acts to infringe the patent. However, the Court finds that Plaintiff could perhaps plead the appropriate fact setting forth a cause of action for induced infringement with specificity, therefore, the Court will grant Plaintiff the Complaint and the claim of induced infringement facts necessary to set forth the required elements. Therefore, Plaintiff's induced infringement claim is dismissed *without prejudice*.

### IV.  CONCLUSION

For the reasons herein expressed, Plaintiff's induced infringement claim is **dismissed without prejudice.** Plaintiff may amend within 30 days. Defendant's motion to dismiss Plaintiff's claims for Trade Secret misappropriation, breach of contract, unfair competition, and direct patent infringement is **denied.**

An appropriate Order accompanies this Opinion.

DATE: November 6, 2014                                     /s/ Jose L. Linares
                                                          Jose L. Linares
                                                          United States District Judge