<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HIGH 5 GAMES, LLC,**<br>**f/k/a PTT, LLC,**<br>                    **Plaintiff,**<br>**v.**<br><br>**DANIEL MARKS; JOSEPH MASCI;**<br>**BRIAN KAVANAGH; MARKS STUDIO**<br>**LLC d/b/a GIMMIE GAMES;**<br>**ARISTOCRAT TECHNOLOGIES, INC.,**<br>**JOHN SMITH(s) 1-7; and XYZ**<br>**COMPANIES 1-7,**<br><br>                    **Defendants.** | **Civil Action No. 13-7161 (JMV)**<br><br><br><br><br>**OPINION** |

<u>**FALK, U.S.M.J.**</u>

Before the Court is Plaintiff's motion for leave to file a second amended complaint. [ECF No. 171.] The motion is opposed. No argument is necessary. Fed. R. Civ. P. 78(b). For the reasons stated below, Plaintiff's motion is **GRANTED**.

## <u>BACKGROUND</u>[1]

Plaintiff—High Five Games, LLC (at times, "H5G")—develops, among other things, slot machine games for the casino gaming industry. This case involves two

---

1 This section is drawn from the briefs and papers submitted. Citations are omitted. The background is limited to that which is necessary to decide the motion; additional discussion can be found in prior Opinions. See <u>PTT v. Gimmie Games</u>, No. 13-7161, 2014 WL 5343304 (D.N.J. Oct. 20, 2014).

H5G-developed gaming methodologies and inventions known as "Super Symbols" and "Super Stacks."  Defendants Daniel Marks, Joseph Masci and Brian Kavanagh were prior employees of H5G (the "individual defendants") and allegedly privy to confidential information during their employment.  During the time period in which H5G was developing Super Symbols and Super Stacks, Marks resigned from H5G and founded Defendant Marks Studios, LLC (d/b/a "Gimmie" Games).  Marks then hired Masci and Kavanagh as Chief Creative Officer and Director of Motion Graphics, respectively.

In 2013, at a gaming industry convention, H5G discovered that another large game distributor—Defendant Artistocrat Technologies—was featuring two of Gimmie's games called "Mega Symbols" and "Max Stacks," which had the same look and feel as Super Symbols and Super Stacks.  H5G alleges that Artisocrat had received these games and/or features by working with the other Defendants who had misappropriated H5G's trade secrets.

On November 26, 2013, H5G filed its initial Complaint in this Court, alleging trademark infringement, unfair competition, and breach of contract.  H5G asserted that Marks, Masci, and Kavanagh breached their contractual obligations to H5G by utilizing H5G's confidential, proprietary, and trade secret information relating to its "Super Symbols" and "Super Stacks" games.  H5G further alleged that Gimmie, Marks, Masci, and Kavanagh used H5G's confidential information relating to the two games and then unfairly competed with H5G by creating, marketing, and selling

games to companies in the gaming industry (including Aristocrat) under the "Mega Symbols" and "Max Stacks" names.

On July 1, 2014, H5G filed a first amended complaint, which added a patent infringement claim against Aristocrat claiming infringement of U.S Patent No. 8,734,223 (the "'223 patent").  The '223 patent was issued on May 27, 2014, and covers H5G's "Super Symbols" invention.

On February 25, 2016, the case was reassigned to the Honorable John M. Vazquez, U.S.D.J.

Since being assigned to the case, I have held nine (9) conferences.  Many of these conferences were scheduled to address basic discovery and case management disputes that probably should have been resolved without the need for court-intervention.

On or about October 18, 2016, H5G advised that, based on Defendants' recent production of 500,000 pages of documents, it would be seeking leave to amend its complaint a second time.

On or about November 29, 2016, Plaintiff was instructed to circulate a proposed, amended complaint and determine whether Defendants would consent to its filing.

On December 6, 2016, Defendants declined to consent to Plaintiff's request to amend.

On December 23, 2016, Plaintiff filed a formal motion for leave to file a

second amended complaint.  The proposed amendments are:

> **(1)** to assert trade secret misappropriation and unfair competition claims against Defendant Aristocrat (these claims are currently asserted only against the individual defendants and Marks Studios);
> **(2)** to assert breach of contract, tortious interference, and breach of good faith and fair dealing claims against Marks and Aristocrat (breach of contract claims are already pending against the individual defendants);
> **(3)** to assert a new patent infringement claim against Marks Studios and Aristocrat, arising out a second patent issued in May 2015 covering the Super Stacks invention (U.S. Patent No. 9,022,852 (the "'852 patent"); and
> **(4)** to assert trade secret misappropriation under New Jersey common law and the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.

On January 11, 2017, Defendants opposed the motion to amend, arguing that

Plaintiff has unduly delayed in seeking to amend its Complaint; failed to show good

cause for the amendment pursuant to Rule 16; that the amendment would cause them

unfair prejudice and delay the case; and that some of the claims are futile.

## DISCUSSION

**A.**   **Legal Standard**

### 1. Rule 15 vs. Rule 16

The parties dispute whether H5G is required to show "good cause" under

Rule 16(b) to file its second amended complaint or whether the analysis should be

controlled by the general and liberal Rule 15 principles.

Defendants' position is that deadline for the amendment of pleadings should

have been November 14, 2016, because it was the date the parties allegedly agreed-to

and was placed in a proposed scheduling order that was submitted to the Court

(although it was never entered due to ongoing discovery and scheduling issues), *see ECF No. 147.*  Because H5G did not file its motion until December 23, 2016, Defendants contend that Plaintiff should be required to show "good cause" before being permitted to file an amended complaint.[2]

H5G counters that Rule 15 alone should apply.  H5G's position is a practical one: the parties had been involved in nearly two years of preliminary discovery and scheduling problems, and the parties had different proposed provisions for another amended scheduling order, including the deadline for amending  pleadings.

The Court will apply Rule 15.  There is no need for H5G to show good cause under Rule 16 based on the circumstances of this case.  The supposed "November deadline" is not a true deadline because the proposed order was never entered.  Moreover, the scheduling order has repeatedly been extended with the involvement

---

2 Rule 16(b)(4) provides in relevant part: "A schedule may be modified only for good cause." Good cause largely depends on the diligence of the moving party. Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J. 1990).  To establish good cause, the movant must show that "despite its diligence, it could not reasonably have met the scheduling order deadline." Hutchins v. United Parcel Service, No. 01-1462, 2005 WL 1793695, at *3 (D.N.J. July 26, 2005).  What will constitute "good cause" to warrant modification "necessarily varies with the circumstances of each case." 6A Alan Wright et al., Federal Practice & Procedure § 1522.2, at 313 (3d ed. 2010).  The Court therefore has "great discretion in determining what kind of showing the moving party must make in order to satisfy the good cause requirement of Rule 16(b)." Thoman v. Philips Med. Sys., No. 04-3698, 2007 WL 203943, at *10 (D.N.J. Jan. 24, 2007) (citing 3 James W. Moore et al., Moore's Federal Practice § 16.14[1][b] (3d ed.1997)).  A request to file an amended pleading after a deadline contained in a scheduling order generally implicates Rule 16(b). See Dimensional Commc'n Inc. v. Oz Optics, Ltd., 148 Fed. Appx. 82, 85 (3d Cir. 2006).

and consent of both parties.  And there have been prolific delays and disputes over

scheduling and discovery in this case that have made the entry of a basic scheduling

order difficult.[3]  Indeed, it seems undisputed that in October 2016, more than three

years into the case, Plaintiff received 500,000 pages of documents.  It seems

reasonable to allow some time to completely review those documents before rushing

to amend the complaint.  This is especially so because fact discovery has been

extended until March 31, 2017, and it has always been the Court's contemplation that,

as in nearly every case, the deadline for the amendment of pleadings should be near

the close of fact discovery.  See, e.g., In re L'Oreal, No. 12-3571, 2015 WL 5770202,

at *2 (D.N.J. Sept. 30, 2015) (Falk, J.) ("The contemplation in preparing the original

scheduling order was to have the amendment deadline close to the deadline for the

close of discovery.").

    Finally, the concept of an amended complaint was informally raised with the

Court in mid-October 2016 following Defendant's document production—prior to

Defendants' un-entered November 14 deadline.  Therefore, Defendants were clearly

on notice that such a motion would be coming.  More important, Plaintiff was directed

that, prior to filing a formal motion to amend, it should circulate the proposed

amended complaint to see if there would be consent.  Thus, to the extent H5G did not

---

3 Specifically, prior to the Court's recent entry of a scheduling order on January 11,
2017, the Court had requested a proposed case management order on four separate
occasions.  Moreover, as evidence of the discovery history in this case, the District
Judge recently appointed a Special Master to handle ongoing disputes.

formally meet the scheduling order deadline (again, which was never entered), part of the reason may have been compliance with the Court's attempts to resolve the issue without the need for a formal motion, a practice endorsed by the Court's Local Civil Rules.[4]

### 2.    Rule 15 Standard

Rule 15 provides that once a responsive pleading has been filed, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend is generally granted unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. Foman v. Davis, 371 U.S. 178, 182 (1962). The ultimate decision to grant or deny leave to amend is a matter committed to the court's sound discretion. See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1970). The Third Circuit has "made clear that there is to be a liberal use of Rule 15 to amend complaints so as to state additional

---

4 Even if the Court were to apply Rule 16, the amendment would still be appropriate, as Plaintiff has shown sufficient good cause, including: the entire lengthy and contentious discovery history in the case; the length of time occupied by discovery and scheduling delays in this case, which eroded the discovery period and delayed the exchange of information; the alleged revelations in 500,000 pages of documents that Defendants served in October 2016, which had to be reviewed before the proposed amendment could be brought; and the Court's directive that the parties attempt to informally discuss the concept of amendment prior to filing a formal motion. The Court has "great discretion" in determining "good cause" in a particular case, see, e.g., Thoman, 2007 WL 203943, at *10. Given the Court's long standing involvement in the case and first hand observation of the proceedings, the Undersigned is satisfied that the above constitutes ample good cause.

causes of action." Leased Optical Dep't, Inc. v. Opti-Center, Inc., 120 F.R.D. 476, 479 (D.N.J. 1988) (quotes omitted).

**B.    Proposed Amendment**

**1.    No Prejudice**

"Prejudice to the non-moving party is the touchstone for the denial of an amendment." Lorenz v. CSX Corp., 1 F.3d 1406,1414 (3d Cir. 1993). Incidental prejudice is insufficient grounds on which to deny leave to amend. See In re Caterpillar, Inc. , 67 F. Supp. 3d 663, 668 (D.N.J. 2014). Prejudice is generally evaluated by looking at whether the amendment would: (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the non-moving party from bringing a timely action in another forum. See, e.g., Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004).

Defendants will not suffer unfair prejudice as a result of the amendment. First, discovery is ongoing and no dispositive motions have been filed. The new claims are limited, and essentially amount to adding additional defendants to claims that are already in the case; no new parties are being added. While the parties have a discovery end-date in March, it is unclear how realistic that date is, given that no depositions have been taken in the case. The amendment may result in some additional discovery, but even that is not clear and seems disputed. Regardless, the fact that no depositions have been held, and thus the amendment will not cause any

party or witness to be deposed twice, suggests that no undue prejudice could result from re-ordering and expanding certain of the claims.  Nor does the proposed amendment add dramatically new subject matter to the case.  The theories in the amended complaint involve the same general allegations, even if the allegations are used to support slightly different claims.  While this may require some additional paper discovery, that does not amount to undue prejudice warranting denial of leave to amend.

Second, the new patent claim arising out of the '852 patent will not cause unfair prejudice.  All concede that the new patent claim will add additional discovery and age to the proceedings.  However, even that claim will not realistically delay resolution of the case.  This case is a long way from conclusion, regardless of any amendment.   Moreover, it would not make sense, from a judicial economy perspective, to have the new patent claim proceed as a second case.  It would require a new docket, with perhaps a new judge, delving into a dispute that really belongs together.  Given the overlap in allegations and parties and the interconnectedness of the dispute in this case, it is hard to envision a scenario where severance makes sense. While the new patent claim may result in some delay, it is not enough to find undue prejudice warranting denial of the motion to amend.

### 2.   No Undue Delay

"Delay alone . . . is an insufficient ground to deny an amendment, unless the delay unduly prejudices the non-moving party."  Cornell & Co., Inc. v. Occupational

Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978); Boileau v.

Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984) (district court erred in not

permitting amendment 10 years after original complaint when there was no

demonstrated prejudice).  Delay is only undue when it places a burden on the Court or

causes prejudice to the non-moving party.  Marlowe Patent Holdings v. Dice

Electronics, LLC, 293 F.R.D. 688, 695 (D.N.J. 2013).

      Delay is not a serious impediment to amendment.  As has already been

explained, the amendment will not cause Defendants to suffer any undue prejudice.

The absence of prejudice renders any arguable delay materially irrelevant.  Moreover,

the motion is not brought on the eve of trial or after Defendants have prevailed on a

summary judgment motion.  Indeed, at most, Defendants claim approximately a

month and a half of delay from November 14, 2016 (the alleged deadline to file

amended pleadings) to December 23, 2016 (when the motion was filed).  Forty-five

days of "delay" in a case that is nearly 4-years-old is insignificant when viewed

through the prism of the case at large, which contains large periods of delay

attributable to both sides.  Despite the age of the case, the fact is H5G brought its

motion to amend relatively early in the proceedings—before document discovery was

complete; before any depositions were held; before summary judgment motions were

filed; and before any *Markman* proceeding was held.

### 3.     __The Amendment is Not Clearly Futile__

The futility analysis on a motion to amend compares to a Rule 12(b)(6) motion.

See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An

amendment would be futile when 'the complaint, as amended, would fail to state a

claim upon which relief could be granted.'").  For a complaint to survive dismissal, it

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  Ashcroft v. Iqbal,  556 U.S. 662 (2009) (citing Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570, (2007)).  Given the liberal standard for the

amendment of pleadings, "courts place a heavy burden on opponents who wish to

declare a proposed amendment futile." Pharmaceutical Sales and Consulting Corp. v.

J.W.S. Delavau Co., Inc., 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citations omitted).

Although tracking Rule 12(b)(6), Rule 15 futility does not contemplate substantive

motion practice on the merits of the claims:

> If a proposed amendment is not ___clearly___ futile, then
> denial of leave to amend is improper.  This does not
> require the parties to engage in the equivalent of
> substantive motion practice upon the proposed new
> claim or defense; [it] does require, however, that the
> newly asserted defense appear to be sufficiently well-
> grounded in fact or law that it is not a frivolous pursuit.

Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J.1990)

(emphases added) (citations omitted); see also 6 Wright, Miller & Kane Federal

Practice and Procedure, §1487 (2d ed. 1990).  Effectively, this means that the

11

proposed amendment must be "frivolous or advance a claim or defense that is legally insufficient on its face . . . ." Marlowe Patent Hold., 293 F.R.D. at 695.

Defendants claim that Plaintiff's unfair competition claims are preempted and futile because they are based on alleged patent infringement; that Plaintiff's non-compete claims fail because Mr. Marks allegedly did not compete with H5G during the relevant period and merely was involved in "laying the groundwork" for future employment; and finally, that Plaintiff's Defend Trade Secrets Act claim is futile because it is supposedly based entirely on acts that occurred prior to its enactment on May 11, 2016.

There is no clear futility in this case.  Clear futility refers to patently frivolous or prohibited claims—e.g., a claim barred by the statute of limitations.  That is not the case with H5G's claims.  For example, H5G claims that the non-compete claim *is* based on an allegation that Marks *was* competing against H5G during the relevant time period, not merely "laying groundwork" for future employment.  This is a fact dispute that is not susceptible to an amendment analysis.

The same can be said for the various trade secret and unfair competition claims. Both groups of claims contain fact disputes about the nature of the trade secrets, when they were disclosed, and whether they were published in an abandoned patent application in 2012.  As the briefing shows, these claims are lathered in fact disputes that are inappropriate to conclusively resolve in the context of a motion to amend. Amendment to the pleadings is a fairly basic practice that does not rise to the level of

dispositive motion practice.  And delving into the morass of fact questions inherent in

these claims usurps dispositive motion practice and amounts to making embedded

factual findings and dispositive decisions in the non-dispositive amendment context.

Finally, the Court does not find Plaintiff's Defend Trade Secrets Act ("DTSA")

claim futile on what has been presented.  Defendants are correct that courts have

dismissed DTSA claims when the alleged conduct occurred prior to enactment of the

statue.  See, e.g., Dazzle Software v. Kinney, No. 16-12191, 2016 WL 6248906, at *1

(E.D. Mich. Aug. 22, 2016).  However, as certain courts have explained, the issue may

not be that straightforward, as there are different theories available under the statute,

including consideration of continuing post-enactment conduct.  See, e.g., Adams

Arms, LLC v. Unified Weapons Sys., No. 16-1503, 2016 WL 5391394, at *5-7 (M.D.

Fla. Sept. 27, 2016).  The parties do not sufficiently examine this issue in the briefing,

and deeming the claim clearly futile at this time seems premature based on what has

been presented, including allegations of continuing misappropriation of trade secrets.

(See Proposed Second Amended Complaint, ¶ 140 ("Marks Studios and Aristocrat

acquired and/or used, *and continue to acquire and/or use* . . . ." (emphasis added)).)

To the extent any claim is viable under this statute, it will depend on the adequacy and

specificity of the allegations in the pleading, which is more appropriate for a full Rule

12(b)(6) motion, not a Rule 15 motion to amend.

Some of Plaintiff's claims seem somewhat adventurous, and some may

ultimately fail.  However, for purposes of this motion and Rule 15, the Court is not

able to conclude that any of Plaintiffs' claims are <u>clearly</u> futile.  <u>Harrison Beverage</u>

<u>Co.</u>, 133 F.R.D. at 468.

## **<u>CONCLUSION</u>**

For the reasons stated above, Plaintiff's motion to amend [ECF No. 171] is **GRANTED**.


**<u>s/Mark Falk</u>**
**MARK FALK**
**United States Magistrate Judge**


**DATED: January 24, 2017**

14