NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HIGH 5 GAMES, LLC,<br>f/k/a PTT, LLC,<br>    Plaintiff,<br>v.<br><br>DANIEL MARKS; JOSEPH MASCI;<br>BRIAN KAVANAGH; MARKS STUDIO<br>LLC d/b/a GIMMIE GAMES;<br>ARISTOCRAT TECHNOLOGIES, INC.,<br>JOHN SMITH(s) 1-7; and XYZ<br>COMPANIES 1-7,<br><br>    Defendants. | Civil Action No. 13-7161 (JMV)<br><br><br><br>OPINION |

**FALK, U.S.M.J.**

Before the Court is Plaintiff's motion for leave to file a third amended complaint. [ECF No. 242.] The motion is opposed. No argument is necessary. Fed. R. Civ. P. 78. For the reasons stated below, the motion is **GRANTED**.

## BACKGROUND[1]

Plaintiff—High Five Games, LLC (at times, "H5G")—develops, among other things, slot machine games for the casino gaming industry. The case involves two

---

[1] This section is drawn from the papers submitted and from prior opinions in the case. *See, e.g.*, *PTT v. Marks*, 2017 WL 349375 (D.N.J. Jan. 24, 2017); *PTT v. Gimmie Games*, 2014 WL 5343304 (D.N.J. Oct. 20, 2014). Citations are omitted. The background is limited to what is necessary to decide the motion.

H5G-developed gaming methodologies and inventions known as "Super Symbols" and "Super Stacks." Defendants Daniel Marks, Joseph Masci, and Brian Kavanagh were prior employees of H5G and allegedly privy to confidential information during their employment. During the time period in which H5G was developing Super Symbols and Super Stacks, Marks resigned from H5G and founded Defendant Marks Studios, LLC (d/b/a "Gimmie" Games). Marks then hired Masci and Kavanagh as Chief Creative Officer and Director of Motion Graphics, respectively.

In 2013, at a gaming industry convention, H5G discovered that another large game distributor—Defendant Artistocrat Technologies—was featuring two games called "Mega Symbols" and "Max Stacks," which had the same look and feel as Super Symbols and Super Stacks. H5G alleges that Artisocrat had received these games and/or features by working with the other Defendants who had misappropriated H5G's trade secrets.

On November 26, 2013, H5G filed its initial Complaint in this Court, alleging trademark infringement, unfair competition, and breach of contract. H5G asserted that Marks, Masci, and Kavanagh breached their contractual obligations to H5G by utilizing H5G's confidential, proprietary, and trade secret information relating to its "Super Symbols" and "Super Stacks" games. H5G further alleged that Gimmie, Marks, Masci, and Kavanagh used H5G's confidential information relating to the two games and then unfairly competed with H5G by creating, marketing, and selling

games to companies in the gaming industry (including Aristocrat) under the "Mega Symbols" and "Max Stacks" names.

On July 1, 2014, H5G filed a first amended complaint, which added a patent infringement claim against Aristocrat claiming infringement of U.S Patent No. 8,734,223 (the "'223 patent"). The '223 patent was issued on May 27, 2014, and covers H5G's "Super Symbols" invention.

On February 25, 2016, the case was reassigned to the Honorable John M. Vazquez, U.S.D.J. The Undersigned was assigned case management responsibility.

Since being assigned to the case, I have held ten (10) conferences. Many of these conferences were scheduled to address complex case management and discovery disputes. The parties appear to dispute every issue, procedural and substantive, endlessly.[2] As a result, on January 18, 2017, after repeated disputes and time-consuming attempts to resolve them, the Court appointed the Honorable Dennis M. Cavanaugh, U.S.D.J. (ret.) as a Special Discovery Master.

On January 24, 2017, H5G was granted leave to file a second amended complaint, which was based on the production of 500,000 documents

---

2  This has been the case since the Complaint was filed. In fact, the parties spent nearly a year arguing over whether trade secrets placed in the Complaint had been sufficiently identified and whether Defendants were also required to disclose their own trade secrets. This, despite a prior Magistrate Judge entering a clear order on the subject. And the discord continues to the present. For example, at this time, there is is a motion by Plaintiff to disqualify Defendants' counsel; a motion to quash a third-party subpoena; a motion to strike infringement contentions; a motion for leave to file amended infringement contentions; and an appeal of the Special Master – all pending.

in October 2016. This amendment added certain trade secret misappropriation and unfair competition claims, as well as patent infringement claims relating to a second patent, the '852 patent.

On February 27, 2017, Defendant moved to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

On August 9, 2017, Jon Fallon, Esq., General Counsel for H5G (but not counsel of record for H5G in this case), filed a motion for a temporary restraining order and for a preliminary injunction, arguing that Defendant Marks was improperly filing patent applications with the USPTO covering inventions that Marks invented while employed by H5G, which he claimed made H5G the rightful owner.

On September 7, 2017, District Judge Vazquez heard the TRO and preliminary injunction motion, which was denied. However, at the hearing, H5G informed Judge Vazquez that it was contemplating filing a motion for leave to file a third amended complaint, seeking to join to the case some of the issues relating to the allegedly improper USPTO applications. In response, Judge Vazquez allowed H5G to file a motion to amend.

On November 11, 2017, H5G filed the present motion to amend. The motion proposes amending the Complaint to include claims based on (1) the issues discussed in the August and September injunction proceedings; and (2) discovery provided in mid-to-late 2017. The crux of the amendment is to bring in certain Aristocrat-related parties and claims. Most of the Aristocrat-related parties have been mentioned during

4

the prior proceedings and are not entirely new or foreign entities. Indeed, Plaintiff refers to these parties as having "overlapping businesses and executives" with the current Aristocrat defendants. (Pl.'s Br. 4.) According to the redlined proposed pleading accompanying the motion, the following specific amendments are proposed:

*With respect to new parties:*

- Product Madness, Inc., an Aristocrat Technologies "affiliate company" that has a contractual relationship with Marks Studios and Aristocrat to deploy games through social media-related casino platforms;
- Grant Bolling, a former H5G employee who now works for Aristocrat and is alleged to have discussed and disclosed H5G trade secrets and inventions to his new employer;
- Aristocrat Technologies Australia PTY Ltd., the entity listed on the USPTO patent application that was the subject of the TRO; and
- Aristocrat Leisure Ltd., the "parent company alter ego of the current Aristocrat defendants, "all of whom have overlapping businesses and executives."

*With respect to new claims, the pleading includes:*

- Indirect infringement claim against Product Madness relating to the '223 patent;
- Indirect infringement against all company defendants with respect to the '852 patent;
- Breach of contract against existing party Aristocrat Technologies;
- As it relates to the alleged wrongful patent applications, claims for Declaratory Judgment of Owner of Intellectual Property Rights; Conversion; Unfair Competition; Breach of Contract; Unjust Enrichment; and Constructive Trust.

On December 4, 2017, Defendants opposed the motion, arguing that Plaintiff has unduly delayed in seeking to amend its Complaint; failed to show good cause for the amendment pursuant to Rule 16; that the amendment would cause unfair prejudice and delay the case; and that the amendments are futile.

5

## DISCUSSION

A. **Legal Standard**[3]

Rule 15 provides that once a responsive pleading has been filed, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend is to be freely granted unless there is undue delay or prejudice, bad faith or dilatory motive, failure to cure deficiencies through previous amendment, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The ultimate decision to grant or deny leave to amend is a matter committed to the court's sound discretion. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1970). The Third Circuit has "made clear that there is to be a liberal use of Rule 15 to amend complaints so as to state additional causes of action." *Leased Optical Dep't, Inc. v. Opti-Center, Inc.*, 120 F.R.D. 476, 479 (D.N.J. 1988) (quotes omitted); *see also Mullin v. Balicki*, 875 F.3d 140 (3d Cir. 2017) ("liberal amendment regime" aids policy "favoring resolution of cases on their merits").

---

[3] Defendants contend in their brief that Rule 16(b)'s "good cause" standard should apply to Plaintiff's motion. This argument is premised on a proposed amendment deadline in an old, *proposed* scheduling order that was never entered by the Court. Defendants made the identical arguments based on the same un-entered scheduling order in response to Plaintiff's motion for leave to file a second amended complaint – and the Undersigned explained, at length, why that argument fails in the context of this case. *See* 2017 WL 349375, at *2-4. For the same reasons, which are incorporated herein, it fails again. Simply put, there is no operative scheduling order and no time limit or outer bound on when motions to amend must be filed. Any claim based on a long outdated scheduling order entered years ago is illusory. The Court will apply Rule 15 to Plaintiff's motion. *Id.*

**B.**   **Analysis**

   **1.**   **No Prejudice**

"Prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406,1414 (3d Cir. 1993). Incidental prejudice is insufficient grounds on which to deny leave to amend. *See In re Caterpillar, Inc.* , 67 F. Supp. 3d 663, 668 (D.N.J. 2014). Prejudice is generally evaluated by looking at whether the amendment would: (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the non-moving party from bringing a timely action in another forum. *See, e.g., Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

The Court finds no genuine or unexpected prejudice that will result from this amendment. The progress of the case does not match the age of the case. Though the case has been pending for a number of years, it is effectively at square one. This is unfortunate, but it is the fact. There is no operative scheduling order in the case and the parties continue to fight nearly all discovery issues and are being guided by a Special Master. Depositions have not begun. Dispositive motions have not been filed and are a long way off. No trial date has been set. The parties continue to blame each other for obstructionist discovery behavior and there is still much to be accomplished. While the amendment will introduce some slightly different theories and subjects into the case – e.g., the declaratory judgment of patent ownership question – even the new

claims still involve the same general parties and issues. While the amendment may cause Defendants to expend some additional resources to defend the case, it is not necessarily so. And it is quite likely the same resources would be required to defend the amended claims if brought as a separate action, which is likely. Furthermore, given the difficult history and the current stage of the case, the Court does not believe the amendments would significantly delay resolution of the dispute.

2. **<u>No Undue Delay</u>**

"Delay alone . . . is an insufficient ground to deny an amendment, unless the delay unduly prejudices the non-moving party." *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978); *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984) (district court erred in not permitting amendment 10 years after original complaint when there was no demonstrated prejudice). Delay is only undue when it places a burden on the Court or causes prejudice to the non-moving party. *Marlowe Patent Holdings v. Dice Electronics, LLC*, 293 F.R.D. 688, 695 (D.N.J. 2013).

When opposing Plaintiff's motion for leave to file a second amended complaint, Defendant advanced nearly the same concerns about delay. What was said then still applies today:

> Delay is not a serious issue in this case. As has already been explained, the amendment will not cause Defendants to suffer any undue prejudice. The absence of prejudice renders any arguable delay materially irrelevant. Moreover, the motion is not brought on the eve of trial or after Defendants have

8

> prevailed on a summary judgment motion. . . . [D]espite the age of the case, the fact is H5G brought its motion to amend relatively early in the proceedings—before document discovery was complete; before any depositions were held; before summary judgment motions were filed; and before any *Markman* proceeding was held.

2017 WL 349375, at *4.

All of this begs the question whether any delay here was justified. The parties take different positions on the subject, each making some valid points. But due to the contentiousness of the proceedings, the production of millions of documents and ongoing discovery, the Court is unpersuaded that there was any undue delay. More importantly, the motion to amend was brought relatively quickly after the basic issues were brought before Judge Vazquez on a motion for a preliminary injunction—and following Judge Vazquez giving Plaintiff express permission to file the current motion.

### 3. **No Futility**

The futility analysis on a motion to amend compares to a Rule 12(b)(6) motion. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). Given the liberal standard for the

amendment of pleadings, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." *Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citations omitted). Although tracking Rule 12(b)(6), Rule 15 futility does not contemplate substantive motion practice on the merits of the claims:

> If a proposed amendment is not ***clearly*** futile, then denial of leave to amend is improper. This does not require the parties to engage in the equivalent of substantive motion practice upon the proposed new claim or defense; [it] does require, however, that the newly asserted defense appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit.

*Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J.1990) (emphases added) (citations omitted); *see also* 6 Wright, Miller & Kane Federal Practice and Procedure, §1487 (2d ed. 1990). Effectively, this means that the proposed amendment must be "frivolous or advance a claim or defense that is legally insufficient on its face . . . ." *Marlowe Patent Hold.*, 293 F.R.D. at 695.

Defendants' futility arguments are brief and not fully articulated. Defendants have not established the claims are futile, much less clearly futile. In addition, for the patent declaratory judgment claims, Defendants claim the patent venue statute and personal jurisdiction are impediments to the claim, supposedly rendering them futile. However, these are certainly not "clear futility" questions. Whether a party is subject to personal jurisdiction may involve jurisdictional discovery. Whether a pleading is

adequate is a pure Rule 12 issue. These are not questions properly tackled in an undeveloped opposition to a motion to amend.

4. **Additional Considerations**

Judicial efficiency and effective case management are matters that can be considered in deciding whether amendment should be allowed. *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017). *Mullin* is a June 2017-precedential Third Circuit opinion, with a substantially distinguishable factual scenario, that nevertheless reaffirmed the liberality with which amendment should be allowed in the interest of justice. In this four-plus-year-old case, one might think these considerations favor denial of the amendment. But we suspect the opposite is true.

Despite any delay that would result from adding these parties and claims, it makes sense for the parties and the Court to allow these parties to litigate all their issues in one place and with one judge. If the amendment were denied Plaintiff could simply file a new case with the same contentiousness, the same discovery problems, the same costs—just under a new docket number. And if a new case were filed, it would likely be that a party would seek to consolidate the two related-cases. Or at least have them heard by the same judge. And it would make consummate sense. In addition, it also seems likely that final resolution or settlement would not be possible unless both cases resolved or settled. Bottom line; these parties will continue to incur costs and expenses and the Court will be involved until the universe of their disputes

are resolved, which again, it makes sense to do in one place and at one time. An additional practical reason to grant amendment.

## CONCLUSION

For the reasons set forth below, Plaintiffs' motion for leave to file a third amended complaint [ECF No. 242] is **GRANTED**.

**s/Mark Falk**
**MARK FALK**
**United States Magistrate Judge**

**Dated: May 9, 2018**