<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **HIGH 5 GAMES, LLC,**<br>**f/k/a PTT, LLC,**<br>　　　　　　**Plaintiff,**<br>**v.**<br><br>**DANIEL MARKS; JOSEPH MASCI;**<br>**BRIAN KAVANAGH; MARKS STUDIO**<br>**LLC d/b/a GIMMIE GAMES;**<br>**ARISTOCRAT TECHNOLOGIES, INC.,**<br>**JOHN SMITH(s) 1-7; and XYZ**<br>**COMPANIES 1-7,**<br><br>　　　　　　**Defendants.** | **Civil Action No. 13-7161 (JMV)**<br><br><br><br><br>**OPINION** |

<u>**FALK, U.S.M.J.**</u>

Before the Court is Plaintiff's motion to disqualify Defendants' counsel, Foley & Lardner, LLP ("F&L"), due to an alleged conflict of interest. [ECF No. 231.] Defendants oppose the motion and have cross-moved for Rule 11 sanctions. [ECF No. 237.] No oral argument was held. Fed. R. Civ. P. 78. For the reasons set forth below, both motions are **DENIED**.

## <u>BACKGROUND</u>

The background of this case is well-known to the parties and stated in prior opinions. *See, e.g.*, *High 5 Games, LLC v. Marks*, 2018 WL 2134038 (D.N.J. May 9, 2018); *PTT v. Marks*, 2017 WL 349375 (D.N.J. Jan. 24, 2017); *PTT v. Gimmie Games*, 2014 WL 5343304 (D.N.J. Oct. 20, 2014). Only what is necessary is repeated here.

Plaintiff—High Five Games, LLC (at times, "H5G")—develops, among other things, slot machine games for the casino gaming industry. The case involves two H5G-developed gaming methodologies and inventions known as "Super Symbols" and "Super Stacks." Defendants Daniel Marks, Joseph Masci, and Brian Kavanagh

were prior employees of H5G and allegedly privy to confidential information during their employment. During the time period in which H5G was developing Super Symbols and Super Stacks, Marks resigned from H5G and founded Defendant Marks Studios, LLC (d/b/a "Gimmie" Games). Marks then hired Masci and Kavanagh as Chief Creative Officer and Director of Motion Graphics, respectively.

In 2013, at a gaming industry convention, H5G discovered that another large game distributor—Defendant Artistocrat Technologies—was featuring two games called "Mega Symbols" and "Max Stacks," which had the same look and feel as Super Symbols and Super Stacks. H5G alleges that Artisocrat had received these games and/or features by working with the other Defendants who had misappropriated H5G's trade secrets.

On November 26, 2013, H5G filed its initial Complaint, alleging trademark infringement, unfair competition, and breach of contract. H5G asserted that Marks, Masci, and Kavanagh breached their contractual obligations to H5G by utilizing H5G's confidential, proprietary, and trade secret information relating to its "Super Symbols" and "Super Stacks" games. H5G further alleged that Gimmie, Marks, Masci, and Kavanagh used H5G's confidential information relating to the two games and then unfairly competed with H5G by creating, marketing, and selling games to companies in the gaming industry (including Aristocrat) under the "Mega Symbols" and "Max Stacks" names.

Since the original complaint was filed more than 4 years ago, much has happened. Plaintiff is on its fourth iteration of the Complaint, having thrice-amended its original pleading. The case has expanded to include two patents (i.e., the '223 and '852 patents) and patent-related claims, and has drawn into its sphere additional Aristocrat-related defendants and new claims. The parties have also been involved in a drawn-out discovery battle that has resulted in innumerable court conferences and the eventual appointment of a Special Master, who continues to work with the parties. Motion practice has been routine and non-stop.

## Motion to Disqualify

Plaintiff now claims that Defendants' counsel, F&L, must be disqualified pursuant to New Jersey Rule of Professional Conduct 1.7, due to an alleged conflict of interest. In short, Plaintiff claims that two of Defendants' patent invalidity defenses create a conflict of interest between Defendant Marks and the other Defendants and that F&L cannot represent conflicted parties.

First, Plaintiff contends that there is a conflict because Defendants allege that the '852 patent is invalid due to the "on-sale bar" of 35 U.S.C. § 102.[1] Specifically, Defendants allege that Plaintiff offered the invention that eventually issued as the '852 patent for sale to another company in 2009. The supposed conflict is that Plaintiff claims that Mr. Marks submitted a declaration to the USPTO in 2010 in support of patentability without mentioning the putative sale.

Second, Plaintiff claims that Mr. Marks signed a declaration that said that the invention that eventually issued as the '852 patent was patentable, but that Defendants now claim that the patent is invalid because it was based on misappropriated information copied from Konami Gaming, a H5G competitor.

According to Plaintiff, these two alleged incidents amount to "perjury" and create a conflict between Mr. Marks and his co-defendants.

Defendants oppose the motion and have filed a cross-motion for Rule 11 sanctions, contending that Plaintiff's motion is frivolous. They argue that any allegation of "perjury" is pure fiction, and the product of a distorted chronology comprised of Plaintiff's supposition of "facts" that have never been developed or established. They also contend the motion fails because Plaintiff has unduly delayed in bringing it. Finally, Defendants contend that even if there was somehow a conflict, all parties have provided informed consent, pursuant to Rule 1.7(b), to F&L continuing to represent all Defendants, which remedies any conflict and is dispositive of the motion. With respect to their cross-motion for Rule 11 sanctions, Defendants' position is that the motion to disqualify is so lacking in established facts and law that sanctions are appropriate.

As is explained below, there is absolutely no basis for disqualification on the facts presented, and the motion is denied. The motion for sanctions is also denied.

---

1 This statute provides that for a patent to be invalid, the product embodying the patent must have been sold or offered for sale more than one year before the filing date of the patent.  35 U.S.C. § 102(b).

## <u>DISCUSSION</u>

**A.**   **<u>Legal Standard</u>**

Local Civil Rule 103.1(a) establishes that the Rules of Professional Conduct ("RPC") as revised by the Supreme Court of New Jersey govern the conduct of the members of the bar admitted before this Court. *See United States v. Balter*, 91 F.3d 427, 435 (3d Cir. 1996), *cert. denied*, 519 U.S. 1011 (1996). The party seeking disqualification must carry a heavy burden and must meet a "high standard of proof before a lawyer is disqualified." *Phelps v. D&S Consultants, Inc.*, 2010 WL 3186241, at *5 (D.N.J. Aug. 10, 2010).

Attorney disqualification is never automatic, even when a disciplinary rule prohibits an attorney's appearance in a case. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are generally disfavored because they can have "such drastic consequences." *Rohm & Haas Co. v. American Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001). "Such disfavor results from the reality that motions to disqualify are sometimes made solely for 'tactical reasons,' and that even when they are made in good faith, motions to disqualify cause inevitable delay in the underlying proceedings and create additional hardships to the opposing party." *Prudential Ins. Co. of Am. v. Chelchowski*, 2017 WL 1549466, at *3 (D.N.J. Apr. 28, 2017) (citing *Carlyle Towers Condo Assoc., Inc. v. Crossland Savings, FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996)). As a result, careful scrutiny of the facts of each case is required to prevent unjust results, and "resolution of a motion to disqualify requires the court to balance the need to maintain the highest standards of the legal profession against the right to freely choose counsel." *Steel v. General Motors Corp.*, 912 F. Supp. 724, 733 (D.N.J. 1995). Notably, "ethical rules should not be blindly applied without consideration of the relative hardships." *Carlyle Towers*, 944 F. Supp. at 345.

Here, Plaintiffs have moved to disqualify F&L based upon RPC 1.7, which provides:

> **(a)** Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . .

4

> **(b)** Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation . . . .[W]hen the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;
> (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (3) the representation is not prohibited by law;
> (4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

*Id*.

Rule 1.7 arises out of the fundamental proposition that attorneys owe a duty of undivided loyalty to their clients. *Manoir-Electroalloys Corp. v. Amalloy Corp.*, 711 F. Supp. 188, 192 (D.N.J. 1989). Such loyalty is "diluted by attempting to represent clients with adverse interests." *Id*.

## B.   <u>Application</u>

Disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993). The party seeking to disqualify counsel must show that it is justified. *Id*. Plaintiff has shown no justification for disqualification here: in fact, its motion appears to be a litigation tactic; its loose accusation of perjury by an adversary is troubling.

### 1.   <u>Plaintiff's Argument is a Disputed Litigation Position, not a Basis for Disqualifying its Adversary</u>

Plaintiff fails to establish any factual basis underpinning the alleged conflict. According to Plaintiff, the alleged conflict arises because of two of Defendants' invalidity theories relating to the '852 patent. Specifically, Defendants contend the '852 patent is invalid, for, among other reasons: (1) the allegation that the invention was offered for sale in 2009, prior to the application for a patent being filed; and (2) the allegation that the invention was actually misappropriated from another company, Kanomi.

Plaintiff contends the invalidity defenses create a conflict because of tension between the defenses and two Marks declarations. The first declaration was executed in 2010 and, according to Plaintiff, "acknowledged the duty to disclose information which is material to the patentability" of the invention. (Defs.' Br. 7.) Because Defendants' first invalidity defense claims the invention was offered for sale in 2009, and that was supposedly not disclosed in the 2010 declaration, Plaintiff accuses Mr. Marks of "perjury." The second declaration was executed in 2015. Plaintiff claims this declaration is problematic because Mr. Marks supported patentability of the invention, even though Plaintiff says Defendants now claim the technology was copied from Kanomi. In short, Plaintiff claims there is a conflict between and among Defendants because of the current invalidity theories and the declarations submitted.

Defendants proffer a completely different factual scenario. Defendants say the alleged "offer for sale" came in the form of a 2009 email by Plaintiff's then-employee Grant Bolling to another company – an email of which Mr. Marks was neither the author or direct recipient. (*See* Declaration of Anthony Singer, Ex. B.) Defendants note Mr. Marks has not been deposed or questioned about this email in discovery in this case, and there is nothing in the record that suggests that Mr. Marks had an obligation to know and understand the subject of an email he was merely copied on years earlier. Similarly, Defendants explain that the second declaration was executed at a time when H5G had not yet produced discovery, including the 2009 email from Grant Bolling which was produced in October 2016, and before counsel was able to determine what the impact of the email is alleged to be.

Plaintiff's conflict argument is the stuff of litigation positions, which may evolve, which may shift, which may be pleaded alternatively, which may be cross-examined and if appropriate debunked. Even if true, this does not demonstrate a conflict of interest between the Defendants. In addition, there has not been a showing of an adverse relationship between Mr. Marks and any of his co-defendants or any conflict of interests. If anything, it is the opposite: all Defendants are united in establishing invalidity of the '852 patent, as well as defending the other claims in the case. In addition, Plaintiff's versions of the events are strongly disputed and countered by Defendants' own chronology. Simply saying there is a conflict does not make it so. There is no conflict here.

2.   **All Defendants Consent to the Representation**

Clients have a well-established, strongly protected right to choose their own lawyer. The Defendants here want to retain their counsel. They do not perceive any conflict of their interests. This should not be forgotten amongst the opaque legal arguments.

Rule 1.7(b) provides that a lawyer with a concurrent conflict of interest may continue to represent a client if, among other things, all clients give informed written consent and the representation does not involve claims by one client against another. *Id*. Here, even if there was some type of conflict (there is not), all Defendants have provided consent to F&L's continuing representation. *See* Defs.' Br. 14 (citing Declaration of Andrew Moskin, Ex. A at 1.) Regardless of any conflict, consent to F&L continuing as counsel is dispositive of the motion. Nevertheless, in about a paragraph, Plaintiff vaguely alleges that the Defendants have "claims" against each other because they will disagree about the "perjured" statements. But Plaintiff's counsel doesn't represent Defendants. Its opinion about what claims Defendants have against each other is blind speculation. Defendants don't seem to think so. There are no cross-claims in the case. Even if a conflict did somehow exist, F&L would still be permitted to remain in the case pursuant to RPC 1.7(b).

### 3.     The Motion is Late and Plaintiff's Standing is Debatable

While devoid of merit, the motion should also be denied because it is late—and filed years into the contentious litigation.

The action was commenced four years ago. In Defendants' Answer and Counterclaim, filed on January 11, *2014*, the issue of Plaintiff's alleged copying from Konami Gaming was expressly raised. (*See* Answer and Counterclaim ¶¶ 36-38, 48 ("Upon information and belief H5G's specific embodiment of slot machine reels having the identical symbol shown in every symbol position on top of one another into perpetuity was derived directly from Konami's Moulin Rouge African Diamond games.")). Moreover, Plaintiff moved to amend the Complaint to allege infringement of the '852 patent on December 23, 2016, and in doing so, represented that the new claims "arise out of the same subject matter in the original complaint," and never raised the issue that adding these patents could result in an allegation of a conflict. A conflict can be waived through lengthy inaction. *See, e.g.*, *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993). Here, the purported conflict was discernable from the early stages of the case and was not acted on for years.[2]

It is questionable whether Plaintiff has standing to raise a conflict entirely between Defendants and not involving Plaintiff or its counsel. The Third Circuit has

---

2 Plaintiff's claim the conflict was not apparent because Defendants' Answer and Counterclaim stated that the '852 patent was "derived from" Konami's games and not "copied." In the Court's view, that is form over substance. The concept is the same, and Plaintiff has long been on notice that Defendants viewed the patent as invalid based on some interplay between the invention and the Konami products.

not decided whether a party has standing to raise a supposed conflict between two adversary parties. *See In re Pressman*, 459 F.3d 383, 402 n.20 (3d Cir. 2006). There is non-binding district court authority, often on very different facts, finding that standing may exist. *See, e.g.*, *Delso v. Trustees for Ret. Plan for Hourly Employees of Merck & Co., Inc.*, 2007 WL 766349, at *5 (D.N.J. Mar. 6, 2007).[2] Other courts have found that an adversary lacks standing to raise its opponents supposed conflict:

> This Court recognizes that a party does not have standing to bring a motion to disqualify based on a material conflict of interest unless the party is either a former or current client. As a general rule, courts do not disqualify an attorney on the grounds of a conflict of interest unless the former client moves for disqualification. To allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict may not really exist.

*Shire Labs, Inc. v. Nostrum Pharm.*, 2006 WL 2129482, at *4 (D.N.J. July 26, 2006); *see also Tibbott v. N. Cambria Sch. Dist.*, 2017 WL 2570904, at *4 (W.D. Pa. June 12, 2017). The fact that there is disagreement about whether an adverse party even has standing to raise this sort of alleged conflict demonstrates how drastic a remedy disqualification is, and how courts strain to avoid it whenever possible. In this case, any conflict would impact and prejudice only Defendants and their counsel. This is not a case of a "side-switching" lawyer that could share or expose confidential or privileged information; it is a one-sided alleged conflict that has no bearing on Plaintiff's preparation of its case. It is understandable why courts debate whether Plaintiff should have standing in this type of case. *See id*.

## 4. Disqualification is Not Warranted in All Events

Even if there was a conflict; even if the conflict wasn't waived; even if the conflict was timely raised; and assuming Plaintiff has standing (none of which have been established), the Court would *still* not disqualify counsel in the absence of complaint by Defendants in this case.

Disqualification is never automatic. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Even when a conflict is established, courts are directed to

---

2 For example, *Delso* involved a *pro se* action in which an attorney continued to write pleadings for an unrepresented party despite an admitted conflict. *Id.* Much different than the sophisticated counsel and subject matter in this case.

consider certain factors to determine whether the facts of the particular case warrant disqualification, including: (1) prejudice to the non-moving party; (2) prejudice to the moving party; (3) the cost – in terms of time and money – to retain new counsel; (4) the complexity of the issues in the case and the time it would take for new counsel to acquaint themselves with the facts and issues; and (5) which party, if either, was responsible for creating the conflict. *See Wyeth v. Abbot Labs*, 692 F. Supp. 2d 453, 459 (D.N.J. 2010). These factors should be approached with "a keen sense of practicality." *Id*.

Here, the relevant factors do not support disqualification, even assuming a conflict is present. And it is not a particularly close call.

<u>First</u>, Defendants would be substantially prejudiced.  The case has been pending for more than 4 years. The parties have been battling complex issues for years and the discovery and motion practice has been voluminous. Counsel is deeply entrenched. Removing counsel and forcing new lawyers into the case for one or all of the Defendants would have a palpable prejudicial impact on Defendants.

<u>Second</u>, there is no discernable prejudice to Plaintiff at all. Plaintiff claims that the Defendants are adverse and that one has committed perjury. That has no direct bearing on Plaintiff and its claims. Plaintiff can present its version of the facts at the appropriate time in the case.

<u>Third and Fourth</u>, the time and money associated with retaining new counsel would likely be substantial. The Court has explained to counsel that this old case must start moving toward a resolution on the merits. And it is not difficult to imagine requiring one or more lawyers to get up to speed on 4 years of heavy litigation would be expensive. Indeed, the docket alone runs more than 300 entries.

<u>Fifth</u>, it has not been shown that either party has created a conflict, especially because no conflict has been established. That aside, the parties blame each other for any conflict based on their different chronologies and statements of supposed facts.

\*   \*   \*

Disqualification of counsel is a disfavored and extreme sanction that should not be lightly imposed. In this case, the Court sees no basis whatsoever to find a disqualifying conflict. For that reason, Plaintiff's motion is **denied**.[3]

---

3 Defendants cross-motion for Rule 11 sanctions is also **denied**.  Rule 11 is designed to ensure that pleadings and motions are not used for improper purpose such as

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's motion to disqualify L&F [ECF No. 231] is **DENIED**. Defendants' cross-motion for Rule 11 sanctions is also **DENIED**. [ECF No. 237.]

<u>**s/Mark Falk**</u>
**MARK FALK**
**United States Magistrate Judge**

**Dated: May 18, 2018**

harassment, delay, or needless increase in litigation expense. *See, e.g.*, *Lieb v. Topstone Indus.*, *Inc.*, 788 F.2d 151, 157 (3d Cir. 1988). And Rule 11 sanctions "should not be assessed lightly." *Simmerman v. Corino*, 27 F.3d 58, 60 (3d Cir. 1994). The imposition of Rule 11 sanction is discretionary. The subject of attorney conflicts is complex and subject to many considerations. This case has been difficult and contentious. The Court will exercise its discretion and refrain from being sidetracked with a sanctions inquiry at this time. However, counsel should be aware that the undersigned will not hesitate to recommend the imposition of sanctions pursuant to Rule 11 or 28 U.S.C. § 1927 if faced with a clear justification and at the appropriate time. Counsel are directed to proceed with the case expeditiously according to the Federal Rules, with the Rules of Professional Conduct and the Guidelines for Litigation Conduct in mind.