# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HIGH 5 GAMES, LLC, a Delaware Limited Liability Company, f/k/a PTT, LLC,<br><br>Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MARKS, an individual; JOSEPH MASCI, an individual; BRIAN KAVANAGH, an individual; MARKS STUDIOS, LLC, an entity d/b/a GIMME GAMES; ARISTOCRAT TECHNOLOGIES, INC., an entity; ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LIMITED, an entity; ARISTOCRAT LEISURE LIMITED, an entity; PRODUCT MADNESS, INC., an entity; GRANT BOLLING, an individual; JOHN SMITH(s) 1-7; and XYZ COMPANIES 1-7,<br><br>Defendants/Counterclaim Plaintiffs. | Case No.: 2:13-CV-07161-JMV-MF<br><br>**ORDER & OPINION OF THE SPECIAL MASTER** |

This matter comes before the Special Master upon Plaintiff High 5 Games, LLC's ("H5G") motion to compel the production of source code from defendants Daniel Marks, Joseph Masci, Brain Kavanagh, Grant Bolling, Marks Studios, LLC ("Marks Studios"), Aristocrat Technologies, Inc. ("ATI"), Aristocrat Technologies Australia Pty Ltd. ("ATA"), Aristocrat Leisure Limited ("ALL"), and Product Madness, Inc. ("Product Madness")(collectively, "Defendants"). After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that H5G's motion is **Granted**.

1

## DISCUSSION

### I. History of the Dispute

On November 9, 2016, United States Magistrate Judge Mark Falk signed the parties' Stipulation and Order Regarding Source Code ("Source Code Stipulation"), which governs the production of source code in this matter. The Source Code Stipulation provides that "[s]ource code and executable code relating to the Parties' respective technologies are properly discoverable in this action."

On December 8, 2017, H5G disclosed its source code expert, Michael S. Fagan. Pursuant to Section I.E of the Source Code Stipulation, Defendants then had five business days to object to disclosure of their source code to Mr. Fagan. Defendants did not object. Mr. Fagan, on behalf of H5G, then began reviewing Defendants' source code, which included source code for approximately 80 games. Review was conducted on December 19, 2017, January 2, January 3, January 5, January 9, January 10, and January 11, 2018.

According to H5G, Mr. Fagan identified certain deficiencies with Defendants' source code production, including missing source code files and directories. H5G asserts that Mr. Fagan also generated an exception report, indicating files that were missing from Defendants' source code production. In light of these alleged deficiencies, on January 12, 2018, H5G requested that Defendants produce missing source code files. Thereafter, on January 26, 2018, Defendants advised that they had "re-collected the source code." According to H5G, Mr. Fagan then identified a relevant source code file, vector.h, which was included in the re-collected source code but that had not been previously produced. Because Defendants had only produced recollected source code for one game, on January 12, 2018, H5G requested updated source code

production for all other games at issue. On February 27, 2018, the parties conducted a meet and confer. On March 12, 2018, Defendants made available the additional source code.

On January 25, 2019, H5G requested that Defendants' source code be made available January 30 through February 1, 2019, so that Mr. Fagan could conduct additional review. H5G alleges that while Defendants did not deny its request, Defendants did not confirm the requested review dates. According to H5G, it then became apparent that Defendants would not make the source code available thus it reached out to the Special Master and filed the present motion to compel.

## II. Arguments of the Parties

### High 5 Games

H5G argues that additional review of Defendants' source code is necessary to prepare for depositions and to determine the extent of Defendants' improper use of H5G's confidential source code. H5G argues that Defendants are attempting to stymie its reliance on and access to source code.

H5G asserts that source code is clearly relevant given that the Source Code Stipulation admits that source code is properly discoverable. Thus H5G argues that the Source Code Stipulation alone provides grounds for H5G to inspect Defendants' source code. However, H5G also points to the broad and liberal discovery permitted under the Federal Rules of Civil Procedure and argues that source code is reasonably calculated to lead to the discovery of admissible information because source code will assist in determining how Aristocrat's games operate in H5G's patent infringement claim. H5G further argues that source code will show the extent of Defendants' improper use of its trade secrets and confidential materials. H5G maintains that there is no burden to Defendants since Defendants have already collected the source code.

3

H5G argues that it needs access to Defendants' source code to determine how Defendants' accused games operate with relation to its patent claims. H5G claims that analysis of source code is prominently cited within the infringement contentions for the '852 patent. H5G further argues that while its claims do not require source code to infringe, they certainly anticipate that source code is one manner to determine how "instructions stored on a memory" is executed by a processor, as claimed. H5G argues that Defendants' assertion, that game sheets are the only relevant evidence necessary for this case, is untrue as game sheets do not address a claim element that Defendants insist must be addressed in claim construction—replacing the reserved symbol. H5G asserts that unlike game sheets, review of Defendants' source code shows precisely how this purported insertion is performed and whether it infringes inasmuch as it involved replacement.

H5G also argues that source code plays a critical evidentiary role in H5G's trade secret and breach of contract claims. H5G argues that documents produced by Mr. Bolling show that he took documents containing source code authored by H5G and improperly used it as a basis for creating Defendants' now-accused games. H5G argues it is imperative to review source code to see how much material taken by Mr. Bolling was improperly used to create Defendants' games.

H5G further asserts that Mr. Fagan is competent to review source code and serve as an expert in this case. H5G states that it complied with the Source Code Stipulation by notifying Defendants on December 8, 2017, of its intent to have Mr. Fagan review source code. Defendants then had five business days to object, which they failed to do. H5G thus argues that Defendants' argument relating to Mr. Fagan is a red herring.

### *Defendants*

Defendants assert that they have already permitted Mr. Fagan to review source code for 28 days. Defendants argue that although the parties entered a Source Code Stipulation, that was not a license for harassment and abuse by H5G. Defendants argue that they are merely seeking to impose some reasonable limits on an exercise that they contend H5G has conceded is irrelevant.

Defendants maintain that source code is irrelevant. Defendants argue that none of the claims in either H5G patent has anything to do with source code. Defendants further argue that H5G's trade secret disclosures contain no source code. Defendants assert that the combination sheets Defendants must submit to regulators for approval of their games disclose everything that is relevant about the operation of Defendants' games. Defendants also argue that to the extent H5G believes source code is relevant to understanding the operation of Defendants' games, H5G has effectively conceded through over a year of silence in the face of direct proof to the contrary that all relevant information is contained in the combination sheets. Defendants further argue that even if there were something relevant in their source code, the 28 day long review sessions that have already occurred are disproportionate to the needs of the case.

In addition, Defendants believe that Mr. Fagan lacks the requisite skill in the art of game design to opine on the relevance of source code to understanding the parties' games. Defendants argue that they indicated that they would drop their objection to further source code review if H5G would simply submit a statement from someone with at least "ordinary skill in the art of game design" explaining why source code is relevant. Defendants argue that it is a simple matter to see that Mr. Fagan professes no competence to opine on the issue of game design and that H5G has been unable to offer a single statement from anyone who is competent to address the issue explaining why H5G keeps demanding more and more source code.

Defendants argue that as shown by Mr. Crevelt in his Declaration, "a person of ordinary skill in the art" "would know that the 'vector.h' file is simply a header (hence the extension .h) that has no bearing on the operation of the game." Defendants argue that H5G was free to submit a statement from Mr. Fagan or any of its own game designers questioning the analysis of Mr. Crevelt and that by failing to do so acquiesce in acknowledging Mr. Fagan's lack of competence and confirming it does not have a Rule 11 basis to demand any source code, much less the additional source code review it now seeks after 28 prior days of review.

Defendants argue that they have now produced source code for 71 different games and H5G's experts have already spent 28 days reviewing source code and yet remain unable to identify anything material missing from the original production on December 8, 2016. Moreover, Defendants argue that all the source code possessed by Mr. Bolling responsive to H5G's requests was already produced to it directly as part of Bolling's other emails and documents. Defendants argue that they have produced all documents from Mr. Bolling responsive to H5G's discovery requests and have done likewise for the other former H5G employees who now work for Marks Studios.

**Opinion**

It is the opinion of the Special Master that Defendants shall make their source code available for inspection by H5G.

It this matter, the Source Code Stipulation governs the parties' production of source code. The Source Code Stipulation clearly indicates that source code is properly discoverable in this action. Accordingly, by the act of agreeing to this stipulation the parties clearly confirmed that source code is relevant to the instant matter. Moreover, even if the parties had not entered the Source Code Stipulation, the parties may obtain discovery on "any matter, not privileged, which

6

is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Discoverable material is not limited to that which would be admissible at trial, but also includes any non-privileged information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* H5G has adequately demonstrated that the source code it seeks is relevant to the subject matter of the action and may lead to admissible evidence. *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). Meanwhile, Defendants have failed to demonstrate that the burden of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(C)(3). The source code has already been collected by Defendants. H5G merely seeks access to it. Accordingly, the Special Master is at a loss as to how there could be any real burden to Defendants if the material is already collected and H5G merely seeks to compel Defendants to make that material accessible to H5G's proposed expert, Mr. Fagan. The Special Master also notes that the Source Code Stipulation does not place limits on the number of days a party has to review source code.

With respect to Defendants' assertion that Mr. Fagan lacks the requisite skill in the art of game design to opine on the relevance of source code to understanding the parties' games, the Special Master will not entertain Defendants arguments. The Source Code Stipulation provides that the party receiving a designating party's expert's information has five business days to object in writing to its disclosure to the proposed expert for good cause. See Source Code Stipulation Section I.E. On December 8, 2017, H5G disclosed its source code expert, Mr. Fagan, pursuant to Section I.E of the Source Code Stipulation. Defendants failed to object within five business days of H5G's disclosure.

Accordingly, it is the opinion of the Special Master that Defendants shall make their source code available for inspection by H5G within **30 days** of the date of this Order.

_____
DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)
Special Master

Date: 3/27/2019