## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HIGH 5 GAMES, LLC, a Delaware Limited Liability Company, f/k/a PTT, LLC, | Case No.: 2:13-CV-07161-JMV-MF |
| Plaintiff/Counterclaim Defendant, | |
| vs. | |
| DANIEL MARKS, an individual; JOSEPH MASCI, an individual; BRIAN KAVANAGH, an individual; MARKS STUDIOS, LLC, an entity d/b/a GIMME GAMES; ARISTOCRAT TECHNOLOGIES, INC., an entity; ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LIMITED, an entity; ARISTOCRAT LEISURE LIMITED, an entity; PRODUCT MADNESS, INC., an entity; GRANT BOLLING, an individual; JOHN SMITH(s) 1-7; and XYZ COMPANIES 1-7, | **ORDER & OPINION OF THE SPECIAL MASTER** |
| Defendants/Counterclaim Plaintiffs. | |

This matter comes before the Special Master upon Plaintiff High 5 Games, LLC's ("H5G") motion to compel discovery of technical information relating to accused instrumentalities from defendants Daniel Marks, Joseph Masci, Brain Kavanagh, Grant Bolling, Marks Studios, LLC ("Marks Studios"), Aristocrat Technologies, Inc. ("ATI"), Aristocrat Technologies Australia Pty Ltd. ("ATA"), Aristocrat Leisure Limited ("ALL"), and Product Madness, Inc. ("Product Madness")(collectively, "Defendants"). After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that H5G's motion is **GRANTED**.

# DISCUSSION

## I. Background

This is a trade secret misappropriations and patent infringement case. On November 26, 2013, H5G filed its initial Complaint alleging trademark infringement, unfair competition, and breach of contract. H5G asserted that Marks, Masci, and Kavanagh breached their contractual obligations to H5G by utilizing H5G's confidential, proprietary, and trade secret information relating to its "Super Symbols" and "Super Stacks" games. H5G further alleged that Gimmie, Marks, Masci, and Kavanagh used H5G's confidential information relating to the Super Symbol and Super Stacks games and then unfairly competed with H5G by creating, marketing, and selling games to companies in the gaming industry, including Aristocrat, under the "Mega Symbols" and "Max Stacks" names.

On July 1, 2014, H5G filed its First Amended Complaint, which added a patent infringement claim against Aristocrat, claiming infringement of U.S Patent No. 8,734,223 (the "'223 patent"). The '223 patent was issued on May 27, 2014, and covers H5G's "Super Symbols" feature.

On January 24, 2017, H5G was granted leave to file its Second Amended Complaint ("SAC"), which was based on the production of 500,000 documents in October, 2016. This amendment added certain trade secret misappropriation and unfair competition claims, as well as patent infringement claims relating to a second patent, U.S Patent No. 9,022,852 (the "'852 patent"). The '852 patent covers H5G's "Super Stacks" feature.

H5G now asserts that while it has long accused dozens of games of infringement, during discovery it learned that Aristocrat offers other games (the "Undisclosed Games") that also incorporate the accused features that had not been previously disclosed by Defendants. By

2

correspondence dated April 30, 2018, H5G informed Defendants that it had become aware that Defendants own, operate, license, and/or sell games with infringing features that had not been disclosed in Defendants' discovery responses. H5G then provided Defendants with a list of 87 Undisclosed Games that it believed appeared to include the infringing features.

On May 9, 2018, United States Magistrate Judge Mark Falk granted H5G's motion for leave to file a Third Amended Complaint ("TAC").[1] The TAC added new parties that are related to defendant Aristocrat. On May 29, 2018, H5G served additional interrogatories and requests for production. The requests sought identification of all of Defendants' games containing the accused features. H5G also requested technical information related to the Undisclosed Games. On July 10, 2018, H5G served similar discovery requests on the TAC Defendants. Defendants objected to H5G's discovery requests as beyond the scope of the litigation. The parties then exchanged several correspondences.

Following this exchange, the parties submitted papers to the Special Master regarding H5G's request to serve Infringement Contentions based on the TAC and whether the new TAC Defendants had to participate in discovery pending the District Court's decision on Defendants' appeal. On September 14, 2018, the Special Master denied Defendants' request for a stay as to Infringement Contentions and discovery with respect to the new TAC Defendants and ordered Plaintiff to serve Infringement Contentions pursuant to Local Patent Rules 3.1 and 3.2.

Thereafter, on October 8, 2018, H5G served its Infringement Contentions on the TAC Defendants and on October 9, 2018, filed a motion to amend its infringement contentions against

---

[1] On January 4, 2019, United States District Judge John Michael Vazquez affirmed Judge Falk's May 9, 2018, Opinion and Order granting Plaintiff's motion for leave to amend.

3

the SAC Defendants. H5G maintains that it accused the Undisclosed Games of infringement in these Infringement Contentions.

The parties appeared for a status conference before the Special Master on November 6, 2018. At the conference, the Special Master instructed Defendants to produce their outstanding discovery within 30 days. On December 6, 2018, Defendants produced additional discovery. However, H5G alleges that this production failed to include discovery relating to nearly all of the Undisclosed Games.

On or about February 8, 2019, H5G filed a motion to compel discovery of technical information relating to accused instrumentalities with the Special Master. H5G seeks an order compelling Defendants to provide complete responses to all interrogatories and requests for production, including source code, related to the Undisclosed Games.

## II. Arguments of the Parties

### High 5 Games' Arguments

According to H5G, it has long maintained that certain of Defendants' games that use repeated symbols organized in a stack and games that use certain oversized symbols infringe H5G's patents. H5G explains that those games were initially branded with Defendants' "Max Stacks" or "Mega Symbol" trademarks. However, H5G alleges that during discovery it learned that Defendants had only identified a portion of the games that incorporated the features accused of infringement. H5G explains that in or around April 2018, an H5G employee played one of Defendants' games that contained H5G's Super Stacks game feature but did not bear Defendants' "Max Stacks" trademark. Thereafter, H5G performed due diligence in attempting to identify additional games. H5G then requested that Defendants supplement their interrogatory

4

responses to identify missing games. Defendants responded that the Undisclosed Games were beyond the scope of H5G's discovery requests.

H5G argues that the Undisclosed Games are clearly within the scope of the TAC and would also have been within the scope of the SAC. According to H5G, neither the TAC nor SAC limited the infringement allegations to games marketed under the "Max Stacks" and "Mega Symbols" trade name. H5G asserts that it would be nonsensical that H5G's infringement allegations would be limited to games with trade names chosen by Defendants. H5G argues that nothing should preclude H5G from obtaining discovery on Defendants' potentially infringing games, especially when the Complaint already contemplates that Defendants may market these games differently. H5G maintains that it is the operation of an accused product that determines infringement, not the trademark that a defendant chooses.

H5G also argues that Defendants have violated the Local Patent Rules by not producing documents relating to the Undisclosed Games. H5G maintains that despite serving infringement contentions identifying the Undisclosed Games, Defendants still refuse to provide the requested discovery in violation of Local Patent Rule 3.4. H5G explains that with respect to the '223 patent, H5G provided representative charts showing how certain of the Defendants' oversized symbol games infringed. The Undisclosed Games include this same feature and H5G identified those games as infringing. Similarly, with respect to the '852 patent, H5G argues that it submitted over 60 charts showing how Defendants' games used a replacement schema to implement the accused stacking feature. H5G also produced an additional representative chart, discussing how the Undisclosed Games all include a similar stacking feature. H5G maintains that it has provided detailed analysis showing the similarities of the games, yet Defendants have

provided no explanation why this voluminous analysis is not sufficient to put them on notice of how the accused features infringe the asserted patents.

In addition, H5G points to *Aristocrat Techs. v. Int's Game Tech*, No. 5:06-cv-3717, 2009 WL 3573327, at *5 (N.D. Ca. Oct. 30, 2009), to assert that in a similar case—one in which Defendants in this action were the plaintiffs—the District Court granted discovery on products that "have the same or substantially similar features as the accused products." Here, H5G argues that there is no debate that the Undisclosed Games share substantially similar features to those that were already accused of infringement. According to H5G, all the games at issue are slot-machine-type games. With respect to the '233 patent, both the accused and Undisclosed Games include similar infringing over-sized symbols, which is a significant aspect in whether the games infringe the '223 patent. Similarly, H5G argues that with respect to the '852 patent, the accused and Undisclosed Games each include stacks of symbols. H5G argues that analysis of source code from some of Defendants' games shows that Defendants used infringing replacement schemas to create the stacks feature. H5G asserts that based upon publicly available information, information and belief, it appears that the Undisclosed Games operate similarly and infringe.

H5G further argues that Defendants were required to produce the requested documents in response to the Special Master's directive at the parties' November 6, 2018, status conference. H5G points out that Defendants did not file an appeal of this directive.

Finally, H5G argues that the Undisclosed Games are relevant to H5G's trade secret and misappropriation claims. H5G argues that documents produced in discovery show that the misappropriation of H5G's trade secrets permeates to other of Defendants' entities. According to H5G, Defendants' discovery shows that Mr. Bolling and Mr. Marks, both former H5G employees, retained possession of H5G trade secret material when they left H5G. H5G believes

6

that these misappropriated trade secrets were then used to create games for Aristocrat. H5G argues that it cannot know the full extent of Defendants' use or dissemination of its trade secrets without further discovery of the Undisclosed Games.

### *Defendants Arguments*

Defendants argue that the Undisclosed Games are not within the scope of the TAC. Defendants maintain that the TAC, like all three prior pleadings, only accuses the Max Stacks and Mega Symbols games, which were designed by Marks Studios, of infringement and trade secret misappropriation. Therefore, Defendants assert that because no Aristocrat entity was a party in 2013 when the original complaint was filed, it is logically and legally impossible that the definition of Max Stacks and Mega Symbols games could retroactively be redefined to include any games other than the Max Stacks and Mega Symbols games designed by Marks Studios. Defendants argue that H5G's original discovery requests were likewise limited to Max Stacks and Mega Symbols games until H5G recently redefined the scope of the case. Defendants believe that nothing until now has given them any notice that the Complaint was meant to include any accused games other than the Max Stacks and Mega Symbols games.

According to Defendants, the TAC identified the games allegedly infringing the '852 patent as "games marketed under the name or trademark 'Max Stacks' and also other infringing games that may be marketed under a different name or trademark." The TAC identified the games allegedly infringing the '233 patent as "games marketed under the name or trademark 'Mega Symbols' and also other infringing games that may be marketed under a different name or trademark." Defendants argue that the phrase "and also other infringing games that may be marketed under a different name or trademark" is a catchall, which did not give Defendants notice that any games other than the specified Max Stacks and Mega Symbols games were at

7

issue. Defendants believe that H5G's own conduct in recently redefining its discovery requests confirm that this was never its own understanding of the case either. Defendants argue that such stealth pleading obviates the pleading requirements of *Iqbal* and *Twombly*. Defendants maintain that if H5G wished to add new games to its pleadings, it easily could have done so when it filed its First, Second, or Third Amended Complaints. Defendants argue that allowing H5G to take discovery or pursue claims concerning products outside the scope of the Complaint not only would double the scope of the case to include the new individuals and methods unrelated to those involved in creating the Max Stacks and Mega Symbols games, it compounds the problem that serious jurisdiction and or venue issues exist for the corporate defendants.

Second, Defendants argue that the Local Patent Rules do not require production of documents for non-accused games. Defendants argue that Local Patent Rule 3.4 only requires Defendants to produce "documentation sufficient to show operation, composition, or structure of any aspects or elements of an Accused instrumentality identified by the party asserting patent infringement in its L. Pat. R. 3.2(c) chart." Plaintiff argues that Local Patent Rule 3.1(c) requires a plaintiff to provide a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality..." Defendants point to *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283 (Fed. Cir. 2016), to argue that because H5G did not include the Undisclosed Games in its Local Patent Rule 3.1(c) chart, Local Patent Rule 3.4 plainly fails to provide a basis to require Defendants to produce documentation concerning the Undisclosed Games. Defendants further argue that not only has H5G failed to chart the Undisclosed Games for which it seeks discovery, it withdrew its contentions concerning the supposedly exemplary games.

With respect to the '852 Supplemental Contentions, H5G identified 116 games: 54 Max Stacks and 62 other stacked symbol games. However, Defendants argue the '852 Supplemental Contentions only include 55 claim charts. Defendants argue that apart from the "representative chart," each chart pertains to the Max Stacks games. With respect to the other 62 games, H5G included a single exemplary chart, proving only boilerplate language that is void of any actual analysis. Defendants believe the claim chart only offers unsupported conclusory statements that the games "operate in the same relevant fashion."

With respect to the '223 Supplemental Contentions, Defendants argue that H5G accuses all Mega Symbols games along with any of Defendants' games that contain an oversized symbol of infringement. According to Defendants, the '223 Supplemental Contentions identify 27 games: 13 of the games are Mega Symbols Games and 14 are other oversized symbol games. However, Defendants assert that the '223 Supplemental Contentions only include claim charts for two of the accused games. H5G asserts that these two games are exemplary of all other accused games. Defendants argue that the '223 Supplemental Contentions contain no explanation as to why either of these games is exemplary or representative of the non-Mega Symbols games.

Third, Defendants argue that to authorize discovery, there still must be a showing that the non-accused products are "reasonably similar." Defendants argue that even if *Drone* were not followed, courts have only permitted the type of discovery sought if the non-accused products are reasonably similar to the accused products and there is a nexus between this similarity and the asserted patent. Defendants assert that H5G's sole argument is that the Undisclosed Games contain stacked symbols. However, H5G has never explained how the existence of stacked symbols in a game is in any way related to the claims of the '852 patent. Defendants further argue that H5G has never explained how each of the Undisclosed Games that contain oversized

9

symbols meet the other limitations of claims of the '223 patent. Defendants argue that the mere fact that a game has oversized symbols cannot be a basis for an accusation of infringement.

Defendants also argue that H5G has failed to show that it used all publicly available information in its Supplemental Contentions. Defendants maintain that H5G and its witnesses have repeatedly admitted that a user would be able to detect the difference between games that use the claims of the '852 patent and '223 patent, and ones that do not. Accordingly, Defendants argue that H5G cannot in good faith argue that it needs confidential documents to determine whether it has a basis to accuse a game of infringement.

Fourth, Defendants argue that H5G's trade secret allegations do not justify discovery on the Undisclosed Games. Defendants explain that the two alleged trade secrets at issue in this litigation are the Super Stacks and Super Symbols. According to Defendants, the Super Stacks trade secret is an implementation of the '852 patent and the Super Symbols trade secret is identical to the '223 patent. Thus Defendants argue the trade secret allegations have no talismanic significance to justify discovery of the Undisclosed Games.

Finally, Defendants argue that they have not violated the Special Master's prior orders or directives. Defendants assert that on November 14, 2018, they produced documents in accordance with Local Patent Rule 3.4(a). Defendants argue that they also produced the email production as directed on December 6, and 11, 2018. Accordingly, Defendants argue they have produced the required documents.

### High 5 Games' Reply Arguments

H5G retorts that it specifically identified the Undisclosed Games by name to Defendants almost 10 months ago, provided discovery requests directed to the Undisclosed Games, and identified the Undisclosed Games in its Local Patent Contentions. H5G points to *Hologram USA*,

*Inc. v. Pulse Evolution Corp.*, No. 2:14-CV-0772-GMN-NJK, 2015 WL 13238450, at *1 (D. Nev. Dec. 18, 2015) and argues that Defendants have been on notice regarding the Undisclosed Games since April 2018, and that H5G has provided a full explanation as to how the Undisclosed Games are reasonably similar to those accused in its Infringement Contentions.

H5G further argues that it is not just seeking Defendants' games that contain stacked symbols and oversized symbols. H5G asserts that its motion explicitly states that analysis of source code from Defendants' games shows that Defendants use infringing replacement schemas to create the stacks feature. H5G argues that this description links H5G's allegations with its intellectual property. In other words, it is not just that the game has stack features, but how the game implements the stack feature—by way of both the asserted '852 patent as well as H5G's Super Stack trade secret. H5G further argues that the Undisclosed Games meet the asserted claim elements of the '223 patent, which Defendants did not rebut in their opposition.

H5G also maintains that the Undisclosed Games are reasonably similar to other accused products and that a nexus exists. H5G alleges that it provided an explanation of this in its Infringement Contentions. H5G asserts that its Infringement Contentions demonstrate that it will need Defendants' confidential and proprietary combination sheets and source code to establish infringement.

Additionally, H5G retorts that Defendants' assertion, that the trade secrets at issue are within the scope of the patent infringement claims, is incorrect. H5G argues that it is thus entitled to discovery showing the extent to which Marks Studios shared its trade secrets with Aristocrat and whether Aristocrat used those trade secrets in the Undisclosed Games.

11

**Opinion**

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." See Fed. R. Civ. P. 26(b)(1). While discovery is broadly available, it is not unlimited. See *id.* The court must balance the relevance and necessity of the requested discovery with the potential hardship that might be incurred in producing it. See *Truswal Sys. Corp. v. Hydro-Air Eng'g*, 813 F.2d 1207, 1210 (Fed. Cir. 1987); *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990). Discovery is "designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim." See *Micro Motion Inc.*, 894 F.2d at 1327.

A determination of relevance implicates substantive patent law and therefore the court must look to Federal Circuit law rather than regional circuit law in determining relevance. *Micro Motion, Inc. v. Kane Steel Co.*, Inc., 894 F.2d 1318, 1326 n.8 (Fed. Cir. 1990) (citing to *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1211–12 (Fed. Cir. 1987)). In *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 214CV00772GMNNJK, 2016 WL 3353935, at *3 (D. Nev. June 10, 2016), the court explained that in patent cases, two prominent methods have arisen for determining the relevancy of requests for discovery.

> Under the first method, the scope of discovery is limited to products specifically identified in the infringement contentions. *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2014 WL 4593338, at *2-*4 (N.D. Cal. 2014) (denying patentee's motion to compel accused infringer to produce discovery on nonaccused models of its products and requiring patentee to amend its infringement contentions); *Meidatek, Inc. v. Freescale Semiconductor, Inc.*, 2013 WL 588760, *2 & *4 (N.D. Cal. 2013) (denying patentee's motion to compel discovery on products of the accused infringer that the patentee had not specifically identified in its infringement contentions). This view is grounded in the concern that local patent rules place the burden of specifically identifying

12

accused devices on the plaintiff. *Infineon Tech. AG v. Volterra Semiconductor Corp.*, 2012 WL 6184394, at *3 (N.D. Cal. Dec. 11, 2012). It is premised on the idea that allowing overbroad discovery would allow a patent plaintiff to "transfer the burden of identifying accused products to the defendant" and defeat the purpose of the local patent rules. *Mediatek, Inc.*, 2013 WL 588760, at *4.

Under the second method, the scope of discovery is expanded to include products reasonably similar to those accused in the infringement contentions. *Dr. Sys., Inc. v. Fujifilm Med. Sys. USA, Inc.*, 2008 WL 1734241, at *3 (S.D. Cal. Apr. 10, 2008); *LifeNet Health v. LifeCell Corp.*, 2014 WL 4162113, at *7 (E.D. Va. 2014) (granting patentee's motion to compel accused infringer to produce discovery on nonaccused products, but limiting the scope of products to those having a sufficient nexus to the accused products). This approach is premised on the broad scope of Federal Rule of Civil Procedure 26(b) and the idea that "the general contours of a desire for broad discovery apply as much in patent cases as in any other." *JS Products, Inc. v. Kabo Tool Co.*, 2012 WL 5288175, at *5 (D. Nev. Oct. 23, 2012) (citation omitted). Underlying this view is the notion that a party may be able to amend its contentions as it acquires information during discovery. *Honeywell Int'l Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 655 (E.D. Tex. 2009) (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006), which discusses the high standard for amending infringement contentions). As a result, "[n]o bright line rule governs whether discovery can be obtained only for the products expressly accused in infringement contentions." *EPOS Techs. v. Pegasus Techs.*, 842 F. Supp. 2d 31, 33 (D.D.C. 2012) (quoting *Dr. Sys., Inc.*, 2008 WL 1734241, at *3 (S.D. Cal. Apr. 10, 2008) (collecting cases)). Thus, this approach extends discovery to nonaccused products reasonably similar to the accused instrumentalities. *Id.* In requesting information regarding such devices, however, the discovering party must provide a mechanism for the responding party to determine whether a particular device is reasonably similar. *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2015 U.S. Dist. LEXIS 170151, *12. (D. Nev. Dec. 18, 2015).

In this matter, H5G served supplemental interrogatories and requests for production on May 29, 2018. Interrogatory No. 34 requests that Defendants: "Identify each game created, sold, marketed, or used by the SAC Defendants that includes (a) the Stacked Symbol Feature; (b) the

Oversized Symbol Feature; or (c) Invisible Stacks Feature and identify which games utilizes each of those features." The requests to produce seek a number of documents related to "every game that includes the Stacked Symbol Feature, the Oversized Symbol Feature, or the Invisible Stacks Feature." These requests thus seek identification of all of Defendants' games containing elements of the accused features. On July 10, 2018, H5G served similar discovery requests on the TAC Defendants. Thereafter, on October 8, 2018, H5G served its Infringement Contentions on the TAC Defendants and on October 9, 2018, filed a motion to amend its Infringement Contentions against the SAC Defendants.

The Special Master first notes that Defendants were directed to respond to H5G's discovery requests at the parties' November 6, 2018, status conference. Neither party sought appeal of that directive. Even if the Special Master had not previously directed Defendants to respond to these requests, the Special Master believes the Undisclosed Games are within the scope of the TAC. The Special Master agrees that the TAC does not limit infringement allegations to games marketed under Defendants' "Max Stacks" and "Mega Symbols" trade names. As H5G points out, with respect to the '223 Patent, the TAC alleges infringement by Defendants with games which include "games marketed under the name or trademark 'Mega Symbols' and also other infringing games that may be marketed under a different name or trademark." ECF No. 318 at ¶127. With respect to the '852 patent, the TAC alleges that the infringing Max Stacks Games include "games marketed under the name or trademark 'Max Stacks' and also other infringing games that may be marketed under a different name or trademark." ECF No. 318 at ¶145. Additionally, prior to the filing of the TAC, by correspondence dated April 30, 2018, H5G informed Defendants that it had become aware of additional games that appeared to contain the infringing features. H5G specifically listed 87

14

games in this correspondence. H5G subsequently served supplemental discovery requests to obtain information related to these Undisclosed Games.

It is the opinion of the Special Master that even if the Undisclosed Games were not yet formally accused of infringement in H5G's Infringement Contentions when H5G served its supplemental discovery requests in May 2018, Defendants should have responded to the discovery requests as the Undisclosed Games share reasonably similar features and a nexus with those games specifically accused of infringement. The Special Master is guided by the second method described in *Hologram USA, Inc. v. Pulse Evolution Corp.*, as the concern underlying the first method—that the burden of specifically identifying accused devices is on the plaintiff—is not present as H5G specifically identified the 87 Undisclosed Games which it believes contain infringing features and for which it seeks discovery. Thus the Special Master is persuaded that the more appropriate method in this instance is to allow discovery to include products reasonably similar to those accused in H5G's prior Infringement Contentions. The Special Master finds H5G's requests appropriate as the discovery requests seek information on products using the specific features, the Stacked Symbol feature and Oversized Symbol feature, which are the same features H5G alleges were infringed by Defendants in H5G's prior Infringement Contentions.

Furthermore, the Special Master finds *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283 (Fed. Cir. 2016), inapposite to the present situation. In *Drone,* the defendant provided over two-thousand pages of documents with its Initial Disclosure that, in its view, sufficiently demonstrated how its accused products operate, consistent with the requirements of the local rule. The plaintiff then filed a motion to compel seeking among other things, the defendants "on board" source code. Following motion practice and the defendant's continued refusal to supply the "on board" source code, the District Court issued a contempt sanction that imposed a default

15

judgment on the defendant. The Federal Circuit reversed the contempt sanction. The Federal Circuit found that under the circumstances, the "on-board" source code was not shown to be necessary to comply with the document production requirements of the local patent rule as the local rule only required producing documents that were "sufficient to show" how the accused product operated. The Federal Circuit faulted the District Court for failing to make a finding as to why the 2000 pages of documents produced by the accused infringer was not sufficient to show how the accused product operated or why the source code was required to show how the accused product operated. It also faulted the District Court for requiring production of the source code versus making the source code available for inspection, as is typically done with source code.

Here, H5G served specific discovery requests seeking information related to Defendants' Undisclosed Games. *Drone* dealt with discovery necessary to comply with Initial Disclosures pursuant to the Local Patent Rules. In this matter, the parties have proceeded past the initial stages of litigation and have served specific discovery requests. Moreover, in *Drone*, the Federal Circuit did not make a determination as to relevancy, and instructed that on remand, the plaintiff would have a chance to make a showing of need and relevance for the on-board source code.

Accordingly, within **30 days** of the date of this Order, Defendants are ordered to provide the discovery of technical information relating to Defendants' accused instrumentalities, including the requested discovery relating to Defendants' games utilizing the "Stacked Symbol Feature" as defined in the Plaintiff's discovery demands, which include: African Big 5, Tarzan, Mariah Carey, The Game of Thrones Fire & Blood, Timber Wolf Grand, Mighty Link Zorro, Mighty Link Ted, Outback Jack Adventures in the Bush, The Big Lebowski, Candy Land, Mr. and Mrs. Cashman, Tim McGraw, My Cousin Vinny, Downtown Abbey, Mystery Date, Batgirl

and Catwoman, Bettie Page, 5 Dragons Grand, Elvira Mistress of the Dark, Fast Cash, Batman Rogues Gallery, Buffalo Grand, The Big Bang Theory, Good Fortune, The Walking Dead, Can Can de Paris, Tarzan and Jane, Dragons on the Lake, Buffalo Stampede, Player's World Classics (Miss Kitty, Wild Panda, 50 Lions, 100 Lions), Goblins Gold, Wonder 4 Jackpots, Spin it Grand, Pure Gold, Pure Magic, Hit it Hot Jackpots, Dragon Bucks, Quick Fire (Panda Paradise, Pharaoh's Ransom, Electric Boogaloo, Golden Peach), Sugar Hit Jackpots, Gold Stacks (Golden Prosperity, Golden Zodiac), Gold Pays (Golden Princess, Golden Festival), Wonder 4 Wonder Wheel, Diamond Storm, Super Wheel Blast (Lions of Venice, Miss Liberty), Cash Explosion, Jackpot Streak (Sparkling Royal, Garden of Amazon), Jackpot Reel Power (Lucky Pig, Sun Tiger, White Tiger), and Cash Fusion.

Within **30 days** of the date of this Order, Defendants are also ordered to provide the discovery of technical information relating to Defendants' accused instrumentalities, including the requested discovery relating to Defendants' games utilizing the "Oversized Symbol Feature" as defined in the Plaintiff's discovery demands, which include: The Big Bang Theory, Cash Explosion, Red Moon-Immortal Dawn, Red Moon-Full Eclipse, Storm Queen -Frost Queen, Storm Queen-Sand Queen, The Walking Dead I, The Walking Dead II, Superman The Movie, Batman Classic TV Series, Happy Lantern, Sahara Gold, Goddess Sisters Princess Viper, Goddess Sisters Queen Coral, Mythos Aquatic Dreams, Mythos Heavenly Pride, Mythos Savannah Magic, Mythos Forest of Wonder, The Romance of Fire & Rain, Dream Rose, Mighty Link Ted, and Sons of Anarchy.

**DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)**
Date: 4/5/19                    **Special Master**

17