UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HIGH 5 GAMES, LLC, a Delaware Limited Liability Company, f/k/a PTT, LLC,<br><br>Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MARKS, an individual; JOSEPH MASCI, an individual; BRIAN KAVANAGH, an individual; MARKS STUDIOS, LLC, an entity d/b/a GIMME GAMES; ARISTOCRAT TECHNOLOGIES, INC., an entity; ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LIMITED, an entity; ARISTOCRAT LEISURE LIMITED, an entity; PRODUCT MADNESS, INC., an entity; GRANT BOLLING, an individual; JOHN SMITH(s) 1-7; and XYZ COMPANIES 1-7,<br><br>Defendants/Counterclaim Plaintiffs. | Case No.: 2:13-CV-07161-JMV-MF<br><br>**ORDER & OPINION OF THE SPECIAL MASTER** |

This matter comes before the Special Master upon defendants Daniel Marks, Joseph Masci, Brain Kavanagh, Grant Bolling, Marks Studios, LLC ("Marks Studios"), Aristocrat Technologies, Inc. ("ATI"), Aristocrat Technologies Australia Pty Ltd. ("ATA"), Aristocrat Leisure Limited ("ALL"), and Product Madness, Inc.'s ("Product Madness")(collectively, "Defendants") motion to compel disclosure of documents from Plaintiff High 5 Games, LLC ("H5G"). After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that Defendants' motion is **GRANTED**.

1

## DISCUSSION

### I. Background

This is a trade secret misappropriations and patent infringement case. Defendants seek to compel the disclosure of certain documents clawed back by H5G on January 16, 2019, under an assertion of privilege. The documents in question had been produced by H5G and bore bates stamp numbers: P000120686-120680, P000027697-27698, P001469198-1469204, P001440154-1440173, P000139808-139817, P000117837-117843, P000090017-90023, P000048361-48368, P000023624-23643, P000140740, and P002504903.

On July 26, 2016, United States Magistrate Judge Mark Falk entered an order pursuant to Federal Rule of Evidence 502(d) supplementing the parties' Discovery Confidentiality Order ("Rule 502(d) Order"). The Rule 502(d) Order governs the claw back of documents in this matter.

The deposition of Stuart Zoble was conducted on January 11, 2019. During the deposition, H5G refused to allow Mr. Zoble to testify regarding certain draft patent applications pertaining to the '852 patent. The documents at issue had previously been produced by H5G.

By correspondence dated January 16, 2019, H5G formally requested to claw back the documents at issue during Mr. Zoble's deposition, which it asserted were inadvertently produced. H5G enclosed a privilege log, Attachment A, to its correspondence to support its claims of privilege. The privilege log provided the following information:

| Bates | Subject | Date | Author | Recipient | Copies | Basis | Priv |
|---|---|---|---|---|---|---|---|
| P000120686 -120680 | Draft Patent Application | 4/5/10 | | | | Draft patent application prepared at the direction of attorneys and/or patent agents in furtherance of preparing, filing, and prosecuting a patent application | AC; PA |
| P000027697 | Email re | 6/22/10 | Stuart | Dick | Christina | Email to patent attorney and patent | AC; |

2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| -27698 | Draft Patent Application | 4:35:16 PM | Zoble | Schulze | Evans; Anthony Singer | agent in furtherance of preparing, filing, and prosecuting a patent application and consulting with or giving advice to a client in furtherance of preparing, filing, and prosecuting a patent application | PA |
| P001469198 -1469204 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of attorneys and/or patent agents in furtherance of preparing, filing, and prosecuting a patent application | AC; PA |
| P001440154 -1440173 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of attorneys and/or patent agents in furtherance of preparing, filing, and prosecuting a patent application | AC; PA |
| P000139808 -139817 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of attorneys and/or patent agents in furtherance of preparing, filing, and prosecuting a patent application | AC; PA |
| P000117837 -117843 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of attorneys and/or patent agents in furtherance of preparing, filing, and prosecuting a patent application | AC; PA |
| P000090017 -90023 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of attorneys and/or patent agents in furtherance of preparing, filing, and prosecuting a patent application | AC; PA |
| P000048361 -48368 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of attorneys and/or patent agents in furtherance of preparing, filing, and prosecuting a patent application | AC; PA |
| P000023624 -23643 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of attorneys and/or patent agents in furtherance of preparing, filing, and prosecuting a patent application | AC; PA |
| P000140740 | Email re Draft Patent Application | 4/19/11 10:16:22 AM | Stuart Zoble | Jonathan Ballone; Philip Welty; | | Internal email among coinventors forwarding draft patent application prepared at the direction of attorneys and/or patent agents in | AC; PA |

| Bates | Subject | Date | Author | Recipient | Copies | Basis | Priv |
|---|---|---|---|---|---|---|---|
| | | | | Maykyta Panasenko | | furtherance of preparing, filing, and prosecuting a patent application | |
| P002504903 | Email re Draft Patent Application | 4/19/11 10:16:22 AM | Stuart Zoble | Jonathan Ballone; Philip Welty; Maykyta Panasenko | | Internal email among coinventors forwarding draft patent application prepared at the direction of attorneys and/or patent agents in furtherance of preparing, filing, and prosecuting a patent application | AC; PA |

That same day, Defendants disputed H5G's claims of privilege and stated that they were considering contesting the privilege assertion pursuant to paragraph (c) of the Rule 502(d) Order. H5G responded by email on January 25, 2019. Attached to H5G's email was a supplemental privilege log. This supplemental privilege log provided the following information:

| Bates | Subject | Date | Author | Recipient | Copies | Basis | Priv |
|---|---|---|---|---|---|---|---|
| P000120686-120680 | Draft Patent Application | 4/5/10 | | | | Draft patent application prepared at the direction of attorneys **Dick Schulze and Bob Ryan** in furtherance of preparing, filing, and prosecuting a patent application | AC |
| P000027697-27698 | Email re Draft Patent Application | 6/22/10 4:35:16 PM | Stuart Zoble | Dick Schulze | Christina Evans; Anthony Singer | Email to patent attorney **Dick Schulze** in furtherance of preparing, filing, and prosecuting a patent application and consulting with or giving advice to a client in furtherance of preparing, filing, and prosecuting a patent application | AC |
| P001469198-1469204 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of attorneys **Dick Schulze and Bob Ryan** in furtherance of preparing, filing, and prosecuting a patent application | AC |
| P001440154-1440173 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of **Dick Schulze and Bob Ryan** in furtherance of preparing, filing, and prosecuting a patent application | AC |
| P000139808-139817 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of **Dick Schulze and Bob Ryan** in furtherance of preparing, filing, and prosecuting a patent application | AC |

4

| Bates | Type | Date | From | To | | Description | Privilege |
|---|---|---|---|---|---|---|---|
| P000117837-117843 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of **Dick Schulze and Bob Ryan** in furtherance of preparing, filing, and prosecuting a patent application | AC |
| P000090017-90023 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of **Dick Schulze and Bob Ryan** in furtherance of preparing, filing, and prosecuting a patent application | AC |
| P000048361-48368 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of **Dick Schulze and Bob Ryan** in furtherance of preparing, filing, and prosecuting a patent application | AC |
| P000023624-23643 | Draft Patent Application | 6/23/10 | Stuart Zoble | | | Draft patent application prepared at the direction of **Dick Schulze and Bob Ryan** in furtherance of preparing, filing, and prosecuting a patent application | AC |
| P000140740 | Email re Draft Patent Application | 4/19/11 10:16:22 AM | Stuart Zoble | Jonathan Ballone; Philip Welty; Maykyta Panasenko | | Internal email among coinventors forwarding draft patent application prepared at the direction of attorneys **Dick Schulze and Bob Ryan** in furtherance of preparing, filing, and prosecuting a patent application | AC |
| P002504903 | Email re Draft Patent Application | 4/19/11 10:16:22 AM | Stuart Zoble | Jonathan Ballone; Philip Welty; Maykyta Panasenko | | Internal email among coinventors forwarding draft patent application prepared at the direction of attorneys **Dick Schulze and Bob Ryan** in furtherance of preparing, filing, and prosecuting a patent application | AC |

## II. Arguments of the Parties

### *Defendants*

Defendants seek to compel the disclosure of certain documents recently clawed back by H5G under an assertion of privilege. Defendants assert that as set forth in the Court's Rule 502(d) Protective Order, the burden of proving privilege lies with H5G. Thus Defendants argue

5

that H5G bears the burden of demonstrating that the claimed privilege applies and that the privilege log provided is actually sufficient to assert the privilege.

Defendants argue the supplemental privilege log remains deficient because: (1) the draft patent applications in the log are not normally subject to attorney-client privilege unless they specifically involve an attorney, and the authors and recipients of all but one identified document in H5G's supplemental log are non-attorneys; (2) the presence of third party Christina Evans waives any privilege that might apply; (3) the earliest draft application identified no authors or recipients whatsoever; (4) the same first-listed draft was sent to Ms. Evans, who is not an attorney or even a qualified agent; and (5) H5G's factual assertions to establish privilege –that the draft patent applications were prepared at the direction of Holland & Hart attorneys—is contradicted by the original privilege log and other documents in the record.

Defendants argue that H5G cannot establish attorney-client privilege for the draft patent applications. Defendants maintain that draft patent applications and emails merely transmitting draft patent applications without conveying or seeking any substantive legal advice are not privileged communications or other work product. Defendants cite case law to assert that a draft patent application is not inherently a privileged document. To be privileged, "a draft application, like any other document, must [involve] a communication between an attorney and a client." *Hoffmann-La Roche, Inc. v. Roxane Labs., Inc.*, No. CIV.A. 09-6335 WJM, 2011 WL 1792791, at *2 (D.N.J. May 11, 2011) (citing *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 86 (S.D.N.Y. 2006)). Defendants argue that the relevant inquiry is not whether the documents are drafts, or whether they eventually would be submitted to an attorney for review, but whether an attorney was involved in their creation or the specific related communication involved an attorney. Defendants argue that no attorney is copied on the emails and even the one email

touched by an attorney was written by a non-lawyer, Mr. Zoble, without the benefit of any prior communications from any lawyer mentioned.

Defendants further argue that Ms. Evans is not a registered patent agent with the USPTO and that her involvement with the patent applications and her presence on any related communications not only cannot be a basis to establish attorney-client privilege but actually waives the privilege, to the extent it might otherwise apply. Defendants acknowledge that it is possible for a privilege to apply to non-attorneys in specific circumstances. However, Defendants argue there is nothing in the record here to establish that the communication was made to improve the comprehension of the communication between the attorney and client. Defendants argue that *In re Queen's Univ. at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016), recognized only that communications concerning patent prosecution might be privileged, not draft applications themselves.

Defendants further argue that H5G's assertions that the draft patent applications were prepared at the direction of counsel is contradicted by other materials. First, Defendants argue that it does not appear that H5G engaged Holland & Hart until after the drafting of the first document in the privilege log, which is dated April 5, 2010. Defendants assert that there are no communications with Holland & Hart in any privilege log produced in this case prior to mid-May 2010. Second, Defendants argue that H5G did not seek to claw back the email to which the April 5, 2010 draft patent application was attached. Thus, according to Defendants, the email offers further proof that only Ms. Evans, and not the Holland & Hart attorneys, was involved in the drafting of the application. Third, Defendants point to the two internal draft emails and argue that H5G is asserting that these two relevant draft applications were prepared at the direction of Holland & Hart attorneys even though there is no document attached. Defendants believe that

7

H5G needs to disclose, at minimum, when and how any legal advice supposedly reflected in the draft applications was communicated to the non-attorney authors and by whom.

Defendants further assert that H5G's supplemental privilege log remains infirm. Defendants argue that the boilerplate descriptions are far too broad to justify withholding documents on the basis of attorney-client privilege, particularly where the only identified communication with Holland & Hart, for the draft of the '852 application, was 2.5 months after the first draft was prepared, and there are no attorney communications at all concerning the two blank internal emails related to the '223 application. Defendants argue that nowhere in these documents and communications is any specific establishment that legal advice is being given or sought. Defendants maintain that case law is clear that the mere mention of an attorney in a communication without more evidence establishing that his involvement was for legal purposes, will not bestow the privilege on the communications. Defendants assert that H5G has provided no evidence that Dr. Zoble reported to or was acting at the behest of any attorneys.

*H5G*

H5G argues that the claw back documents are privileged as communications with attorneys for the purposes of obtaining legal advice or as documents prepared at the direction of attorneys for the purpose of obtaining legal advice. H5G asserts that this was confirmed during the deposition of Dr. Zoble.

H5G argues that draft patent applications are privileged when drafted under the direction of an attorney for the purposes of obtaining legal advice. H5G points to *In re Queen's U. at Kingston*, 820 F.3d 1287, 1300 (Fed. Cir. 2016), to assert that the Federal Circuit has recognized that communications covered by the attorney-client privilege include consulting with or giving advice to a client in contemplation of filing a patent application or other document with the

8

Patent Office, and drafting the specification or claims of a patent application. H5G argues that case law has thus recognized a privilege of draft applications.

In this matter, H5G argues that the draft applications were prepared at the direction of attorneys at Holland & Hart. H5G maintains that the absence of a written record with respect to Holland & Hart is not suspicious as discussions between H5G and Holland & Hart generally took place telephonically between Tony Singer and/or Dr. Zoble and Holland & Hart attorneys Dick Schulze and Bob Ryan.

H5G further asserts that Christine Evans' presence as copied on the email to counsel does not waive the attorney-client privilege as Ms. Evans was a contractor of the H5G in-house legal team. According to H5G, she worked directly under H5G's corporate IP counsel and current general counsel, Jon Fallon, assisting with tasks associated with providing legal advice. H5G maintains that Ms. Evans was considered to essentially be a paralegal in her role at H5G.

H5G clarifies that it does not seek to claw back the email to which the April 5, 2010, patent application was attached and the April 19, 2011, emails with no privileged content. H5G therefore withdraws its claim of privilege to documents Bates stamped P00140740 and P002504903. However, H5G asserts that the attachments to each of these emails, draft patent applications, are privileged for the reasons asserted above.

*Defendants' Reply Arguments*

Defendants argue that Mr. Fallon, General Counsel and Senior Vice President of Legal at H5G, has testified under oath that he did not have any involvement with H5G until April 2011. Defendants further assert that contrary to H5G's suggestion that Ms. Evans was being supervised at all times by Holland & Hart, the privilege log produced by Holland & Hart when Defendants subpoenaed its records indicate that the firm's first communications with H5G were after the first

9

draft patent application. According to Defendants, based on the privilege log supplied by Holland & Hart, the earliest evidence that Holland & Hart was involved with the patent application drafting process was May 13, 2010, which is consistent with H5G's privilege log that identified the earliest involvement as May 12, 2010.

Moreover, Defendants assert that there is no evidence that H5G had a legal department between February 2010 and April 2011. Defendants explain that after Daniel Marks left H5G in March 2010, H5G did not have any in-house attorneys. Prior to his leaving, Mr. Marks was H5G's general counsel and sole attorney. Defendants argue that there is no evidence that H5G had any in-house attorneys until Mr. Fallon joined H5G in April 2011. Thus Defendants argue that Ms. Evans could not have "served as a contractor of the H5G in-house legal team."

Defendants argue that H5G miss-cites *In re Queen's U. at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016), which recognized at most only that communications concerning patent prosecution might be privileged, not that draft applications themselves are privileged. Defendants further argue that the other cases cited by H5G do not establish privilege for patent applications, just the fact that patent applications, like any document, may otherwise reflect attorney communications or work product.

**Opinion**

The most well-known and carefully guarded privilege is the attorney-client privilege. It is well established that an attorney-client privilege exists to "encourage full and frank communication" between counselor and client and "thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); accord *Trammel v. United States*, 445 U.S. 40, 51, 100 S. Ct. 906, 913, 63 L. Ed. 2d 186 (1980) ("[P]rivilege rests on the need for the advocate and

counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."). It is also without question that the privilege attaches to a communication made "for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000); see also *Upjohn*, 449 U.S. at 389, 101 S.Ct. 677 (stating that legal advice "can only be safely and readily availed of when free from the consequences or the apprehension of disclosure").

The attorney-client privilege protects communications between attorneys and clients from compelled disclosure if the communication satisfies the following elements: "it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), as amended (Oct. 12, 2007)(quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000)). "'Privileged persons'" include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *Id.* Thus the "[p]resence of a third-party, such as a consultant, does not destroy the attorney-client privilege where that party is the client's agent or possesses 'a commonality of interest with the client.'" *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476–77 (E.D. Pa. 2005) (quoting *In re Grand Jury Investigation*, 918 F.2d 374, 386 n. 20 (3d Cir.1990)).

Courts have also found that confidential communications between inventors or employees who work for the same employer can retain their privilege so long as they are "made in furtherance securing legal advice." See *Regents of Univ. of California v. Affymetrix, Inc.*, 326 F.R.D. 275, 280 (S.D. Cal. 2018); *In re Queen's U. at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016) (holding communications between non-attorney employees about "its patent application and

11

[plaintiff's] patents" were privileged because made at the direction of counsel and intended to seek legal advice).

In this matter, the Special Master has reviewed the documents at issue *in camera*. *In camera* review is not appropriate merely because a party objects to the assertions of privilege. See *U.S. v. Zolin*, 491 U.S. 554, 571–572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). And it is not a basis upon which any party can shift a burden to the Court that they should bear themselves. *United States v. Davita, Inc.*, 301 F.R.D. 676, 681 (N.D. Ga. 2014). Nevertheless, where there is a sufficient evidentiary showing that an issue exists regarding the application of a privilege, the court must utilize its discretion as to whether *in camera* review is appropriate under the circumstances presented. See *U.S. v. Zolin*, 491 U.S. 554, 571–572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).

After reviewing the documents at issue and submissions of the parties, it is the opinion of the Special Master that the eight draft patent applications are not protected from disclosure by attorney-client privilege. A draft application, like any other document, is not an inherently privileged document. Thus the draft applications are only protected from disclosure by attorney-client privilege if H5G can establish that the draft patent applications were (1) communications (2) between "privileged persons" (3) made in confidence (4) intended to receive or give legal assistance. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), as amended (Oct. 12, 2007) (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000)). "Privileged persons" are the client, the attorney, and "any of their agents that help facilitate attorney-client communications or the legal representation." *Id.* (citing to § 70 of the Restatement).

Based on a review of H5G's January 16, 2019 privilege log, January 25, 2019 supplemental privilege log, and the documents themselves, H5G has failed to satisfy its burden

12

to demonstrate that the patent applications were communications made to or from an attorney for purposes of securing legal advice and would not have been made but for the need for such advice. *Hoffmann-La Roche, Inc. v. Roxane Labs., Inc.*, No. CIV.A. 09-6335 WJM, 2011 WL 1792791, at *8 (D.N.J. May 11, 2011). Here, the draft patent applications are not communications to or from an attorney. The documents appear to simply be drafts of patent applications without any attorney involved. While the supplemental privilege log provides that these are "[d]raft patent application prepared at the direction of Dick Schulze and Bob Ryan in furtherance of preparing, filing, and prosecuting a patent application," the Special Master does not believe H5G has satisfied its burden of demonstrating that these patent applications were communicated between the attorney and client and would not have been made but for the need for such advice. "Documents are not privileged simply because they end up with a lawyer or eventually prove useful to the lawyer's provision of legal services." *Id.* Accordingly, H5G shall produce documents bates stamped P000120686-120680; P001469198-1469204; P001440154-1440173; P000139808-139817; P000117837-117843; P000090017-90023; P000048361-48368; P000023624-23643 within **10 days** of the date of this Order.

It is the opinion of the Special Master that document bates stamped P000027697-27698 is not protected from disclosure by attorney-client privilege. According to the supplemental privilege log, document bates stamped P000027697-27698 is an email from Stuart Zoble to "patent attorney Dick Schulze in furtherance of preparing, filing, and prosecuting a patent application and consulting with or giving advice to a client in furtherance of preparing, filing, and prosecuting a patent application." Christina Evans and Anthony Singer were copied on the email. In the Declaration of Jon Fallon, Esq., Mr. Fallon explains that H5G, at the direction of Daniel Marks, engaged Christina Evans around September 2009 to perform paralegal services

13

limited to the field of intellectual property. Mr. Fallon explains that Ms. Evans initially reported directly to Mr. Marks when he was General Counsel and then later reported to him when he became acting Corporate IP counsel after Mr. Marks left. However, Defendants point out that according to the record, Mr. Marks left H5G in or around March 2010. Mr. Fallon, in his deposition testimony, stated that he did not become involved with H5G until April 2011. Accordingly, there is a dispute as to whether Ms. Evans was a contract employee of the legal department of H5G and was acting as an agent of H5G on this email. As it appears that Mr. Fallon was not employed by H5G in June 2010, it remains unclear to the Special Master what Ms. Evans' role was at this point in time and to whom she reported at H5G, as well as whether there was a legal department at H5G at this time. As such, H5G has failed to satisfy its burden to demonstrate that attorney-client privilege was not waived by the inclusion of Ms. Evans on this email. Accordingly, H5G shall produce documents bates stamped P000027697-27698 within **10 days** of the date of this Order.

Date: 5/10/19

DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)
Special Master