<u>Not for Publication</u>

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HIGH 5 GAMES, LLC, | |
| *Plaintiff,* | Civil Action No. 13-7161 |
| v. | **OPINION** |
| DANIEL MARKS, *et al.*, | |
| *Defendants.* | |

<u>**John Michael Vazquez, U.S.D.J.**</u>

This highly contentious litigation involves competitors who develop features for casino games. Neither side has been entirely consistent in their positions with the exception that each side consistently opposes the other. Presently before the Court are two partial motions to dismiss the Third Amended Complaint filed by (1) Daniel Marks, Joseph Masci, Brian Kavanagh, Marks Studios, LLC ("Marks Studios"), and Aristocrat Technologies, Inc. (individually "ATI" and collectively the "SAC Defendants"), D.E. 344; and (2) Aristocrat Technologies Australia PTY Limited ("ATA"), Aristocrat Leisure Limited ("ALL"), Product Madness, Inc. ("PM"), and Grant Bolling (collectively the "New Defendants"), D.E. 345. Plaintiff High 5 Games, LLC ("H5G" or "Plaintiff") opposed both motions, D.E. 370, 371, to which Defendants replied D.E. 378, 379.[1]

---

[1] The New Defendants' brief in support of their motion, D.E. 345-1, will be referred to as "New Br."; the SAC Defendants' brief in support of their motion, D.E. 344-1, will be referred to as "SAC Br."; Plaintiff's brief in opposition to the New Br., D.E. 370, will be referred to as "New Opp."; Plaintiff's brief in opposition to the SAC Br., D.E. 371, will be referred to as "SAC Opp."; the New Defendants' reply brief, D.E. 379, will be referred to as "New Reply"; and the SAC Defendants' reply brief, D.E. 378, will be referred to as "SAC Reply." Plaintiff's supplemental brief, D.E. 460, will be referred to as "Plf. Supp. Br."; Defendants' supplemental brief, D.E. 459,

The Court heard oral argument on the motions on June 27, 2019, D.E. 456, after which the parties filed supplemental briefs and opposition, D.E. 459, 460, 462, 463. For the reasons that follow and as discussed on the record at oral argument, Defendants' motions are **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND[2]

### 1.  Factual Background

Plaintiff's business involves the gaming market, including slot machines. "Super Symbols" and "Super Stacks," two of H5G's gaming methodologies and inventions for slots, are at issue in this litigation. The Super Stacks method provides "a unique method of taking simple stacks and generating an experience-changing function for a player through substituting fixed symbols on the reel with the desired stacked symbol." TAC ¶ 25. Plaintiff alleges that it created the Super Stacks method in approximately the summer of 2009. The Super Stacks method was included in Plaintiff's March 28, 2012 patent application and the resulting US Patent No. 9,022,852 ("'852") patent,[3] which was issued to Plaintiff on May 5, 2015. *Id.* ¶¶ 23-28. Plaintiff

---

will be referred to as "Defs. Supp. Br."; Plaintiff's supplemental response, D.E. 463, will be referred to as "Plf. Supp. Resp."; and Defendants' supplemental response, D.E. 462, will be referred to as "Defs. Supp. Resp."

[2] The factual background is taken from Plaintiff's Third Amended Complaint (the "TAC") and its exhibits. D.E. 318. When reviewing a Rule 12(b)(6) motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)). In addition, when considering a motion to dismiss for lack of personal jurisdiction, a court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

[3] After the supplemental briefing on the pending motions, Defendants notified the Court that following an *inter partes* review, the Patent Trial and Appeal Board recently found that each claim of '852 patent was unpatentable. D.E. 466. Plaintiff has indicated that it intends to appeal the decision to the Federal Circuit.

alleges that prior to the '852 patent's issuance date, it did not disclose its proprietary methodology as to Super Stacks and considered it a trade secret. *Id.* ¶ 28.

The Super Symbols invention "pertains to the concept of oversize symbols occupying multiple positions across multiple rows and/or columns." *Id.* ¶ 30. Plaintiff alleges that it conceived of this idea in "the latter part of 2009" and filed a provisional patent application that included the Super Symbols invention on August 16, 2011. Approximately one year later, Plaintiff filed its patent application, and U.S. Patent No. 8,734,223 ('223) patent was issued to Plaintiff on May 27, 2014. *Id.* ¶¶ 30-31. Plaintiff also considered the Super Symbols invention to be a trade secret prior to the issuance of the '223 patent and kept its invention a secret before then. *Id.* ¶ 32.

Plaintiff alleges that three of its former employees, Defendants Daniel Marks, Joseph Masci, and Brian Kavanaugh, as well as Mark's company, Defendant Marks Studios (d/b/a Gimmie Games), misappropriated confidential information. Marks Studios used this information to help a competitor, Defendant ATI, develop two new game features, "Mega Symbols" and "Mega Stacks." *Id.* ¶ 54.

Marks began working as H5G's legal counsel in September 1998, and during his employment, devised and developed casino game software. *Id.* ¶ 37. Plaintiff alleges that in 1998, Marks executed an Employee Proprietary Information Agreement in favor of H5G (the "Proprietary Information Agreement"), which assigned Marks' intellectual property rights to H5G. *Id.* ¶ 65. Marks resigned from H5G, effective February 4, 2010. On that date, Marks and H5G entered into a Separation, Severance and Transition Services Agreement (the "Marks Agreement"). Pursuant to the Marks Agreement, Marks agreed to return (and not use) all confidential information, and to honor a "Restricted Period." *Id.* ¶ 38. The Restricted Period included non-solicitation and non-compete provisions. *Id.* Plaintiff alleges that the Super Stacks

and Super Symbols inventions constitute confidential information under the Marks Agreement. *Id.* In October 2011, Marks and H5G executed the "Marks Amendment" to the Marks Agreement, which extended the non-solicitation period. *Id.* ¶ 40.

Plaintiff alleges that after Marks left, he created and became the managing partner of Marks Studios, and began to compete against H5G. *Id.* ¶¶ 48-49. In December 2012, Marks hired Kavanagh, and in July 2013, Masci joined Marks Studios. Kavanagh and Masci had previously worked at H5G. *Id.* ¶¶ 41, 43, 51. Each had post-employment agreements with Plaintiff. *Id.* ¶¶ 41, 43. Bolling also worked with Plaintiff, leaving in 2010 and agreeing to a post-employment contract; he currently works for ATI. *Id.* ¶¶ 45. In addition, Marks allegedly entered into an agreement with ATI as early as October 2012. *Id.* ¶ 50. In the spring of 2012, ATI had executed a non-disclosure agreement with H5G, through which "H5G shared confidential information with [ATI] for the sole purpose of entering a business relationship." *Id.* ¶ 50.

As noted, the gist of Plaintiff's case centers on its allegations that Defendants misappropriated information that Plaintiff used to fashion the Super Stacks and Super Symbols to create the Max Stacks and Mega Symbols features. *Id.* ¶¶ 55-56. Plaintiff created many games with the Super Symbols feature and then sold some of the games to Bally Technologies. *Id.* ¶ 35. Plaintiff and Bally planned to publicly introduce the games in September 2013 at an industry trade show, G2E, in Las Vegas. *Id.* ¶ 36. Plaintiff alleges, upon information and belief, that Marks Studios' games (with the Max Stacks and Mega Symbols features) were also first publicly introduced at an ATI booth during G2E (although Plaintiff does not allege in what year). *Id.* ¶ 53. Plaintiff identifies specific games from Marks Studios' that have incorporated the Max Stacks and Mega Symbols features. *Id.* ¶¶ 57, 60.

Plaintiff also alleges that as early as June 2013, one or more of the Defendants wrongfully filed multiple patent applications in violation of the Proprietary Information Agreement. *Id.* ¶ 74. At least one of the applications has resulted in an issued patent. *Id.*

### 2. Procedural History

Plaintiff filed its initial Complaint on November 26, 2013, alleging trademark infringement, unfair competition, and breach of contract claims against Marks, Masci, Kavanaugh, and Gimmie Games. D.E. 1. On July 31, 2014, H5G filed its First Amended Complaint ("FAC"), which added ATI as a Defendant and asserted a patent infringement claim against ATI as to the '223 patent. D.E. 32. Defendants moved to dismiss the FAC pursuant to Rule 12(b)(6), which was granted in part and denied in part. D.E. 67. Plaintiff was granted leave to file a Second Amended Complaint, which it filed on January 30, 2017. The SAC added new trade secret and unfair competition claims, in addition to patent infringement claims related to a second patent, the '852 patent. D.E. 186. On February 27, 2017, Defendants sought to dismiss certain counts from the SAC for failure to state a claim. D.E. 195.

While Defendants' motion to dismiss the SAC was pending, H5G filed a motion for a temporary restraining order and a preliminary injunction (the "TRO") on August 9, 2017, alleging that Marks was improperly filing new patent applications and was prosecuting pending patent applications for which H5G was the rightful owner. D.E. 209. The SAC Defendants opposed H5G's motion (D.E. 220-25), to which H5G replied (D.E. 227-28). This Court heard oral argument on H5G's TRO on September 7, 2017, and entered an Order denying the motion the same day. D.E. 229, 230. During oral argument on the TRO, H5G informed the Court that it was contemplating filing a motion to amend the SAC to address certain issue raised in the TRO. As a

result, the Court administratively terminated Defendants' pending motion to dismiss the SAC so that Plaintiff could first seek leave to amend. TRO Argument at T68:1-69:24 (Sept. 7, 2017).

Plaintiff filed its motion for leave to file a Third Amended Complaint ("TAC") on November 10, 2017 (D.E. 242), which the SAC Defendants opposed (D.E. 245). Among other things, the SAC Defendants noted briefly that the proposed TAC failed to allege that New Jersey was a proper forum for the patent infringement claims in light of the Supreme Court's recent decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017). D.E. 245 at 3, 38. Plaintiff conceded in its reply brief that despite the age of the case, the parties still had much to accomplish in the litigation. D.E. 249 at 3 (explaining that "discovery is still open, no trial date is scheduled, substantive depositions have not yet been conducted, and expert reports were not yet exchanged"). In granting Plaintiff leave to file, Judge Falk determined that "[t]hough the case has been pending for a number of years, it is effectively at square one."[4] D.E. 316 at 7.

H5G filed its TAC on May 9, 2018. D.E. 318. The TAC includes new claims that were allegedly learned from discovery produced in 2017 and asserts claims against four new Defendants who are related to ATI. D.E. 242. The New Defendants are (1) PM, a subsidiary of ATI that owns or operates Internet-based "social casinos" that allegedly use infringing games; (2) Bolling, a former H5G employee and current employee of ATI; (3) ATA, an Australian entity and "affiliate company" of ATI that is the listed assignee of intellectual property at issue; and (4) ALL, an

---

[4] Plaintiff later echoed this same sentiment. On April 16, 2018, H5G sought leave to amend its infringement contentions arguing, in part, that leave should be granted because the case was in the early stages of the proceedings. D.E. 304 at 28. And on October 9, 2018, H5G filed a motion that sought leave to file supplemental infringement contentions against the SAC Defendants. Again, H5G maintained that the motion should be granted because "this case is in its early stages." D.E. 387 at 9.

Australian entity that is listed as the parent company of ATI and ATA. TAC ¶¶ 10, 12-14. As for the new claims, H5G asserts indirect infringement claims (1) as to PM relating to the '223 patent and (2) against all the entity Defendants relating to the '852 patent. H5G also asserts the following claims that are solely related to the wrongful patent applications: (1) a breach of contract claim against ATI claims; (2) a claim for declaratory judgment, (3) conversion, (4) unfair competition, (5) breach of contract, (6) unjust enrichment, and (7) constructive trust. *See generally* TAC.

The current motions followed.

## II.  ANALYSIS

As a threshold matter, the Court made certain findings on the record during oral argument, which it summarizes here. H5G's conversion claim (Count Two) is dismissed; H5G agreed in its opposition to dismiss the claim. For the reasons discussed on the record, the New Defendants' motion as it pertains to the dismissal of H5G's indirect infringement claims as to PM (Counts Seven and Eight) is denied. The New Defendants' motion is also denied to the extent that it seeks to dismiss the New Jersey trade secrets claim (Count Three) as to Bolling on statute of limitations grounds.

The New Defendants and the SAC Defendants raised a number of arguments seeking to dismiss Plaintiff's trade secrets claims (Counts Three, Twelve, and Thirteen). At oral argument, however, Defendants conceded that many of their arguments were better addressed through a motion for summary judgment rather than a motion to dismiss on plausibility grounds. To the extent that Defendants contest that they conceded this fact, the Court expressly finds that such arguments are better suited for resolution by way of summary judgment and the motion to dismiss is denied as to the trade secrets claims. In addition, Plaintiff admitted that its use of the word "other" in the TAC (TAC ¶ 95) was not intended to expand the scope of its previously defined

trade secrets as to the Super Stacks and Super Symbols features. As a result, the Court denies Defendants' motion on this issue but expressly finds that Plaintiff's trade secret claims are so limited. In other words, Plaintiff's trade secrets claims may proceed but they are limited to the Super Stacks and Super Symbols trade secrets.

The New Defendants and the SAC Defendants also seek to dismiss Plaintiff's "patent ownership claims" (Counts One, Fourteen, and Fifteen). As discussed at oral argument, these claims are dismissed to the extent that they rely on alleged wrongful patent *applications* because they are not ripe for adjudication at this time. *See HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co., Ltd.*, 600 F.3d 1347, 1354 (Fed. Cir. 201) (stating that there is no private right of action to challenge inventorship of *pending* patent application).

The Court now addresses the remaining motions.

### 1. Lack of Personal Jurisdiction

ATA, ALL, and PM seek to dismiss the claims, other than those related to patent infringement, for lack of personal jurisdiction. New Br. at 7. Plaintiff maintains that there is personal jurisdiction over the three entities pursuant to alter ego/piercing the corporate veil and agency theories. H5G adds that PM also purposefully availed itself of doing business in New Jersey forum such that this Court has personal jurisdiction over PM. The Court finds that it lacks personal jurisdiction over ATA and ALL but grants jurisdictional discovery as to PM.

ATA, ALL and PM are affiliated with ATI; ATA and ALL are both an "affiliate company" of ATI, and PM is a subsidiary of ATI. TAC ¶¶ 12-14. None of the three entities, however, have a physical presence in New Jersey. ATA is an Australian proprietary company with a registered business address in Australia. *Id.* ¶ 12. ALL is an Australian public company with a registered

business address in Australia. *Id.* ¶ 14. PM is a Delaware corporation with a principal place of business in California. *Id.* ¶ 13.

Federal Rule of Civil Procedure 12(b)(2) permits a court to dismiss for lack of personal jurisdiction. The plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Initially, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.* Yet, in reviewing the evidence, a court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). Therefore, in determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of Plaintiff.

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state," so long as the jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotation marks omitted). The inquiry thus involves a two-step process, first looking to the state requirements and then to the constitutional requirements. *IMO Indus., Inc. v. Kiekart AG*, 155 F.3d 254, 259 (3d Cir. 1998). New Jersey's long-arm jurisdiction law provides that courts may "exercise jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 201 N.J. 48, 72 (2010) (internal quotation marks omitted), *rev'd on other grounds sub nom., J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). Accordingly, the two steps are

collapsed into one and "we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). In other words, to establish personal jurisdiction, the Due Process Clause requires minimum contacts between the defendant and the forum and that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

Personal jurisdiction may be established by means of general or specific jurisdiction over a defendant.[5] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Plaintiff does not argue that this Court has general jurisdiction[6] over ATA, ALL or PM. As a result, the Court addresses the parties' arguments as to specific jurisdiction.

Specific jurisdiction requires that a party "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472 (internal citations and quotation marks omitted). The minimum contacts analysis depends upon "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). However, actual "[p]hysical

---

[5] There are other means of establishing personal jurisdiction, such as by consent, waiver, or in-state service. These are methods are not at issue here.

[6] General jurisdiction, also called all-purpose jurisdiction, may be asserted over an out-of-state corporation if its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919. For an entity, its "place of incorporation and principal place of business are paradigm bases for general jurisdiction[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks omitted). ATA, ALL, and PM are not incorporated in New Jersey nor do they have their principal places of business in the state.

presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *IMO Indus., Inc.*, 155 F.3d at 259. The Third Circuit has laid out a three-part test to determine whether specific jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317. First, the defendant must have "purposefully directed [its] activities at the forum." *Id.* (internal quotation marks omitted).[7] Second, the litigation must "arise out of or relate to at least one of those activities." *Id.* (internal quotation marks omitted). Third, if the first two requirements are met, the exercise of jurisdiction must "otherwise comport with fair play and substantial justice." *Id.* (internal quotation marks omitted).

### a. Alter Ego/Piercing the Corporate Veil

Generally, a parent corporation is not liable for the acts of its subsidiaries. *Portfolio Fin. Servicing Co. ex rel. Jacom Comput. Servs., Inc. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 626 (D.N.J. 2004) ("Liability will not be imposed on the parent corporation merely because of its ownership of the subsidiary."). In limited circumstances, however, "abuse of the corporate form will allow courts to employ the 'tool of equity' known as veil-piercing." *Id.* The corporate veil may be pierced only if (1) the subsidiary was an alter ego or the parent "so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent" and (2) "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d

---

[7] This factor has also been characterized as "purposeful availment." *Burger King*, 471 U.S. at 475. The factor focuses on contact that the defendant itself created with the forum State. *Id.* The "purposefully directed" or "purposeful availment" requirement is designed to prevent a person from being haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third person." *Id.* (internal quotation marks omitted) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980); *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

145, 149 (3d Cir. 1988). Courts consider the following factors to determine whether an entity is an alter ego: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001).

At the motion to dismiss stage, a plaintiff "must plead specific facts with respect to how the affiliated entities and individuals allegedly controlled or dominated [the defendant]." *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 427 (D.N.J. 2019) (refusing to pierce the veil because even assuming alleged transfers constituted a disregard of corporate formalities, the plaintiff otherwise failed to demonstrate the presence any of the other factors relevant to a veil-piercing analysis). Plaintiff fails to plead sufficient such facts here.

H5G alleges that ALL "prepares and files consolidated financial statements" for ATI, ATA and PM (TAC ¶ 15); ALL referred to ATI, ATA and PM as "controlled entities" in its 2016 annual report (*id.*); that there is a shared website for all four entities (*id.* ¶ 16); and that the entities have common executives, directors, and officers (*id.* ¶ 17). "'[C]ommon ownership and common management alone' are insufficient for veil-piercing purposes." *Linus Holding Corp.*, 376 F. Supp. 3d at 427 (quoting *RNC Sys. v. MTG Holdings, LLC*, No. 15-5239, 2017 WL 1135222, at *5 (D.N.J. Mar. 27, 2017)). Outside of these limited allegations, Plaintiff pleads no facts demonstrating undercapitalization, insolvency, or an absence of corporate formalities. Importantly, Plaintiff points to no authority that recognizes a piercing of the corporate veil based on its alleged facts. Plaintiff's allegations fall far short of what is necessary to allege that any of

the entities are alter egos of ATI, or that ATI dominated ATA, ALL or PM such that there was in essence no separate existence amongst the entities.

H5G also fails to satisfy the second prong of the veil piercing analysis. A plaintiff "need not prove common law fraud" and must only "meet the less rigid standard of 'fraud, injustice, or the like.'" *The Mall at IV Grp. Props., LLC v. Roberts*, No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005) (quoting *Kuibyshevnefteorgsythez v. Model*, No. 93-4919, 1995 WL 66371, at *15 (D.N.J. Feb. 6, 1995)). Here, Plaintiff maintains that if this Court does not pierce the veil, Plaintiff would be forced to litigate its claims in multiple forums, which would create inefficiencies and waste judicial resources. New Opp. at 6. Judicial efficiency, however, is not a consideration in determining whether the corporate veil should be pierced. Plaintiff makes no plausible allegations that the corporate structure of the relevant entities reflects fraud or an effort to circumvent the law. As a result, the Court does not have personal jurisdiction over the entities under the piercing the corporate veil/alter ego theories.

### b. Agency Relationship

Plaintiff also argues that this Court has personal jurisdiction over ATA, ALL, and PM by virtue of agency relationships with ATI. New Opp. at 8. "Agency relationships . . . may be relevant to the existence of specific jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). To determine if a subsidiary is acting as an agent of the parent, courts consider the following:

> (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies.

*Cardenas v. Spinnaker Resorts, Inc.*, No. 16-2466, 2017 WL 3315285, at *5 (D.N.J. Aug. 3, 2017) (internal citations omitted). As discussed, Plaintiff fails to plead sufficient facts demonstrating

financial dependency or that ATI disregards corporate formalities (or interferes) with ATA, ALL or PM's operations. Critically, Plaintiff has pointed to no authority supporting the finding of personal jurisdiction on an agency theory in light of the factual allegations here. The Court has real concerns that if it were to adopt Plaintiff's theory, it would always result in the finding of specific personal jurisdiction between a parent and subsidiary, or between affiliates, on an agency theory. *Cf. Daimler AG*, 571 U.S. at 759-60 (warning that focusing on whether an agent performs services that a corporation would otherwise perform absent the agent "stacks the deck, for it will always yield a pro-jurisdiction answer"). Therefore, the Court also lacks personal jurisdiction over these entities by virtue of an agency relationship.

### c. Purposeful Availment

Plaintiff contends that this Court has personal jurisdiction over PM because PM makes its online gaming platforms available to New Jersey users. Thus, according to Plaintiff, PM purposefully availed itself of doing business in New Jersey. New Opp. at 19. A defendant's online contacts with users in a specific state may create sufficient minimum contacts with the forum such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 212 (3d Cir. 2014) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). When analyzing internet commerce cases for personal jurisdiction purposes, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). In this instance, PM markets its online gambling websites on international platforms including Facebook and encourages users in New Jersey to operate its games. TAC ¶¶ 13, 135. While not detailed, these factual allegations are enough to permit Plaintiff to conduct jurisdictional

discovery as to PM. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)

("If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible

existence of the requisite 'contacts between the party and the forum state', the plaintiff's right to

conduct jurisdictional discovery should be sustained." (quoting *Mellon Bank (East) PSFS, Nat'l*

*Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992))). Thus, the Court denies the New

Defendants' motion as to PM without prejudice pending the result of jurisdictional discovery.

### d. The Patent Long-Arm Statute

Relatedly, the New Defendants argue that 35 U.S.C. § 293 does not convey specific

personal jurisdiction over the non-patent claims[8] asserted against ATA, in light of the fact that

ATA is the assignee of the wrongful patent applications and patents. New Br. at 13-14. § 293

provides as follows:

> Every patentee not residing in the United States may file in the
> Patent and Trademark Office a written designation stating the name
> and address of a person residing within the United States on whom
> may be served process or notice of proceedings affecting the patent
> or rights thereunder. If the person designated cannot be found at the
> address given in the last designation, or if no person has been
> designated, the United States District Court for the Eastern District
> of Virginia shall have jurisdiction . . . . The court shall have the same
> jurisdiction to take any action respecting the patent or rights
> thereunder that it would have if the patentee were personally within
> the jurisdiction of the court.

35 U.S.C. § 293. Plaintiff correctly asserts that § 293 is not mandatory, meaning that the Eastern

District of Virginia is not the only jurisdiction where personal jurisdiction exists over a foreign

patent owner. *See Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, No. 14-1293, 2016

---

[8] The New Defendants' § 293 argument is somewhat unclear in light of their overall brief. The
New Defendants make the § 293 argument, which clearly concerns patent ownership and rights,
under their overarching argument as to personal jurisdiction vis-à-vis Plaintiff's counts *other* than
those addressing patent infringement. New Br. at 7, 13-14.

WL 9175601, at *2 (E.D. Va. Dec. 13, 2016). However, § 293 only conveys personal jurisdiction over a foreign entity with respect to "proceedings affecting the patent or rights thereunder." *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 332 F. Supp. 2d 63, 70 (D.D.C. 2004) ("The bare fact that defendant is a nonresident patent owner does not authorize the Court to assert personal jurisdiction over defendant under Section 293 for all matters."). Accordingly, § 293 is inapplicable to the New Defendants' arguments concerning personal jurisdiction as to Plaintiff's non-patent infringement claims.

In sum, this Court lacks specific personal jurisdiction over ALL and ATA. The New Defendants' motion to dismiss is granted on these grounds and the non-patent infringement claims asserted against ALL and ATA are dismissed. H5G, however, alleges sufficient facts to warrant limited jurisdictional discovery as to PM's contacts with New Jersey.

## 2. Improper Venue for Patent Infringement Claims

Marks Studios, ATI, and PM seek to dismiss, or in the alternative transfer, the patent infringement claims pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a). Rule 12(b)(3) permits a district court to dismiss a matter that is filed in the wrong venue. Further, 28 U.S.C. § 1406(a) provides that a district court may dismiss a matter that is filed in the wrong venue, or "if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a).

### a. *TC Heartland*

Venue for patent infringement claims is governed by the patent venue statute, 28 U.S.C. § 1400(b). "Whether venue is proper under § 1400(b) is an issue unique to patent law" and therefore, is governed by Federal Circuit law. Federal Circuit law provides that a plaintiff bears to the burden of establishing that venue is proper. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018).

Whether a party waived or forfeited its right to assert an improper venue defense is also governed by Federal Circuit law. *In re Oath Holdings Inc.*, 908 F.3d 1301, 1305 (Fed. Cir. 2018).

The patent venue statute provides that venue is only proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). The Supreme Court recently overruled Federal Circuit precedent and determined that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017). Marks Studios, ATI and PM are not incorporated in, nor do they have a "regular and established place of business" in New Jersey. Accordingly, pursuant to § 1400(b), New Jersey is an improper venue for the patent claims asserted against these Defendants. Plaintiff does not contest this point. Instead, Plaintiff argues that Marks Studio and ATI[9] have waived their rights to contest venue.[10]

### b. Waiver of Venue Defense

Plaintiff contends that ATI and Marks Studios cannot now argue that New Jersey is an improper venue because they waited too long to raise the defense. SAC Opp. at 9. The defense of improper venue is waived if a party fails to assert it at the first available opportunity, generally in an initial Rule 12(b) motion. *In re Micron Tech., Inc.*, 875 F.3d 1091, 1096 (Fed. Cir. 2017) (citing Fed. R. Civ. P. 12(h)(1)(A)). There is an exception, however, "when there has been an

---

[9] Plaintiff does not argue that PM forfeited or waived its venue defense. Plf. Supp. Resp. at 6. PM was not named as a Defendant in this matter until the TAC so PM timely raised the defense in the current motion.

[10] H5G originally argued that this Court could retain jurisdiction over the infringement claims under the doctrine of pendent venue. New Opp. at 12. Plaintiff, however, withdrew its pendent venue argument in light of *Metuchen Pharms. LLC v. Empower Pharms. LLC*, No. 18-11406, 2018 WL 5669151, at *4 (D.N.J. Nov. 1, 2018). Plf. Supp. Br. at 1 n.1. The Court, therefore, will not address this argument.

intervening change in the law recognizing an issue that was not previously available." *Akeso Health Scis., LLC v. Designs for Health, Inc.*, No. 16-7749, 2018 WL 2558420, at *2 (C.D. Cal. Jan. 28, 2018). *TC Heartland* constituted a change in the controlling law. *In re Micron Tech., Inc.*, 875 F.3d at 1099. As a result, "Rule 12(h)'s waiver provision [is] inapplicable to a defendant asserting a venue objection based on *TC Heartland* that [was] not [] made in a Rule 12(b) motion filed prior to the *TC Heartland* decision." *Princeton Dig. Image Corp. v. Ubisoft Entm't SA*, No. 13-335, 2018 WL 3105062, at *4 (D. Del. June 25, 2018).

This is Marks Studios and ATI's third motion to dismiss. *TC Heartland*, however, was decided on May 22, 2017, after these Defendants filed their two prior motions to dismiss. Accordingly, a *TC Heartland* venue argument was not previously available to Marks Studios and ATI. Thus, Marks Studios and ATI did not waive their venue defense pursuant to Rule 12(h). *Princeton Dig. Image Corp.*, 2018 WL 3105062, at *4.

### c. Forfeiture of Venue Defense

A court, however, may use its inherent powers to conclude that a party forfeited its right to assert an improper venue defense on timeliness grounds even though the defense was not technically waived per Rule 12(h). *In re Micron Tech., Inc.*, 875 F.3d at 1100-01 (stating that "district courts have the authority to find forfeiture of a venue objection" as a result of their "inherent powers . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). To determine whether a venue defense is forfeited, a court may consider (1) how long after *TC Heartland* the party waited before raising the defense; (2) how near trial is, "which may implicate the efficiency or other interest of the judicial system and of other participants in the case"; and (3) whether a defendant employed a "tactical wait-and-see" approach in raising the defense such that "the course of proceedings might well have been altered by such a

declaration" that venue was improper. *Id.* at 1102. As explained below, while this is somewhat of a close call, the Court concludes that neither Defendant forfeited their right to assert an improper venue defense.

H5G maintains that Marks Studios and ATI forfeited their right to assert a venue defense because they did not raise the defense until months after *TC Heartland* was decided while they continued to litigate this matter. The SAC Defendants, which includes Marks Studios and ATI, waited more than six months after *TC Heartland* before first mentioning *TC Heartland* in their opposition to Plaintiff's motion to amend (D.E. 245 at 34) and did not formally raise their venue defense until this motion, which was filed on June 19, 2018 – more than a year after *TC Heartland* was handed down. In the interim, the SAC Defendants participated in numerous conferences with the Special Master, continued to engage in discovery, filed a motion for injunctive relief and to disqualify counsel, and filed *Markman* briefs. During this time frame, however, nothing precluded Defendants from also filing a motion to transfer the patent infringement claims in light of *TC Heartland*.

Plaintiff correctly argues that courts have determined that a defendant forfeited its venue defense because it failed to assert the defense within a far shorter time period after the *TC Heartland* decision. *See, e.g.*, *Chamberlain Grp. v. Techtronic Indus.*, 315 F. Supp. 3d 977, 1008 (N.D. Ill. 2018) (finding forfeiture where defendant waited a month after *TC Heartland* before filing motion to transfer); *Princeton Dig. Image Corp.*, 2018 WL 3105062, at *8 (finding forfeiture where defendant waited eight months to assert venue objection "while actively seeking and obtaining key rulings from this [c]ourt"). Some courts have even concluded that a six-month delay "is, at best, the outer edge of what might be a reasonable period of time" for a motion to transfer. *Nat'l Prods., Inc. v. Arkon Res., Inc.*, No. 15-1984, 2018 WL 1457254, at *5 (W.D. Wash. Mar.

19

23, 2018). Timeliness, however, is not dispositive. *See In re Micron Tech., Inc.*, 875 F.3d at 1101

("As to timeliness, whereas the waiver rule of Rule 12(g)(2) and (h)(1)(A) requires a focus on the

time the *TC Heartland* venue objection was 'available' for the district court to adopt (*i.e.*, on or

after May 22, 2017), the non-Rule authority's general concern with timeliness is not necessarily

so limited[,]" such that a court may consider additional factors).

Moreover, as to the timeliness factor, the record reflects that the SAC Defendants' actions

are not as egregious as they might otherwise appear solely in reference to the aforementioned dates.

Plaintiff filed its SAC on January 30, 2017. D.E. 186. The SAC Defendants filed their motion to

dismiss on February 27, 2017. D.E. 195. *TC Heartland* was decided on May 22, 2017.

Admittedly, the SAC Defendants did not take any immediate action in response to the decision.

However, in early August 2018, Plaintiff moved for injunctive relief. In the briefing and during

oral argument as to the TRO, it became apparent that Plaintiff was seeking relief from entities who

were not parties to the action. Moreover, at oral argument, Plaintiff indicated that it intended to

seek leave to file the TAC to incorporate arguments made in its application for injunctive relief.

In response, the Court administratively terminated the pending motion to dismiss the SAC until

the TAC issue was resolved. Again, the SAC Defendants did not indicate that they wished to

nevertheless file a motion in light of *TC Heartland* at this time. However, even if the SAC

Defendants had, the Court would have ordered that any such motion be held until the TAC issue

was resolved. The reason being is that Plaintiff's initial and amended pleadings were factually

complex and had evolved both factually and as to the number of defendants and claims. The Court

did not want to make decisions on the pending motion to dismiss when such rulings could have

been mooted or no longer necessary in light of the TAC. Then *Plaintiff* waited over two months

before filing its motion for leave to file the TAC. D.E. 243. In opposing the motion, the SAC

Defendants did note the *TC Heartland* issue. D.E. 245. Yet, Judge Falk granted Plaintiff's motion because, among other reasons, the case was still essentially at square one. D.E. 316. In fact, in both April and October of *2018*, Plaintiff also argued that matter was effectively at square one in conjunction with two of its motions.

While timeliness is relevant to the Court's analysis, it appears that the key factor in a forfeiture analysis is the proximity to trial and the potential waste of judicial resources. Here, there has not been a *Markman* hearing and a trial date has not been set. The majority of the cases relied on by Plaintiff reflect these considerations. For example, in *Chamberlain Group*, the motion to transfer was filed two months before trial was scheduled to begin. *Chamberlain Grp.*, 315 F. Supp. 3d at 1008. In *Princeton Digital*, the court held a *Markman* hearing, entered multiple opinions as to claim construction, and set a trial date before the defendant asserted its improper venue defense. *Princeton Dig. Image Corp.*, 2018 WL 3105062, at *1-3. In *Akeso Health Sciences, LLC v. Designs for Health, Inc.*, the parties participated in claim construction proceedings and were "gearing up for trial" between the *TC Heartland* decision and the defendants' motion to dismiss on venue grounds. No. 16-7749, 2018 WL 2558420, at *3 (C.D. Cal. Jan. 25, 2018)).

Although the parties have been actively litigating this matter, opening claim construction briefs were only recently filed in April. D.E. 427, 428. As noted, a *Markman* hearing has not yet been scheduled, and trial is not contemplated in the near future. As a result, this matter is in a materially different procedural posture than the majority of cases in which a court has determined that a party forfeited its right to assert a venue defense. *See In re Oath Holdings Inc.*, 908 F.3d at 1306 (rejecting judicial economy argument where "the case has not progressed past written discovery and claim construction briefing" because "the record simply does not indicate the type of significant judicial investment that might, in some circumstances, support a determination of

21

forfeiture"). In addition, while the Court has expended substantial resources on this matter, the Court's efforts will not be wasted because the SAC Defendants' venue defense only applies to the patent infringements claims for certain Defendants. Finally, the delay is not solely attributable to the parties. As the parties are well aware, the District of New Jersey is facing a judicial emergency due to the number of judicial vacancies in the district, which is causing delays in the resolution of civil cases. *See* Jeannie O'Sullivan, Top NJ Federal Judge Bemoans Court's Workload Upon Exit, Law360, May 17, 2019, https://www.law360.com/articles/1160836/top-nj-federal-judge-bemoans-court-s-workload-upon-exit. The Court cannot fault any party for this unfortunate reality.

Moreover, it does not appear that Defendants are attempting to employ a "wait-and-see" tactical approach. In *Keranos, LLC v. Silicon Storage Technology, Inc.*, for example, the court concluded that the defendants' delay was strategic. There, the defendants filed their motion to transfer more than nine-months after *TC Heartland* in a case that had been pending for almost five years. Critically, the defendants "waited until [the] court considered and ultimately granted [the plaintiff's] motion to amend [infringement contentions]" before filing a motion to transfer. No. 13-17, 2018 WL 7283284, at *2 (E.D. Tex. Mar. 1, 2018); *see also In re Fedex Corp.*, No. 18-117, ECF No. 26 (Fed. Cir. Jan. 23, 2018) (refusing to grant mandamus where district court determined that the defendants "may have purposely delayed filing their motion hoping for a different [PTAB] decision that could lead to a more advantageous litigation position"). Moreover, the *Keranos* court concluded that the defendants' delay was "amplified" by the length of time that case had been pending. *Id.*

H5G relies on *Keranos*, arguing that this Court should find that Marks Studio and ATI forfeited their venue defense. Plf. Supp. Br. at 3-4. But *Keranos* is distinguishable. Here,

approximately six months after *TC Heartland*, Marks Studios and ATI raised the venue issue in opposition to Plaintiff's motion to amend the complaint (albeit in passing). D.E. 245 at 3, 38. Ultimately, the venue issue was not critical to Judge Falk's decision granting leave to amend. Further, in deciding the motion to amend, Judge Falk explained that "[t]hough the case has been pending for a number of years, it is effectively at square one."[11] D.E. 316 at 7. In fact, Plaintiff advocated the same view (that the case was effectively at square one) in two motions filed in 2018. Moreover, outside of the motion to amend the complaint, there have been no substantive decisions that could have impacted Plaintiff's patent infringement claims. Consequently, the Court concludes that the delay here does not appear to be gamesmanship.

Finally, Plaintiff has not identified any undue prejudice that it would suffer if the patent infringement claims were transferred. *See Boston Sci. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 243 (D. Del. 2017) (stating that "prototypical examples" of a finding of forfeiture include "where a defendant raises venue for the first time on the eve of trial, or many month (or years) after *TC Heartland* was handed down, *or where dismissal or transfer would unduly prejudice a plaintiff*"). Plaintiff argues that if the infringement claims are transferred it would be forced to relitigate claims in new forums. Plf. Supp. Br. at 9. There is no indication that the work already performed by the parties would be for naught following a transfer. This is especially true because the Court has not yet conducted a *Markman* hearing.

Plaintiff also contends that it would be prejudiced by a transfer due to the risk of inconsistent rulings and unnecessary expenditures incurred by litigating in multiple forums.

---

[11] Plaintiff relies on the fact that since the motions to dismiss were filed, the parties have actively moved the case forward through the claim construction process and discovery. Plf. Supp. Br. at 4. This conduct, however, occurred after Marks Studios and ATI noted their improper venue defense. As a result, these recent case developments are irrelevant to the forfeiture analysis.

Though Plaintiff raises legitimate concerns, the Federal Circuit has explained that a court's non-Rule 12 based authority "must be exercised with caution to avoid impairment of, among other things, the congressionally granted venue rights." *In re Oath Holdings Inc.*, 908 F.3d at 1305 (internal citation omitted). The Court must also keep in mind that because Plaintiff is not arguing that PM waived or forfeited its venue defense, the patent infringement claims against PM cannot be heard in this Court and that this Court lacks personal jurisdiction over the non-patent infringement claims asserted against ATT and ALA. Consequently, Plaintiff will be forced to litigate in multiple forums regardless of the patent venue ruling. Thus, the Court concludes that while Plaintiff may be prejudiced by a transfer, it does not amount to undue prejudice that necessitates a finding that Marks Studios and ATI forfeited their venue defense. *See Nat'l Prods., Inc.*, 2018 WL 1457254, at *5 (rejecting judicial inefficiencies argument as basis for finding forfeiture where infringement claims were already set to be decided by different judges in the same district).

In sum, the District of New Jersey is an improper venue for the patent infringement claims asserted against PM[12], ATI, and Marks Studios pursuant to § 1400(b), and these Defendants did not waive or forfeit their right to assert an improper venue defense. In reaching this conclusion, the Court is not condoning Marks Studios and ATI's strategic decision to not seek to transfer this matter in light of *TC Heartland* at an earlier point in this litigation. These Defendants conceivably could have filed a motion at a significantly earlier date and were not required to wait until they sought to dismiss the TAC.

---

[12] Plaintiff also argues that venue is proper as to PM because it is the alter ego or agent of ATI. New Opp. at 9. This argument is unavailing in light of the Court's ruling as to Plaintiff's alter ego and agent arguments as they pertained to personal jurisdiction.

#### d. Transfer of Patent Infringement Claims

If a matter is filed in the wrong venue, Section 1406(a) permits a court to dismiss or transfer the matter to any district in which that matter could have been brought in the interest of justice. 28 U.S.C. § 1406(a). Moreover, when venue is proper for one defendant but not others, a district court may sever and transfer the claims as to any defendant where venue is improper and retain the remainder of the claims.[13] *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994). The decision of whether to sever and transfer or dismiss is within a district court's discretion. *Id.* Moreover, "[d]ismissal is considered to be a harsh remedy and transfer of venue to another district court in which the action could originally have been brought, is the preferred remedy." *Konica Minolta, Inc. v. ICR Co.*, No. 15-1446, 2015 WL 9308252, at *5 (D.N.J. Dec. 22, 2015). In this instance, Defendants argue that the patent infringement claims should be transferred rather than dismissed. The Court agrees and finds that it would be in the interest of justice to sever and transfer the patent infringement claims. *See, e.g., Infinity Comput. Prods., Inc. v. OKI Data Ams., Inc.*, No. 12-6797, 2018 WL 1035793, at *10 (E.D. Pa. Feb. 23, 2018) (transferring claims asserted against defendants to four separate forums in which venue was proper pursuant to § 1400(a)). Accordingly, the Court will transfer the patent infringement claims as to (1) PM to the District of Delaware; (2) Marks Studios to the Northern District of Georgia; and (3) ATI to the District of Nevada.

### 3. Breach of Contract Claim as to ATI

The SAC Defendants also argue that New Jersey is an improper venue for the breach of contract claim asserted against ATI and argue that this claim must be dismissed or transferred to

---

[13] The Court recognizes that *Cottman* cautions against severing claims if the partial transfer would require the same issues to be litigated in two places. However, the Court does not see a way to avoid the multiple forums issue in light of *TC Heartland*.

the District of Nevada. SAC Br. at 7. Third Circuit law governs the non-patent infringement claims. *See In re ZTE (USA) Inc.*, 890 F. 3d at 1012. Pursuant to Third Circuit law, a defendant bears the burden of establishing that venue is improper. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 160 (3d Cir. 2012). When deciding a motion to dismiss for improper venue, a court accepts the allegations in the complaint as true and draws all reasonable inferences and resolves factual conflicts in a plaintiff's favor. *Id.* at 158 n.1.

The TAC indicates that in the spring of 2012, ATI executed a non-disclosure agreement with H5G, through which "H5G shared confidential information with [ATI] for the sole purpose of entering a business relationship." *Id.* ¶ 50. Plaintiff alleges that ATI breached the non-disclosure agreement ("NDA"). The SAC Defendants maintain that the breach of contract claim asserted against ATI must be transferred to the District of Nevada because the NDA contains a jurisdiction and venue selection clause. SAC Br. at 29. The NDA provides that "[a]ny disputes arising from this Agreement shall be litigated in the State of Nevada, and the Parties hereby consent to the personal jurisdiction and venue of Nevada courts." Decl. of Bradley D. Roush, Ex. F at ¶ 11.

Although ATI states in Defendants' supplemental brief that the breach of contract claim should be dismissed for failure to state a claim (Defs. Supp. Br. at 15), the SAC Defendants' opening brief states that ATI sought to transfer Plaintiff's breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(3), which addresses improper venue, and 28 U.S.C. § 1406(a), which also addresses improper venue. Further, 28 U.S.C. § 1404(a), which addresses change of venue (from an otherwise proper venue) is not addressed in any of Defendants' briefs. Thus, the Court will decide the issue as it was initially framed by the SAC Defendants – as a motion to dismiss for improper venue pursuant to Rule 12(b)(3) and § 1406(a). SAC Br. at 19, 29.

To that end, "a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3)."[14] *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). Accordingly, New Jersey is not an improper venue because of the forum selection clause. The New Defendants' motion to dismiss, therefore, is denied on these grounds.

### 4. Contract-Based Tort Claims

Finally, Defendants argue that H5G's contract-based tort claims (Counts Nine through Eleven) should be dismissed on plausibility grounds. Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however,

---

[14] Because venue is not improper under Rule 12(b)(3) and § 1406, the Court need not address Plaintiff's argument as to the entire controversy doctrine.

a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### a. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Nine)

"Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (2005). "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). "As a general rule, subterfuges and evasions in the performance of a contract violate the covenant . . . even though the actor believes his conduct to be justified." *Brunswick Hills Racquet Club, Inc.*, 182 N.J. at 225 (brackets and citations omitted) (finding violation where landlord evaded tenant's attempt to schedule closing on an option landlord knew tenant intended to exercise). "However, bad motive or intention is essential, and an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive." *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006) (citations omitted).

The TAC alleges that prior to the conclusion of the restricted period, as required by the Marks Agreement, Marks entered into an agreement with ATI for the purpose of developing games and game technology, and "served as an intermediary for an agreement between ATI and a [competitor]." TAC ¶ 165. Plaintiff further alleges that "Marks acted with ill motives and without any legitimate purpose." *Id.* These factual allegations are sufficient to survive a motion to dismiss.

Defendants argue that the implied covenant claim must be dismissed because it appears duplicative of the breach of contract claim. D.E. 196 at 24. "[A] breach of the covenant of good faith and fair dealing claim must not arise out of the same conduct underlying an alleged breach of contract action." *CRA, Inc. v. Ozitus Int'l, Inc.*, No. 16-5632, 2017 WL 2779749, at *6-7 (D.N.J. June 27, 2017). In certain circumstances, however, a plaintiff is permitted to plead alternative claims. *Id.* Here, the Marks Agreement prohibited Marks from, among other things, participating in any business that was also involved with computer casino games. TAC ¶ 38. Thus, it is possible that by serving as an intermediary, Marks did not technically breach of the agreement but did violate the implied covenant of good faith and fair dealing. Accordingly, this claim is an appropriate alternate claim at the motion to dismiss stage.

### b. Tortious Interference Claims (Counts Ten and Eleven)

To prevail on a claim for tortious interference with a prospective economic advantage in New Jersey, a plaintiff must plead "'[1] that it had a reasonable expectation of economic advantage, [2] which was lost as a direct result of [the defendants'] malicious interference, and [3] that it suffered losses thereby.'" *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016) (quoting *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 198-99 (App. Div. 1995)). To state a claim for tortious inference with a contract under New Jersey law, a party must demonstrate (1) actual interference with a contract; "(2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." *214 Corp. v. Casino Reinvestment Dev. Auth.*, 280 N.J. Super. 624, 628 (Law Div. 1994) (citing *Norwood Easthill Assoc. v. N.E. Watch*, 222 N.J. Super. 378 (App. Div. 1988)).

H5G pleads that before the restricted period was over, ATI wrongfully interfered with the Marks Agreement "by soliciting, discussing, negotiating, encouraging, and/or entering into an agreement with Marks" about his participation with ATI. TAC ¶ 175, 182. Plaintiff further alleges that Marks served as an intermediary for an agreement between ATI and a competitor. *Id.* ¶ 182. Plaintiff alleges that it has been damaged by this interference. *Id.* ¶¶ 177, 184. These allegations are sufficient to state claims for tortious interference of a contract as to Marks and a prospective economic advantage as to ATI.

Accordingly, Defendants' motions to dismiss, to the extent they seek to dismiss the contract-based claims on plausibility grounds, are denied.

### III.    CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss (D.E. 344, 345) are granted in part and denied in part. An appropriate Order accompanies this Opinion.

Dated: August 9, 2019

**John Michael Vazquez, U.S.D.J.**