**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HIGH 5 GAMES, LLC, a Delaware Limited Liability Company, f/k/a PTT, LLC,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MARKS, an individual; JOSEPH MASCI, an individual; BRIAN KAVANAGH, an indivisual; MARKS STUDIOS, LLC, an entity d/b/a GIMME GAMES; ARISTOCRAT TECHNOLOGIES, INC., an entity; ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LIMITED, an entity; ARISTOCRAT LEISURE LIMITED, an entity; PRODUCT MADNESS, INC., an entity; GRANT BOLLING, an individual; JOHN SMITH(s) 1-7; and XYZ COMPANIES 1-7,<br><br>    Defendants/Counterclaim Plaintiffs. | Case No.: 2:13-CV-07161-JMV-MF<br><br>**ORDER & OPINION OF THE SPECIAL MASTER** |

This matter comes before the Special Master upon Plaintiff High 5 Games, LLC's ("H5G") motion to compel the production of source code from defendants Daniel Marks, Joseph Masci, Brain Kavanagh, Grant Bolling, Marks Studios, LLC ("Marks Studios"), Aristocrat Technologies, Inc. ("ATI"), Aristocrat Technologies Australia Pty Ltd. ("ATA"), Aristocrat Leisure Limited ("ALL"), and Product Madness, Inc. ("Product Madness")(collectively, "Defendants"), which Defendants had been ordered to produce in opinions dated April 5, 2019 and May 30, 2019. After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that H5G's motion is **Granted**.

1

## **DISCUSSION**

### I. **Background**

By correspondence dated April 30, 2018, H5G informed Defendants that it had become aware of additional games that appeared to contain the infringing features. H5G specifically listed 87 games in this correspondence (the "Undisclosed Games"). On May 29, 2018, H5G served supplemental interrogatories and requests for production upon Defendants. The requests sought identification of all of Defendants' games containing the accused features. H5G also requested technical information related to the Undisclosed Games. Defendants objected to H5G's discovery requests as beyond the scope of the litigation.

The parties appeared for a status conference before the Special Master on November 6, 2018. At the conference, the Special Master instructed Defendants to produce their outstanding discovery within 30 days. On December 6, 2018, Defendants produced additional discovery. However, H5G alleged that this production failed to include discovery relating to nearly all of the Undisclosed Games.

Thereafter, on February 8, 2019, H5G filed a motion to compel Defendants to provide discovery related to the Undisclosed Games. On April 5, 2019, the Special Master granted H5G's motion and ordered Defendants to produce the technical information sought within 30 days. On April 19, 2019, Defendants filed a motion for reconsideration and requested a stay of the April 5 Order. On May 30, 2019, the Special Master issued an Order denying Defendants' motion for reconsideration and lifting the stay of the April 5 Order.

On June 12, 2019, H5G asked for a date certain for production of discovery related to the Undisclosed Games. Defendants then requested an emergency stay, which the Special Master granted until June 28, 2019. On July 9, 2019, Defendants produced certain excel files related to

2

the Undisclosed Games but did not produce any source code or provide written discovery for the Undisclosed Games.

On July 12, 2019, H5G asked Defendants to make the source code for the Undisclosed Games available for inspection. Defendants refused to provide the source code on relevancy grounds. On July 25, 2019, H5G again requested that Defendants provide the previously ordered discovery. Thereafter, H5G filed its motion to compel.

## II. Arguments of the Parties

### A. *Plaintiff*

H5G argues that the Special Master has already considered and addressed Defendants' arguments on relevance and the scope of discovery and rejected those arguments in two prior Orders. H5G states that while the April 5 Order already requires Defendants to produce source code for all the Undisclosed Games, H5G offered to review the limited information produced by Defendants to see if it could narrow its source code request. However, it maintains that Defendants have nevertheless continued to refuse to produce any source code for the Undisclosed Games. H5G argues that it is unacceptable for Defendants to refuse to provide the requested discovery despite the Special Master's Orders.

### B. Defendants

Defendants argue that the recently issued final written decision of the Patent Trial and Appeal Board of the United States Patent and Trademark Office ("PTAB") fundamentally changes the scope of the case, including obviating H5G's need for source code. Defendants explain that they filed a petition with the PTAB for an *inter partes* review challenging the patentability of each claim of U.S. Patent 9,022,852 ('852 patent)(also known as H5G's "Super Stacks patent"). On July 29, 2019, the PTAB issued its written decision canceling all claims of

3

the Super Stacks patent, rendering H5G's infringement claims for the Super Stacks patent moot. Defendants argue that the only basis for which H5G has provided a meaningful argument as to relevance of the code is infringement of the Super Stacks patent. H5G argues that H5G's trade secret claims cannot support H5G's source code demands either.

Defendants also argue that they produced combination sheets for the 84 Undisclosed Games on July 12, 2019. Defendants argue that the parties then agreed on July 16, 2019, that H5G would first provide at least some analysis of the basis for possibly alleging infringement concerning the new games before asking Defendants to undertake the production of source code. In return, Defendants were not going to require H5G to provide full claims charts immediately.

Defendants argue that they have complied with the Special Master's April 5 Order by producing the combination sheets, which they argue are the only documents needed to understand fully the operation of the games. In addition, Defendants believe that H5G's failure to comply with the parties' agreement is an apparent acknowledgment that it is unable to articulate any basis for its infringement claims, thus confirming why no further burdensome discovery is appropriate.

Defendants further argue that the parties did not brief the Special Master and that the Special Master's April 5 Order did not address the extraordinary burden of collecting source code for 84 games, which Defendants argue are not in the Complaint and are not in H5G's infringement contentions. Defendants believe that H5G's failure to provide at least some analysis concerning the Undisclosed Games strongly suggests that H5G is only making the present demands to burden Defendants.

### C. H5G's Reply

H5G argues that it never agreed it would provide at least some analysis of the basis for possibly alleging infringement contentions for the Undisclosed Games. H5G further argues that the Super Stacks patent decision does not negate the need for source code and additional written discovery for the Undisclosed Games. H5G argues that in its prior motion to compel it also explained that H5G's trade secret allegations required access to Defendants' source code. H5G argues that despite Defendants' arguments that source code is not relevant to H5G'S trade secret allegations, the Special Master granted both motions. Finally, H5G argues that even if source code was only related to the Super Stacks patent, a patent is valid until the PTO cancels all claims and the IPR comes to conclusion, which H5G argues has not occurred in this matter because H5G still has the opportunity to appeal the PTAB decision.

### D. Defendants' Reply

Defendants reply that without some articulable basis for believing the games infringe, there can be no basis for any discovery. Defendants argue that H5G is asking the Special Master to order admittedly burdensome and irrelevant discovery when H5G lacks a Rule 11 basis to accuse any of the 84 games of infringement. Defendants argue that H5G cites no authority and does not directly dispute that the PTAB decision renders moot all claims concerning the Super Stacks patent. Defendants further argue that the fact that H5G might appeal the decision ignores the unlikelihood of success on appeal and the waste of litigating after a determination by an expert agency. Defendants also stand by their position that the April 5 Order says nothing about trade secrets as a basis for possible discovery concerning the 85 Undisclosed Games.

**Opinion**

On May 29, 2018, H5G served Defendants with a supplemental notice to produce requesting that the Defendants produce technical information for the Undisclosed Games. Request No. 17 sought "source code of every game that includes the Stacked Symbol Feature, the Oversized Symbol feature, or the Invisible Stack Feature." Thereafter, on February 8, 2019, H5G filed a motion to compel Defendants to provide discovery of technical information relating to the Undisclosed Games. The Special Master therefore finds unavailing Defendants' arguments that the production of source code was not contemplated in H5G's first motion to compel discovery related to the Undisclosed Games and the Special Master's subsequent Orders. Having already ordered Defendants to produce source code for the Undisclosed Games, the Special Master will not revisit those arguments already raised and addressed in his prior opinions. The Special Master notes that to the extent Defendants now argue that the production of source code creates an undue burden, this argument is rejected as it was not raised by Defendants in opposition to H5G's initial motion to produce technical information or in Defendants' subsequent motion for reconsideration.

The Special Master has already ruled on the relevancy of technical information and rejects Defendants' renewed relevance arguments. With respect to Defendants' argument that the subsequent PTAB decision negates the need for source code and additional written discovery for the Undisclosed Games, the Special Master notes that Defendants had been ordered to produce this information and that the information should have been disclosed prior to the PTAB's July 29, 2019, written decision. Irrespective of Defendants' delay, the Special Master notes that H5G still has an opportunity to appeal the PTAB's July 29, 2019 written decision. The Special Master will not address Defendants' arguments as to the likelihood of any appeal. Additionally, the

6

Special Master also notes that the PTAB written decision addressed only the '852 patent and not the '223 patent, for which Defendants had also been ordered to provide discovery.[1] Irrespective of any patent issues, the Special Master notes that H5G also has trade secret claims and requested source code and additional written discovery for the Undisclosed Games relevant to those claims. H5G is entitled to the requested source code so that it may evaluate the extent to which Defendants allegedly shared its trade secrets and whether those trade secrets were utilized in the Undisclosed Games. Accordingly, within **7 days** of the date of this Order, Defendants are ordered to produce or make available for inspection source code for the Undisclosed Games.

*[signature]*

DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)
**Special Master**

Date: September 20, 2019

---

[1] By Order dated April 5, 2019, Defendants were ordered to produce within 30 days, "discovery of technical information relating to Defendants' accused instrumentalities, including the requested discovery relating to Defendants' games utilizing the "Oversized Symbol Feature" as defined in the Plaintiff's discovery demands, which include: The Big Bang Theory, Cash Explosion, Red Moon-Immortal Dawn, Red Moon-Full Eclipse, Storm Queen - Frost Queen, Storm Queen-Sand Queen, The Walking Dead I, The Walking Dead II, Superman The Movie, Batman Classic TV Series, Happy Lantern, Sahara Gold, Goddess Sisters Princess Viper, Goddess Sisters Queen Coral, Mythos Aquatic Dreams, Mythos Heavenly Pride, Mythos Savannah Magic, Mythos Forest of Wonder, The Romance of Fire & Rain, Dream Rose, Mighty Link Ted, and Sons of Anarchy."